# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 19-24656-CIV-KING/BECERRA

ARMOR CORRECTIONAL HEALTH
SERVICES, INC.,

      Plaintiff,

v.

BRUCE TEAL,

      Defendant.

_____/

**EXHIBIT 1: DECLARATION OF BRUCE TEAL**
**IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

    I, Bruce Teal, hereby declare as follows:

    1.    I am over the age of eighteen years old, have personal knowledge of all matters stated herein, and could testify as to those matters if so requested.

    2.    I went to work for Plaintiff Armor Correctional Health Services, Inc. ("Armor") in or around 2005 as its Chief Financial Officer.

    3.    I was promoted to Chief Executive Officer of Armor in 2006 and retained that position until I resigned in November 2018.

    4.    At the time of my termination, Armor never requested that I return my Armor-issued laptop or delete any confidential information in my possession. Because Armor did not request it, I did not return my laptop at the time of my resignation.

1

5. Shortly after resigning, Armor asked me to assist with certain strategic opportunities. Armor provided me a significant amount of financial information during this time period to use in my analysis of a potential strategic partner, Corizon Health, Inc. ("Corizon").

6. Corizon and Armor are both in the business of providing medical services for prisons and other correctional facilities. This business involves a few key players, rather than a vast field of competitors, and thus Corizon and Armor are well aware of each other's services.

7. To further the due diligence between Armor and Corizon, Armor entered into a non-disclosure agreement with Corizon Health that specifically addressed my post-termination obligations. A true and correct copy of this Non-Disclosure Agreement ("NDA") is attached to the Statement of Facts hereto as Exhibit A. I do not currently recall and have not, at any point relevant to this litigation, recalled signing an employment or other agreement with Armor that contained restrictive covenants.

8. The potential transaction between Armor and Corizon did not proceed. After negotiations for the transaction stalled, I continued my work for Corizon in accordance with the understanding set forth in the NDA. In so doing, I relied on Armor's express statement in the NDA confirming that I was not subject to a non-competition agreement that would prevent me from working for Corizon.

9. No further communications occurred until August 2019, when Armor sent Corizon and me a letter addressing my employment with Corizon. A true and correct copy of this correspondence is attached hereto as Exhibit B. As part of those communications, Armor again reiterated that I did not have any agreement that imposed post-termination restrictive covenants on me:

Armor agrees that Mr. Teal did not enter into any post-employment restrictive covenants that, standing alone, limit Mr. Teal's ability to be employed by a competitor of Armor, like Corizon.

10. After receiving Armor's August 2, 2019 letter, I promptly provided my laptop to my counsel, which returned it to Armor. I no longer have any access to Armor's information.

11. Armor did not assert that I had any agreement with restrictive covenants until it filed the complaint that is the subject of this lawsuit. At that time, I was unaware of and did not have in my possession the employment agreement I signed in 2006 when I was CFO. I do not concede that the employment agreement is a true and accurate copy of any employment agreement I may have signed.

12. The fact of the matter is that Armor has suffered significant losses of contracts in 2019, none of which had anything to do with my employment with Corizon. Specifically, Armor has lost the following contracts, all of which went to entities other than Corizon: Palm Beach County, Santa Rosa County, Lake County, Flagler County, Baker County, Sarasota County, and Wakulla County.

13. In the August 2, 2019 letter, Armor complained that after I decided to join Corizon, Brevard County Sheriff's Office ("Brevard") terminated its contract with Armor and placed the contract for competitive bid. Armor did not participate in the competitive bid process. Brevard awarded its contract to Corizon after the competitive bid process was completed.

14. If the restrictive covenant is now enforced, I will be forced to resign my employment with Corizon and obtain new employment, which may damage my reputation with customers and thus my livelihood.

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury that the foregoing is true and correct.

Executed on this 18th day of December, 2019, in Hendersonville, Tennessee.

Bruce Teal



# Exhibit A

February 5, 2019

**VIA EMAIL AND FEDERAL EXPRESS**

*Private and Confidential*

Dr. Jose Armas
Armor Correctional Health Services, Inc.
4960 S.W. 72nd Avenue, Suite 400
Miami, FL 33155

    RE:    **Confidentiality of Proposed Transaction**

Dear Dr. Armas:

    In connection with our mutual consideration of a possible transaction between Armor Correctional Health Services, Inc. and its subsidiaries and affiliates (collectively *"Armor"*), and Corizon Health, Inc. and its subsidiaries and affiliates (collectively *"Corizon"*), each of Armor and Corizon expects to provide the other with certain information concerning its business and affairs (collectively, the *"Evaluation Material"*). As used in this Agreement, a party providing Evaluation Material is referred to as the *"Provider"* and a party receiving Evaluation Material is referred to as the *"Recipient"*. The Recipient shall treat all Evaluation Material in accordance with the provisions of this Agreement. The term *"Evaluation Material"* does not include information which (i) was in the possession of or known by the Recipient or its Representatives (as defined below) at the time of disclosure without an obligation to maintain its confidentiality prior to its receipt; (ii) was or becomes generally available to the public other than as a result of a disclosure by the Recipient or its Representatives; (iii) can be demonstrated to be independently developed by the Recipient without use or benefit of the Evaluation Material; or (iv) was or becomes available to the Recipient on a non-confidential basis from a source other than the Provider or its advisors, *provided* that such source is not known to the Recipient to be bound by a confidentiality agreement with, or any other legal or fiduciary obligation to, the Provider.

    The parties agree that the initial Evaluation Materials provided by Armor to Corizon will be limited to materials showing that Armor has the full power and authority to enter into a possible transaction with Corizon, and that such transaction contemplated hereby will not conflict with, result in a breach of, or constitute a default under any agreement or other obligation of Armor. Upon Corizon, in its sole discretion, determining that Armor has full power and authority to enter into a possible transaction, the parties agree that they may then exchange Evaluation Materials in the form of information and materials related to the financial and operating condition of Armor.

    The Recipient will use the Evaluation Material solely for the purpose of evaluating a possible transaction between the Provider and the Recipient, and will keep the Evaluation Material confidential; *provided* that the Recipient may disclose any of the Evaluation Material to (i) its affiliates, directors, officers, employees, legal counsel, investment bankers, lenders, financial advisors and other agents and advisors (collectively, *"Representatives"*) who have a need to know such Evaluation Material for the purpose described in this Agreement, each of whom shall be informed by the Recipient of the confidential nature of such Evaluation Material and shall treat such Evaluation Material confidentially in accordance with this Agreement, and (ii) any other person to which the Provider consents in

advance and in writing. The Recipient shall be responsible for any breach of this Agreement by any of its Representatives and shall indemnify and hold harmless the Provider and its Representatives from any damage, loss or expense incurred as a result of the use or disclosure of the Evaluation Material by the Recipient or its Representatives contrary to the terms of this Agreement. The term "*person*" as used in this Agreement shall be broadly interpreted to include without limitation any corporation, limited liability company, group, partnership or individual.

In the event that the Recipient or its Representative is requested in a judicial, administrative or governmental proceeding to disclose any of the Evaluation Material, the Recipient, if not prohibited by law or order, will promptly so notify the Provider so that the Provider may seek a protective order or other appropriate remedy or waive compliance with this Agreement. If such protective order or other remedy is not obtained or the Provider does not waive compliance with this Agreement and disclosure of any of the Evaluation Material is required, the Recipient will furnish only that portion of the Evaluation Material which is legally required and will exercise its reasonable best efforts to obtain reliable assurance that confidential treatment will be accorded the Evaluation Material furnished.

All Evaluation Material is and shall remain the exclusive property of the Provider. The Provider does not grant a license to, by implication or otherwise, any of the Provider's or any of its affiliates' trade secrets or other intellectual property rights to the Recipient or its Representatives by entering into this Agreement or by furnishing Evaluation Material to the Recipient or its Representatives.

In addition, without the prior written consent of the other party, each party to this Agreement agrees that it will not, and each will direct its respective Representatives not to, disclose to any person (other than its Representatives) either the fact that discussions or negotiations are taking place concerning possible transaction(s) between the Provider and the Recipient (or any of their respective affiliates) or any of the terms, conditions or other facts with respect to any such possible transaction, including the status thereof.

The Recipient shall promptly return to the Provider or, destroy, all tangible material embodying the Evaluation Material, all notes, summaries, memoranda, drawings, excerpts or other documents or material containing or derived from any of the Evaluation Material, and all copies of any of the foregoing, including electronic copies in whatever form, whether prepared by the Recipient, its Representatives, the Provider or otherwise, upon the earlier of (i) the completion or termination of discussions between the parties and (ii) the request of the Provider. At the request of the Provider, Recipient will provide a duly authorized Officer's certificate attesting to such destruction and/or return. Notwithstanding the foregoing, a party may keep one copy of the Evaluation Material to the extent reasonably necessary to comply with applicable laws, rules, and regulations that govern such party's document retention policies; *provided* that such party continues to be bound by all obligations hereunder with respect to such Evaluation Material.

The Recipient understands that the Provider does not make any representation or warranty as to the accuracy or completeness of the Evaluation Material, and neither the Provider nor its Representatives shall have any liability to the Recipient or any of its Representatives resulting from the use of the Evaluation Material supplied by the Provider or its Representatives.

During the period beginning on the commencement of the Agreement and ending on the earlier of (i) the execution of definitive written agreements for a transaction between the parties, and (ii) July 31, 2019, the parties agree not to solicit, discuss, negotiate, or consummate, directly or indirectly, a sale of any of Armor's assets (other than in the ordinary course of business) or any of Armor's equitable securities to any person other than Corizon.

Armor understands that Corizon intends to engage Mr. Bruce Teal and that as part of Mr. Teal's engagement he may assist Corizon with evaluating a possible transaction between Armor and Corizon. Armor confirms that Mr. Teal is not subject to any on-going non-competition, confidentiality or other agreement with Armor that would prohibit

him from working for Corizon or otherwise assisting with a possible transaction, except for such restrictions as are imposed by this Agreement.

Except as otherwise agreed in writing between the parties, the Recipient's confidentiality obligations under this Agreement shall remain in effect for a period of two (2) years after the termination of discussions between the parties.

This Agreement shall inure to the benefit of and be binding upon the parties and their respective heirs, successors and permitted assigns, including any successor to the Recipient or to the Provider of substantially all of such party's assets or business, by merger, consolidation, purchase of assets, purchase of stock or otherwise. The provisions of this Agreement shall be enforceable directly against a party by any such heir, successor or assign of the other party.

Each party acknowledges that money damages may not be an adequate remedy for any breach of this Agreement. Therefore, each party agrees that the other party shall be entitled to injunctive relief to restrain it from breaching this Agreement, which right shall be cumulative and in addition to any other remedy which may be available to the parties. In the event of litigation relating to this Agreement, if a court of competent jurisdiction determines that a party has breached this Agreement, the breaching party shall be liable and pay the non-breaching party the reasonable legal fees incurred by the non-breaching party in connection with such litigation. Any party that becomes aware of any breach by it or any of its Representatives of any obligation under the terms of this Agreement shall promptly notify the other party as soon as practicable.

It is understood and agreed that no failure or delay by the Provider in exercising any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right, power or privilege.

This Agreement shall be governed and construed in accordance with the laws of the State of Tennessee applicable to agreements made and to be performed within such State without regard to such State's conflict of laws provisions.

This Agreement constitutes the entire agreement between the parties hereto relating to confidential treatment and use of the Evaluation Material, and supersedes and replaces all prior writings, discussions and rights relating thereto; and no obligation of any kind relating thereto is assumed by or implied against either party hereto except for those obligations expressly stated herein.

The parties agree that unless and until a definitive agreement with respect to a proposed transaction has been executed and delivered, neither party will be under any legal obligation of any kind whatsoever with respect to any such proposed transaction by virtue of this or any written or oral expression with respect to such a proposed transaction, except for matters specifically set forth in this Agreement or as otherwise agreed to in writing by the parties.

If you are in agreement with the foregoing, please so indicate by signing and returning one copy of this Agreement, whereupon this Agreement will constitute our agreement with respect to the subject matter hereof.

Very truly yours,

CORIZON HEALTH, INC.

*[signature]*

Steve Rector
Chief Executive Officer

CONFIRMED AND AGREED AS OF THE DATE FIRST WRITTEN ABOVE:

ARMOR CORRECTIONAL HEALTH SERVICES, INC.

*[signature]*

Jose Armas, M.D.
Founder and President

# Exhibit B



Armor Correctional Health Services, Inc.
4960 SW 72nd Ave, Suite 400
Miami, Florida 33155
Tel: 305-662-8522
Fax: 305-662-8039

August 2, 2019

Scott King
Chief Legal Officer
Corizon Health
103 Powell Court
Brentwood, TN 37027

*Via email scott.king@corizonhealth.com*
*Facsimile at 615-329-6705 and UPS Overnite*

RE: *Ongoing Obligations of Bruce Teal to Armor Correctional Health Services, Inc.*

Dear Mr. King:

On behalf of Armor Correctional Health Services, Inc. ("Armor"), I am responding to your letter issued by Corizon Health ("Corizon") on behalf of Bruce Teal ("Mr. Teal"). With Corizon's decision to speak for Mr. Teal, please understand that Corizon accordingly is representing that it has authorized and/or ratified Mr. Teal's conduct on behalf of Corizon, including, without limitation, any conduct of Mr. Teal since Mr. Teal has joined Corizon. With that context in mind, Armor categorically disagrees with your positions asserted on behalf of Corizon and Mr. Teal except as expressly acknowledged below.

First, Armor agrees that Mr. Teal did not enter into any post-employment restrictive covenants that, standing alone, limit Mr. Teal's ability to be employed by a competitor of Armor, like Corizon. Second, Armor agrees that any information that is in the public domain through no unlawful conduct attributable, directly or indirectly, to Mr. Teal would not be protected by any applicable trade secret law or Mr. Teal's obligations to preserve Armor's confidential information. Subject to these areas of agreement, Corizon's positions ignore Mr. Teal's clear obligations to Armor under, *e.g.*, federal and state trade secret law, his ongoing fiduciary obligations to Armor, and other applicable laws addressing various facets of unfair competition.

Starting with Mr. Teal's ongoing fiduciary obligations, and notwithstanding the assertions raised by Corizon, Mr. Teal may not appropriate, whether for Corizon or anyone else, any corporate opportunity that is within the scope of Armor's business and in which Armor had or may have an interest or expectancy. The fact that Mr. Teal is not employed by Armor does not, in any way alter, his obligations to refrain from pursuing any such opportunities on behalf of Corizon or on his own behalf. In fact, the only

corporate opportunities of Armor's that Mr. Teal may pursue on behalf of Corizon are opportunities to which Armor has consented following the full disclosure of all relevant facts regarding such opportunities. Armor is aware of no such consent, understanding that Armor permitted Mr. Teal to be involved in certain discussions regarding a possible transaction.

In the same vein, merely because Mr. Teal is no longer employed by Armor (in an admitted fiduciary capacity) does not mean that he can use information confidential to Armor's business such as confidential pricing strategies. Mr. Teal's obligations, as a former fiduciary, to protect Armor's confidential information, are ongoing, in addition to the protections otherwise afforded to Armor under the Defend Trade Secrets Act and applicable state trade secrets law.

The fact that Corizon would have Mr. Teal actively participate in a request-for-proposal for a contract with Brevard County when Armor had a longstanding contractual relationship with Brevard County is very concerning to say the least. In this regard, Armor's relationship with Brevard County dated back to 2005, and Armor's most recent contract with Brevard County was set to expire in September 2020. Yet, with Mr. Teal's decision to join Corizon (and with Mr. Teal being integral, in his former role as Armor's Chief Executive Officer and head of Business Development, in developing the pricing and other business strategies for Brevard County), Armor's contract was terminated early and placed for competitive bid. While Armor's investigation of these facts is ongoing, Armor is very concerned with Mr. Teal's apparent usurpation of this corporate opportunity for Corizon, which inevitably involved the associated use of Armor's confidential and trade secret information. In turn, these events implicate Corizon's related obligations to not tortiously interfere with Armor's business relationships, and not to take advantage of and/or aid and abet Mr. Teal's breaches of his fiduciary and other obligations owed to Armor.

In addition to the foregoing breaches, Mr. Teal may not otherwise engage in acts of unfair competition by, *e.g.*, making false and misleading statements regarding Armor's business to its valuable customers and employees. In this regard, Armor understands that Mr. Teal has made false and defamatory comments to Armor's valuable business partners, going so far as to state that Armor's payment practices to providers is illegal (which is untrue). Mr. Teal also has been disparaging Armor's financial position in the marketplace. Clearly, these statements are being made to disrupt Armor's business relationships to Corizon's benefit.

With these parameters in mind, Corizon's statement that Mr. Teal has complied with his legal obligations owed to Armor rings hollow. Indeed, based on Armor's investigation to date, which is ongoing, it appears that Mr. Teal has had no appreciation for his ongoing fiduciary and other legal obligations owed to Armor. Accordingly, Armor requests, in writing by no later than August 8, 2019 the following assurances from both Corizon and Mr. Teal:

1. That Mr. Teal does not, directly or indirectly, possess any property belonging to Armor, whether in hard copy or electronic form, and has not otherwise retained any copies of any such information on any form of storage medium[1];

2. That Mr. Teal has not, directly or indirectly, shared any information relating to Armor, including sharing any information electronically, with Corizon;

3. That Corizon has not incorporated any Armor-related information provided by or on behalf of Mr. Teal into its computer systems;

4. That both Mr. Teal and Corizon shall not use any confidential or trade secret information belonging to Armor;

5. That Mr. Teal shall immediately withdraw, in all capacities from any pursuit of any corporate opportunity belonging to Armor, whether on behalf of Corizon or otherwise;

6. That Corizon shall not utilize Mr. Teal, in any capacity, in the pursuit of any business opportunity in which Mr. Teal was involved on Armor's behalf (and thus would be a corporate opportunity belonging to Armor); and

7. That Mr. Teal will immediately cease and desist from making any false and/or disparaging comments regarding Armor to any actual or potential client, employee or other business partner.

In issuing the foregoing request for written assurances from Mr. Teal and Corizon, Armor does not in any way waive and shall not be estopped from pursuing any form of legal and/or equitable relief to address the concerns generally set forth herein. Instead, all such rights are expressly reserved.

Given the potential for litigation, Armor demands that Corizon and Mr. Teal each institute an immediate litigation hold to preserve all documents and evidence in any way related to any of the following:

1. Corizon's recruitment of Mr. Teal, regardless of who initiated the recruitment process;

2. The terms and conditions of Mr. Teal's employment or consultancy with Corizon;

3. Mr. Teal's activities on behalf of Corizon regardless of whether before or after his employment with Corizon actually commenced;

---

[1] Notwithstanding the foregoing, Mr. Teal may retain information regarding the compensation and benefits provided to him by Armor.

4. Corizon's efforts to do business with Brevard County and any other present or former Armor client, including, without limitation, all aspects of the Brevard County RFP;

5. Armor's business relationship with Brevard County and any other Armor client; and

6. Any internal or external communications regarding any of the foregoing topics.

Please understand that the foregoing preservation demand is non-exhaustive and is based only upon the information currently known to Armor. Accordingly, this list of topics set forth above should be evaluated for expansion (but not retraction) and implemented by all custodians of any documents that fall within the scope of any aspect of this preservation demand.

Furthermore, this litigation hold specifically applies to documents and evidence that presently exist and documents and evidence that are developed from this point forward and until this dispute is finally concluded. This litigation hold applies to all forms of documents and evidence and particularly documents and evidence stored electronically on any form of storage medium. With respect to this preservation request, please understand that, among other things, Corizon and Mr. Teal (individually) must suspend any normal document deletion practices, may not delete any electronic evidence of any kind, and must preserve an exact copy of all hard drives used by any person with knowledge of any of the above-referenced matters. Please also understand that if Corizon or Mr. Teal fails to preserve such evidence upon receipt of this preservation request, Armor reserves the right to seek all sanctions available under operative law that in any way relate to the spoliation of evidence.

If you have questions regarding Armor's position in the interim, you may reach me directly at 404-550-4862.

Best regards,

Santhia Curtis
General Counsel

cc: Otto Campo