```
 1              IN THE UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF FLORIDA
 2
                          MIAMI DIVISION
 3
                  CASE NO.:  19-cv-24656-JLK
 4

 5

 6
    ARMOR CORRECTIONAL HEALTH      )
 7  SERVICES, INC.,                )
                                   )
 8              Plaintiff,         )          July 7, 2020
    v.                             )
 9                                 )
    BRUCE TEAL,                    )          Pages 1 - 23
10                                 )
                Defendant.         )
11  _____/

12

13

14

15            TELEPHONIC DISCOVERY HEARING

16      BEFORE THE HONORABLE JACQUELINE BECERRA
              UNITED STATES MAGISTRATE JUDGE
17

18

19

20
    APPEARANCES:
21

22  On behalf of the Plaintiff:

23              AKERMAN LLP
                50 North Laura Street
24              Suite 3100,
                Jacksonville, FL 32202
25              BY:  JESSICA T. TRAVERS, ESQ.
```

```
 1

 2  APPEARANCES CONTINUED:

 3
    On behalf of the Defendant:
 4
                    BRADLEY, ARANT, BOULT, CUMMINGS, LLP
 5                  1600 Division Street,
                    Suite 700,
 6                  Nashville, TN 37203
                    99 NE 4th Street
 7                  Miami, FL 33132
                    BY:  RUSSELL B. MORGAN, ESQ.
 8

 9

10

11  Transcribed By:

12                  BONNIE JOY LEWIS, R.P.R.
                    7001 SW 13 Street
13                  Pembroke Pines, FL  33023
                    954-985-8875
14                  caselawrptg@gmail.com

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              (Thereupon, the following proceeding was held:)
 2              THE COURTROOM DEPUTY:  The United States District
 3    Court for the Southern District of Florida is now in session.
 4              The Honorable Magistrate Judge Jacqueline Becerra
 5    presiding.  Case Number 19-cv-24656-King; Armor Correctional
 6    Health Services, Inc. versus Bruce Teal.
 7              Counsel, please state your appearances for the record.
 8              MS. TRAVERS:  Good morning, Your Honor.
 9              Jessica Travers of Akerman LLP for the Armor
10    Correctional Health Services.  Appearing with me this morning
11    is my colleague Kimberly Rivera also of Akerman and my client
12    Armor, Santhia Curtis.
13              MR. MORGAN:  Good morning, Your Honor.
14              This is Russell Morgan on behalf of Bruce Teal.  I
15    believe David Chee may be on the line with me.
16              THE COURT:  All right.  Good morning.  We are here
17    pursuant to my discovery proceedings.
18              Can everybody hear me?
19              MS. TRAVERS:  Yes, Your Honor.
20              THE COURT:  Okay.  Great.
21              MR. MORGAN:  Yes, Your Honor.
22              THE COURT:  I am going to tell you what I reviewed.  I
23    am going to tell you how I typically run the procedures
24    calendar and then we will take it from there.
25              So I received from Plaintiff yesterday, again,
```

1   pursuant /SPAOURT to my order, the proposed order, I reviewed

2   that.  Obviously, the notice of hearing.  In addition, I

3   reviewed the second amended verified complaint, as well as a

4   packet of information of underlying materials that again was

5   provided to me by Plaintiff's counsel.

6        As part of that there is a July 2nd letter from

7   Plaintiff's counsel to Mr. Morgan.  It's got a number of

8   attachments or screen shots.  I think that's what they are.

9        There is also a July 1 letter to Karen Davies, who is

10  obviously the witness whose information or laptop is at issue

11  here.

12       There is a notice of *subpoena duces tecum* to her.  And

13  then, there is a matter of e-mails between counsel, as well as

14  a portion of a deposition that was taken of Miss Davies.

15       I have read all of it.  Typically what I do in a

16  discovery hearing is I hear from both sides, obviously.  I

17  typically rule.  I was going to say from the bench.  So you

18  will just have to work with me.  It is my virtual /SREURTual

19  bench here.

20       There won't be a lengthy order.  There won't be

21  necessarily even a written order.  Sometimes it is just a

22  paperless order that notes that we had a hearing that generally

23  states out what my ruling was and then we take it from there.

24       So let me start by saying that I have read everything.

25  And I guess I have a question for Miss Travers first, which is

1  how long will it take for you or your client to decide how it

2  is that you want to handle the information that Miss Davies has

3  in her computer.

4          I understand that there has been a lot of back and

5  forth.  It appears from what I saw not exactly sure from the

6  experts how you want to preserve that evidence or is there now

7  a recommendation?

8          MS. TRAVERS:  Yes.  Thank you, Your Honor.

9          We want to obtain a forensic image of Miss Davies'

10 laptop.  And on June 30th, during the deposition, I made

11 arrangements for a forensic examiner to come to Mr. Morgan's

12 office where Miss Davies was to obtain that forensic image when

13 Miss Davies began expressing her feelings about maintaining the

14 documents on her laptop.

15         And that's what we plan to do and we can facilitate

16 that as soon as possible.  I was able to do that on the 30th,

17 the same day, and we can do that again here.

18         THE COURT:  So hold on.

19         So you had that ready to go on the day of her

20 deposition or you are going of to have that ready to go?

21         MS. TRAVERS:  Both.

22         THE COURT:  Okay.  So this is basically the second

23 sitting of her deposition is on for July 30th; is that correct?

24         MS. TRAVERS:  We don't have a current second sitting

25 set for her deposition at this time.

```
1          THE COURT:  Okay.  All right.  Let me hear from Mr.
2   Morgan.  Why aren't you agreeing to have her laptop imaged?
3          MR. MORGAN:  Well, as an initial matter, Your Honor,
4   we don't control Miss Davies' personal laptop.  Mr. Teal does
5   own that laptop.  This is a --
6          THE COURT:  Hold on, Counsel.
7          Except you have given her direction to destroy the
8   information.  So either you direct it or you don't direct it.
9          So you can't have it both ways, right?  You can't say
10  I don't control her laptop, oh, but, I told her to get rid of
11  it or to delete it when she gave it to me.
12         MR. MORGAN:  It is not within my control.  I told her
13  from my perspective she could delete it, but it is not within
14  my control.
15         This is a matter -- remember this is her personal
16  laptop.  This is Armor data that she obtained while she was
17  working with Armor.  Armor had an obligation to make sure she
18  got it at that point in time.  They didn't do anything about it
19  and then we gave them notice.
20         Now understand what I offered to do and what we've
21  agreed to do and what we have done is preserve the data on a
22  thumb drive and provided it to Armor, which is the exact same
23  thing we did under the exact same scenario with respect to Mr.
24  Teal's computer that was not an Armor issued laptop and Armor
25  agreed to that at that point in time.
```

1          They are wanting to do a forensic image or her

2   computer.  She is a military person.  That has military

3   implications.  We had to spend an enormous amount of time even

4   to return her Armor issued CPU getting her personal data and

5   her military information off of that.

6          So I don't think the Court has the authority to allow

7   -- I mean, Miss Davies is not before the Court.  She is

8   entitled to her own counsel.  She is not before the Court

9   today.  She is not even a subject of the Court's jurisdiction

10  at this point in time.

11          And so to be able to order that she give up her

12  personal laptop and requiring her to make an image available,

13  which is incredibly invasive, subjecting all of her personal

14  data to be inspected and included as a part of that image.

15          What we proposed and what we have done is exactly what

16  Armor agreed to in August, except with different counsel, which

17  is we took the data that was Armor data and downloaded it on a

18  thumb drive and sent it to them.

19          Nobody has ever complained about that process.  Nobody

20  has ever said that didn't work correctly.  Arnall Golden

21  Gregory LLP was the counsel at that time.  We reached an

22  agreement with Armor's consent to do that, which is what I

23  propose to do here, but they want a forensic image.  And Miss

24  Davies is not agreeing to that.  I mean, she's got a right to

25  be heard on that.

1       Mr. Teal doesn't speak for her.  I don't speak for

2  her.  This is her personal laptop with Armor data.  Mr. --

3       THE COURT:  Aren't you her counsel?  I thought you

4  were her counsel.

5       MR. MORGAN:  No, I'm not.  I am absolutely not her

6  counsel.

7       THE COURT:  That is not what the notice of hearing

8  says.  So I know the phone kind of gets people going a little

9  bit, but I am taking that, sir, from the local Rule 7.183

10 certification that says that Defendant and Miss Davies' current

11 employer Corizon, that you represent them both.

12      MR. MORGAN:  I represent Corizon and I represent Mr.

13 Teal, but I do not represent Miss Davies with respect to what's

14 on her personal laptop.  Corizon doesn't control her personal

15 laptop.  Mr. Teal doesn't control her personal laptop.

16      THE COURT:  I understand that it is her personal

17 laptop, but the problem is if you take a personal laptop and

18 then you put company information on it and that information is

19 relevant, I think they have a right to have that information.

20      And when you put it on a thumb drive, I have no idea

21 why other counsel allowed that.  It depends on what kind of

22 information it was, but when you have a thumb drive oftentimes

23 the metadata is not there.

24      Now, it is not that hard to grab the metadata

25 surrounding whatever group of files are at issue.  I mean, I

1  hear you on the issue of I don't think that they are entitled

2  to have information that's completely irrelevant or information

3  that is personal here.

4         But let me hear from Plaintiff as to why, A, you need

5  the forensic information as to those files if, in fact, you

6  didn't it from another witness.

7         MS. TRAVERS:  Sure.

8         THE COURT:  And why it is that your forensic expert

9  can't simply grab the metadata.  I mean your forensic expert

10  could be instructed, look, that's the file folder that we are

11  looking for and that expert can grab that folder and the

12  metadata on that folder.

13        MS. TRAVERS:  Sure.  Let me address all of your

14  requests.

15        First of all, a federal court may issue a preservation

16  order as part of its inherent order to manage its own

17  proceedings and federal courts have issued those preservation

18  orders as to third parties.

19        One example is *Arkin v. Gracy-Dana, Inc.*, which is

20  case number 16-cv-1717.  It is a Middle District of Florida

21  7/22 2016 case wherein the Middle District of Florida issued a

22  preservation order to a third party who had a regular routine

23  destruction practice and evidence that was going to be relevant

24  to the case.

25        What Mr. Morgan is referring to is pre-litigation ,

1  the exchange of information between Armor and Corizon pursuant

2  to a confidentiality agreement where it was learned that Mr.

3  Teal and Miss Davies retained Armor computers and also Mr. Teal

4  had Armor information on his Corizon computer.

5         At that time, pursuant to the parties agreement, the

6  Corizon issued laptop that Mr. Teal had was forensically imaged

7  pursuant to the parties' agreement and then information that

8  was removed from that laptop was provided on a zip drive.

9         It was not the case that we agreed that simply

10 downloading items onto a zip drive would be an appropriate way

11 of keeping the metadata and forensic artifacts intact.  There

12 was a forensic image of Mr. Teal's personal Corizon laptop done

13 at that time.

14        Miss Davies' Armor computer that was returned had

15 personal items on it.  The personal items were put on a zip

16 drive and shared with Armor's prior counsel pre-litigation in

17 order for them to confirm that the personal information that

18 had been deleted was, in fact, truly personal.

19        Now we are in litigation and we have tied to Miss

20 Davies' personal MacBook Air to this case.  Miss Davies

21 possesses, on that MacBook Air, Armor documents that she, in

22 fact, e-mailed to Mr. Teal while he was employed; while they

23 were both employed at Corizon.

24        Those Armor documents, it is Armor's position, are

25 Armor's confidential and proprietary information and trade

1  secret.  What was done pre-litigation to make sure that Armor

2  had its information returned should not be the measure by which

3  we are he preserving information that is directly relevant to

4  this action, which includes trade secrets and confidential and

5  proprietary information.

6       It is not necessary for Armor to have unfettered

7  access to Miss Davies' laptop as part of this process.  A

8  forensic image can be obtained and shared with third parties.

9  We can develop search terms that would hit whatever relevant

10 documents might be on that laptop and, then, only be able to

11 view those documents.

12      We certainly do not want to interfere with Miss

13 Davies' private rights of any military information or personal

14 information she has.

15      However, particularly when it comes to trade secrets

16 where the issue is how are those used and misappropriated, the

17 mere existence of those documents on the laptop for finding

18 those documents on a thumb drive is not sufficient and a

19 forensic examination is necessary.

20      Of course, the sufficient protocols which we are

21 willing to agree to ensure that Miss Davies' privacy is not

22 infringed upon.

23      THE COURT:  Hold on a second because there are two

24 different things here.

25      To take an image and do searches is not the same thing

1  as getting the metadata.  So there are two different things.

2  So I guess my first question is --

3        MS. TRAVERS:  Right.

4        THE COURT:  -- if she's got a computer and she has

5  already said, look, everything that I've got is in that zip

6  file and she gives you the full zip file, you don't need to run

7  search terms.

8            If what you are looking for is the metadata to those

9  search files to establish when she copied and things like that,

10  that's when forensic comes.  You have now said two different

11  things in terms of --

12        MS. TRAVERS:  Well --

13        THE COURT:  -- what it is why you wanted the laptop.

14  So I just wanted some clarity there as to what it is you are

15  looking for.

16        MS. TRAVERS:  We want the forensic image as a bit by

17  bit image.  And then we would be targeting and looking at the

18  data and metadata and we would be willing to target that search

19  to only certain items so we are not infringing and looking at

20  metadata and personal information.

21            And I have been told by my forensic examiner that it

22  would be possible to preserve a pristine image of the laptop

23  and then to proceed by developing a protocol by which we focus

24  our metadata and forensic examination on only certain facets of

25  the laptop so we are not improperly viewing her private

1  information.  A zip file is not sufficient.

2        What we provided in our discovery packet included the

3  original files of things that we received that was purported to

4  be the items on Miss Davies' computer.  If they are not already

5  in a folder on her computer, Miss Davies collected most

6  recently in May or June of 2020 conducted a search on her

7  laptop for Armor information and then culled those files into

8  the computer already altering their metadata once.  Then I

9  received a printout of --

10        THE COURT:  I understand that because I read all these

11  e-mails last night.  Let me ask you a question.

12        MS. TRAVERS:  (Inaudible).

13        THE COURT:  No.  For better or worse I have read

14  everything, so let me ask you a question, though.

15        This plan that you have of how you would take the

16  forensics image and the protocols that you would have, is that

17  something that you shared with Mr. Morgan yet or not?

18        MS. TRAVERS:  When we were on the record at the

19  deposition, I informed him that we could take a forensic image

20  and we could develop a protocol that would protect her privacy

21  interests.  I asked --

22        THE COURT:  Is that the part of the transcript that

23  you gave me?  Because I think you guys have way more talking to

24  do here.  Hold on.

25        Mr. Morgan, so do you have an opposition to that

1  happening to a forensic image being taken and then, obviously,

2  there would be agreed upon protocols to make sure that, you

3  know, to the extent there is information there that is personal

4  that it wouldn't be seen by opposing party.

5       I certainly do not know why she would have any kind of

6  military information on a personal laptop because I am fairly

7  certain that you are not supposed to do that.  So I think what

8  we are talking about here is her personal information that they

9  are not entitled to and I am sure she doesn't want them to

10 have.  I understand that.

11      But you could develop a protocol where, in fact, you

12 keep the forensic image.  They would not necessarily have the

13 forensic image.  You would have it.  There would be a protocol.

14 They would give you search terms.  You would have the ability

15 to look at that to be sure that you were not turning over

16 anything that was irrelevant to the proceeding.

17      And then, their expert could take the metadata just

18 for whatever portion of the files they deem are relevant.

19 Assuming, at the end of the day, need the metadata.

20      What is your objection to that?

21      MR. MORGAN:  So, during the deposition, the target

22 moved.  At one point we were only talking about this file that

23 has Armor data on it.

24      And then, counsel for Armor said that they wanted to

25 do a forensic image and they wanted to search a forensic image

1  of the laptop and that was their plan.

2          I don't care.  My client, Mr. Teal, is not going to

3  bear the expense of doing all this work.  I mean, why should he

4  -- this is between Armor and Miss Davies.  This is Armor

5  information that she left with.

6          If they would have done what they were obligated to

7  do, they would have told her to send that to them before she

8  left the company.  They had 30 days.  She gave a notice of

9  resignation.  They had 30 days to ask her to return all of the

10 company information and she would have done it, but they didn't

11 do that.

12         So now, anyway, getting back to my point, I went and

13 told Miss Davies what they asked.  I said they would like to do

14 a forensic image of your MacBook and she said absolutely not.

15 That was her response.

16         My position is it's her laptop.  It's her MacBook.

17 I've got no stake in the game, except Corizon.  And Mr. Teal

18 should not have to bear the financial burden of doing all these

19 protocol searches.  And I do not think if she would have said

20 we want to do a forensic download of this Armor file, that's a

21 different question.

22         And Your Honor picked up on that and that is a very

23 different question, but that was not the request.  They want to

24 do an image.  And she is wrong.  We did not image the Corizon

25 laptop.  That was never part of the agreement.

1          We downloaded the file that had Corizon data on it and

2    we sent it to them on a thumb drive.  And so we did image both

3    the Armor laptop that had been taken, but we didn't image the

4    Corizon laptop.

5          THE COURT:  Well, I will tell you, Mr. Morgan, the

6    issue that I have, at least from looking at these e-mails, I

7    hear you when you say, you know, this is not really your fight,

8    but then --

9          MR. MORGAN:  It is not.

10         THE COURT:  I know, but you have these e-mails that

11   you sent Miss Travers where you are specifically saying that

12   you are going to tell this woman to destroy the information.

13   That you are giving her instruction to do so.  And essentially,

14   at the deposition, she exactly mimicked the same thing that you

15   say in e-mails back to Miss Travers.

16         So if your position from the get-go had been, hey, you

17   know, Miss Travers, this is a third party witness that I have

18   nothing to do with.  Here's her home number.  You figure it out

19   with her.  Then I hear you on that, but that is certainly not

20   the position that you have taken to date.

21         So this is what I am going to do.  I will hear from

22   both parties once I announce whether or not you guys have any

23   objection to it or what objection you have to the process I am

24   going to announce.

25         So I am going to find that Miss Davies has to preserve

1   this laptop and take efforts not to do anything to delete or

2   otherwise destroy or alter any information at issue.  So I am

3   going to issue that order that says that.

4         In the meantime, I am going to order the parties to

5   confer as to a protocol to be able to take the information that

6   is relevant from that computer in a manner in which it

7   preserves her rights, you know, interests in keeping her

8   private information private.

9         I assume, Mr. Morgan, that you will be involved in

10  that because to date you seem to be very involved with these

11  documents.  If you are not going to be involved in it at all

12  and Miss Davies is truly --

13        MR. MORGAN:  I am going to tell Miss Davies to get her

14  own counsel.

15        THE COURT:  Excuse me, sir.  I'm not done.

16        All right.  When I'm done I will give you a chance,

17  but you can't interrupt me.

18        So maybe she will get her own counsel and maybe you

19  will represent her.  I don't know what will happen.  All right.

20  So I am going to order her to preserve it for now just to keep

21  the *status quo* and your discovery deadline here isn't for a bit

22  anyway.

23        So I am going to give the Plaintiff 15 days to come up

24  with a protocol that will satisfy Miss Davies with respect to

25  the retrieval of this information.  If you can't come to an

1  agreement with Miss Davies as to how this information can be

2  retrieved, then I will hear you.

3        Again, you will set it back again for me for a hearing

4  and I will hear from the Plaintiff.  And I will either hear

5  from Miss Davies or I will hear from her counsel as to why it

6  is what you have recommended is not sufficient or is not

7  something that you are entitled to.

8        I have to say there are two completely things going on

9  here.  You absolutely do not need any kind of forensic review,

10  as best I know, to do search terms.  And I don't think I would

11  order a review of the laptop if you told the witness we need

12  all the documents you have in your position and she says, here

13  they are, right?  So I don't think you need a forensic image

14  for that.

15        If you have reason to believe that the metadata of

16  that information is relevant to your case and that is why you

17  need a forensic image, then, I will hear you on that at the

18  next hearing, unless you have agreed to something else, but it

19  is entirely two different things.

20        If somebody said I have information in response to the

21  subpoena and it's in my laptop, they are obligated because they

22  have received a subpoena, they are obligated to get that

23  information and give it to you.

24        I don't think that rises to the level of you getting a

25  forensic image of that laptop for you to peruse it using search

1  terms especially for a third party.

2           That being said, given that it is confidential

3  information of your client and given the nature of the lawsuit

4  and the issues, I think there could be an argument that the

5  metadata of that information is relevant to your suit.  I will

6  hear you on that if you can't come to some agreement with her

7  about it.

8           I personally believe, but I haven't been in practice,

9  private practice now for 17 months and these things change by

10 the minute.  I could get what you are interested in is the

11 metadata of a certain file.  I think you can get that

12 information without completely getting a forensic image.

13          It may take longer, but I think you can do it.  Maybe

14 you can't.  Maybe you can't give him what kind of computer she

15 has.  I don't know, but if you are going to come back before me

16 seeking a forensic image of her entire computer because you

17 need the metadata of a certain set of information, I want to

18 hear from you as to why you need the entire forensic image in

19 order to accomplish that.

20          So for now what I am doing is ordering the *status quo*.

21 Mr. Morgan, I expect you to deliver that message to Miss Davies

22 in the next 15 minutes.  So the next thing you are going to do

23 is call Miss Davies and tell her that she's got to sit tight on

24 that stuff.

25          You can tell her that she needs a lawyer.  You cannot,

1  I don't care, what you're going to tell her, not to do anything

2  to alter or destroy the information.

3         And the reason I am ordering you to do that and your

4  counsel before me is because I've read the representations that

5  you have made to counsel on this.  And you have certainly done

6  a lot more than just say, well, do what you think is best.  You

7  have absolutely told Plaintiff's counsel that they have not

8  given you sufficient direction that the information is going to

9  be deleted.

10        I have seen what you have said.  I have seen your

11 participation in it.  So, at the very least, I am going to ask

12 you to correct that and to tell her that she is to at least

13 preserve it.

14        If she can figure out, or if her counsel can figure

15 out with Plaintiff how best to get this information so it is

16 responsive to their request, great.  If they can't, then, I

17 will hear argument on that issue.

18        But then I want specific argument after you have

19 consulted with both Miss Davies and your forensic expert as to

20 what is the least intrusive means to get the information and

21 then I will hear you then on the relevancy of that information.

22        So let me hear from Plaintiff.  Any objection to what

23 I have just stated?

24        MS. TRAVERS:  The objection, we would just make an

25 additional request.  We have been unable to serve Miss Davies

1    with the subpoena.  She recently sold her home and left no

2    forwarding address.  And Corizon refused to accept service of

3    the subpoena and an in-house lawyer came out and said they

4    wouldn't accept service.

5            So because you are giving us this 15-day deadline and

6    Mr. Morgan has indicated that Miss Davies may get her own

7    counsel, in addition to having him notify Miss Davies right

8    away, we would also like him to ask her for her current

9    address.

10           And also, have a timeline by which we will know

11   whether she is proceeding with her own counsel so we can move

12   forward on this expeditiously and meet that 15-day deadline.

13           THE COURT:  Mr. Morgan?

14           MR. MORGAN:  I'm happy to give the address.

15           THE COURT:  Okay.  I also here you have it.  So you

16   don't have to worry about doing that.

17           All right.  Mr. Morgan, do you have any objection to

18   the procedure I have just laid out?

19           MR. MORGAN:  The only objection is as noted.  I don't

20   think you have jurisdiction over Miss Davies at this time, but

21   I will comply with the Court's order.

22           THE COURT:  Well, all I am doing is asking her to

23   preserve it.  And if you feel I don't have jurisdiction and you

24   feel if her lawyer doesn't have jurisdiction, then she can go

25   ahead do whatever she wants with that laptop, but she will have

1   to hear from me later if you are wrong about that.

2          Right now, I think I do have jurisdiction given at

3   least from what I can see just from the information that I

4   have.  And if this information is clearly relevant, you have

5   not made any argument that the information at issue is not

6   relevant.

7          So I am going to ask her to preserve it, in fact, 15

8   days.  If you need more time and she has counsel and Miss

9   Davies and Miss Travers you enter into an agreement and you

10  have discussion and it takes you more than 15 days, then that's

11  fine.

12         As long as both parties agree that you need more time

13  you don't need to come back here.  But if at 15 days there's

14  no, you know, resolution in sight, then you will come back.

15         And like I said, I would want to hear argument then as

16  to why you need the forensic image as opposed to having her

17  just give you what she found to be the relevant and responsive

18  information.

19         All right.  So, again, Miss Davies is to preserve that

20  laptop.  And in about 15 days for Miss Travers to come to an

21  agreement with her on the information.  Mr. Morgan is to advise

22  Miss Davies forthwith as to the fact that I have ordered her to

23  preserve that laptop and Mr. Morgan is to provide Miss Travers

24  with the address for Miss Davies.

25         All right.  Anything further on behalf of the

1  Plaintiff?

2      MS. TRAVERS:  No, Your Honor.  Thank you for your time

3  this morning.

4      THE COURT:  Anything else, Mr. Morgan?

5      MR. MORGAN:  No, ma'am.

6      THE COURT:  All right.  Thank you very much.  You all

7  have a good day and stay safe.

8      MS. TRAVERS:  Thank you.  You too.

9      THE COURT:  Bye-bye.

10      (Thereupon, the proceedings concluded.)

1

2                                    CERTIFICATE

3

4          I hereby certify that the foregoing transcript is an

5   accurate transcript of the audio recorded proceedings in the

6   above-entitled matter.

7

8

9

10
    07/26/20                        Bonnie Joy Lewis,
11                         Registered Professional Reporter
                              CASE LAW REPORTING, INC.
12                            7001 Southwest 13 Street,
                            Pembroke Pines, Florida 33023
13                                954-985-8875

14

15

16

17

18

19

20

21

22

23

24

25