UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 19-24656-CIV-KING/BECERRA

ARMOR CORRECTIONAL HEALTH
SERVICES, INC.,

    Plaintiff,

v.

BRUCE TEAL,

    Defendant.

_____/

**PLAINTIFF ARMOR CORRECTIONAL HEALTH SERVICES, INC.'S**
***DAUBERT* MOTION TO PRECLUDE OPINION TESTIMONY OF DEFENDANT**
**BRUCE TEAL'S EXPERT EDWARD DEPPMAN, MOTION *IN LIMINE* RELATED**
**TO PORTIONS OF EDWARD DEPPMAN'S EXPERT REPORT, AND**
**INCORPORATED MEMORANDUM OF LAW**

    Plaintiff, Armor Correctional Health Services, Inc. ("**Armor**"), by and through undersigned counsel, pursuant to Southern District of Florida Local Rules 7.1, hereby moves for entry of an Order excluding portions of the proposed opinion testimony, and the corresponding portions of the report in which it is contained, of Edward Deppman ("**Deppman**"), one of the experts that the Defendant in this action, Bruce Teal ("**Teal**"), has disclosed as a testifying expert at trial.[1]

    Deppman is an accounting expert whose engagement in this matter was narrowly limited to estimating Armor's lost profits due to the premature termination its Health Services Agreement with the Brevard County Sheriff's Office (the "**Brevard Agreement**") for the period between February 1, 2020 (the effective date of the premature termination), to September 30, 2020 (the expiration date of the Brevard Agreement absent a renewal). This Motion seeks to

---

[1] Armor filed an unopposed motion to seal (ECF No. 69) (the "**Motion to Seal**") certain portions of this Motion and exhibits thereto, as they contain confidential information more particularly described in Armor's Motion to Seal. Pending a ruling on Armor's Motion to Seal, Armor has redacted the proposed sealed material in this Motion and the exhibits thereto.

57986415;2

exclude portions of Deppman's testimony, and the corresponding portions of his expert report, because they do not satisfy the requirements of the Federal Rules of Evidence, as interpreted by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny. Specifically, the following portions of Deppman's testimony and report should be excluded because Teal cannot satisfy his burden of proof under *Daubert* as to these opinions: (**a**) legal interpretations and legal opinions related to the Brevard Agreement or any renewals thereof, including but not limited to those related to termination of the Brevard Agreement and the likelihood that the Brevard Agreement would have been renewed after September 30, 2020; (**b**) opinions related to Armor's medical malpractice liability, including but not limited to the value of pending and future medical malpractice claims and the likelihood of future medical malpractice liability; and (**c**) opinions regarding business judgment, or what a prudent business person would do in any given situation.



REDACTED: Motion to Seal Pending (ECF No. 69)

In support of this motion, Armor states:

## I. RELEVANT BACKGROUND

This case arises from Teal's actions in violation of post-employment restrictive covenants in an Employment Agreement between Armor and Teal (collectively, the "**Parties**")—specifically, through his actions as an employee of Armor's direct competitor, Corizon Health Inc. ("**Corizon**").

Armor is a healthcare provider with a substantial presence in the Southeast United States, including Florida, that focuses on providing medical services to correctional facilities. 2d Am. Verified Compl. Injunctive Relief & Damages (Mar. 24, 2020) (ECF No. 22), at ¶ 3 (the "**Complaint**" or Compl.). One of the keys to Armor's business is to partner directly with municipal-government entities and then offer its healthcare services to those municipalities' local correctional facilities. *Id.* at ¶ 8.

Teal served as a high-level executive for Armor for over a decade, most recently as its Chief Executive Officer, until he resigned in November 2018. In 2006, at the beginning of his

employment, the Parties executed an Employment Agreement (the "**Employment Agreement**," ECF No. 22-1), in which Teal agreed to certain post-employment restrictive covenants (collectively, the "**Restrictive Covenants**"), including (**a**) an obligation to keep Armor's confidential and proprietary information secret and confidential during *and after* his employment with Armor [Emp. Agm't, ECF No. 22-1, at ¶ 4(a)]; and (**b**) an agreement to not (**i**) compete with Armor for one (1) year in certain geographies where Armor operates, or (**ii**) engage in business with any Armor client for two (2) years. *Id.* at ¶ 4(b). In the Employment Agreement, Teal also acknowledged and agreed, *inter alia*, that his breach of the Restrictive Covenants would cause Armor irreparable harm and that he would be responsible for paying "[Armor] all compensation, profits, and other benefits which inure to [his] benefit which are derived or received by [him] . . . from any action or transactions constituting a breach of any of the Restrictive Covenants." *Id.* at ¶ 4(c)(i). In addition to the Employment Agreement, Teal also signed a Confidentiality Agreement with terms similar to the confidentiality provision of the Employment Agreement. *See* ECF No. 58-6.[2]

Shortly after resigning from Armor in November 2018, Teal went to work for Armor's direct competitor, Corizon, for the intended purpose of soliciting Armor's prior and current clients. In doing so, Teal used Armor's confidential information to prepare pricing proposals for Armor's prior and current clients. Armor will prove at trial that several of Armor's clients terminated their contracts as a result of Teal's actions. In at least one instance—namely the Brevard County Sheriff's Office ("**Brevard**"), Corizon (with Teal's help) secured the contract that had previously been Armor's.

In this case, Armor seeks "damages and injunctive relief to address Teal's (**i**) improper interference with and diversion of Armor's client[s] in knowing violation of Teal's employment and post-employment obligations and Florida law; (**ii**) misappropriation of trade secrets in violation of Florida's Uniform Trade Secrets Act ("**FUTSA**"), Fla. Stat. 688.01 *et seq.*; and (**iii**) improper access of Armor's secured computer systems." Compl. (ECF No. 22), at ¶ 1.

---

[2] A true and correct copy of the Confidentiality Agreement was attached as Exhibit 6 to *Plaintiff's Statement of Material Facts in Support of Its Motion for Partial Summary Judgment* (ECF No. 58).

57986415;2

**Deppman's Report & Testimony**

On March 4, 2021, Teal served *Bruce Teal's Rule 26 Expert Disclosures* (the "**Disclosures**"), a true and correct copy of which is attached hereto as **Exhibit 1**. The Disclosures identify, *inter alia*, Deppman as an expert witness. Deppman's expert report, which includes his CV, was attached to the Disclosures as Exhibit A (the "**Report**").

Deppman is a Certified Public Accountant (CPA). Counsel for Teal specifically limited the scope of Deppman's Report and proffered expert testimony to "estimat[ing] the profit margin that would have been earned by [Armor] under its agreement to provide medical services to [Brevard] over the period from February 1, 2020 to September 30, 2020." Report, Ex. 1-A, at p.3, ¶ 12; Tr. at 21, 43-44.[3] In preparing his Report, Deppman used documents that were provided by Teal's counsel as well as information he found independently through internet research, such as press releases and news articles. Tr. at 25:5-24. As to the documents provided by Teal's counsel, Teal's counsel both (**a**) requested financial documents from Armor based on Deppman's requests, and (**b**) provided Deppman with certain documents that he determined were relevant to Deppman's analysis. Deppman's opinions at issue in this Motion are outlined below.



REDACTED: Motion to Seal Pending (ECF No. 69)

---

[3] A true and correct copy of pertinent excerpts from the transcript of Deppman's deposition on April 23, 2021, is attached hereto as **Exhibit 2** and cited as "Tr. at [page]:[line]."

4

57986415;2



*Id.* at 37:19-38:1.



57986415;2



REDACTED: Motion to Seal Pending (ECF No. 69)

**Opinions Regarding Business Judgment**: As stated above, the scope of Deppman's engagement for preparing the Report was limited specifically to the eight-month time-frame of

February 1, 2020, to September 30, 2020. Report, Ex. 1-A, at p.3, ¶ 12.

REDACTED: Motion to Seal Pending (ECF No. 69)

57986415;2



## II. LEGAL STANDARDS

### A. *Daubert* Motion

Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In *Daubert*, the Supreme Court explained that Rule 702 imposes an obligation on trial courts to act as gatekeepers, to ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. 509 U.S. at 589. In evaluating the admissibility of expert

testimony, the Court engages in "a rigorous three-part inquiry," in which "[t]rial courts must consider whether":

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)); *see also McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233 (11th Cir. 2005). These three basic requirements are referenced as the "qualification, reliability, and helpfulness" prongs, respectively. *See Frazier*, 387 F.3d at 1260.

"[F]ederal district courts . . . have substantial discretion in deciding how to test an expert's reliability and whether the expert's relevant testimony is reliable." *United States v. Majors*, 196 F.3d 1206 (11th Cir. 1999) (quoting *Forklifts of St. Louis, Inc. v. Komatsu Forklift, USA, Inc.*, 178 F.3d 1030, 1034 (8th Cir. 1999) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 119 S. Ct. 1167, 1174-76 (1999))). In addition, "a district court may exclude portions of an expert's testimony that fail to satisfy *Daubert*, yet still conclude that an expert may testify and opine on other matters[.]" *Ford v. Carnival Corp.*, No. 08-23451-CIV, 2010 WL 9116184, *4 (S.D. Fla. Mar. 4, 2010). The party offering the expert bears the burden of demonstrating admissibility of the expert testimony. *Cook ex. rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1107 (11th Cir. 2005).

### B.  Motion *in Limine*

Evidence is generally admissible if it is relevant. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402.

Even if evidence is relevant, "[t]he court may exclude [the] evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

District courts have broad discretion to determine the admissibility of evidence. *United States v. Sarmiento-Perez*, 724 F.2d 898, 900 (11th Cir. 1984). "A motion *in limine* is '[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial.' " *XTEC, Inc. v. Cardsmart Tech., Inc.*, No. 11-22866-CIV, 2014 WL 10250973, *1 (S.D. Fla. Dec. 2, 2014) (quoting *Black's Law Dictionary* 1171 (10th ed. 2014)). Motions *in limine* allow the Court to rule on issues pertaining to evidence in advance of trial to avoid delay and ensure an even-handed and expeditious trial. *See State Farm Mut. Auto. Ins. Co. v. John Romano, D.C.*, No. 12-20438-Civ, 2013 WL 12061865, *1 (S.D. Fla. Oct. 30, 2013); *Royale Green Condo. Ass'n v. Aspen Specialty Ins. Co.*, No. 07-021404-CIV, 2009 WL 2208166, *1 (S.D. Fla. July 24, 2009). The granting of appropriate motions *in limine* is part of the district court's inherent power "to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).

### III.   *DAUBERT* ANALYSIS

For the reasons explained below, the following opinions in Deppman's Report and testimony should be excluded because Teal cannot carry his burden to establish they are admissible under *Daubert*: (**a**) legal interpretations and/or opinions related to the Brevard Agreement or any renewals thereof, including but not limited to those related to termination of the Brevard Agreement and the likelihood that the Brevard Agreement would have been renewed after September 30, 2020; (**b**) opinions related to Armor's medical malpractice liability, including but not limited to the value of pending and future medical malpractice claims and the likelihood of future medical malpractice liability; and (**c**) opinions regarding what a prudent business person would do in any given situation (collectively, the "**Opinions at Issue**").

#### A.   <u>Deppman Is Not Qualified to Render the Opinions at Issue.</u>

First, "[i]n determining whether a proffered expert is 'qualified' to offer an opinion, courts generally look to evidence of the witness's education and experience and ask whether the subject matter of the witness's proposed testimony is sufficiently within the expert's expertise." *Schenone v. Zimmer Holdings, Inc.*, 3:12-CV-1046-J-39MCR, 2014 WL 9879924, at *11 (M.D. Fla. July 30, 2014) (quoting source omitted).

**Legal Interpretations and Legal Opinions Related to the Brevard Agreement or Any Renewals Thereof**: Deppman is not qualified to render legal interpretations and/or opinions related to the Brevard Agreement and renewals thereof. Deppman's CV indicates and he confirmed at his deposition that he is not an attorney. CV, Ex. 1-A, at Ex. 1; Tr. at 68:25 ("I'm

10

57986415;2

Case 1:19-cv-24656-BB   Document 76   Entered on FLSD Docket 05/03/2021   Page 11 of 19

not an attorney"); *id.* at 69:15-16 ("I don't think I have the legal experience to make a determination on that."). He does not have any specialized training on reading/interpreting contracts. *See* CV, Ex. 1-A, at Ex. 1; *see* Tr. at 68:25 ("I'm not an attorney."). He has not spoken on this topic; nor does he have any publications on the topic. *See* CV, Ex. 1-A, at Ex. 1.

In fact, Deppman agreed at his deposition that it is outside his area of expertise to (**a**) provide an opinion on the likelihood of Brevard renewing the Brevard Agreement (Tr. at 37:25-38:1), or (**b**) render an opinion on causation related to the termination of the Brevard Agreement and Armor's loss associated therewith. *Id.* at 68:17-69:20.[4]

**Opinions Related to Armor's Medical Malpractice Liability**: Deppman is not qualified to render opinions related to Armor's medical malpractice liability (other than the pure financial aspect of past medical malpractice liabilities). Again, Deppman is not an attorney. CV, Ex. 1-A, at Ex. 1; Tr. at 68:25 ("I'm not an attorney"); *id.* at 69:15-16 ("I don't think I have the legal experience to make a determination on that."). He does not have any specialized training on assessing or valuing medical malpractice claims. CV, Ex. 1-A, at Ex. 1. He has not spoken on this topic, and he does not have any publications on this topic. *Id.* In fact, Deppman explicitly stated at his deposition that he is not qualified to evaluate medical malpractice claims:

> Q.   But you're not – it's not within your expertise or qualifications to evaluate the likelihood of loss or the amount of loss from a litigation, correct?
> A.   Correct.

Tr. at 52:13-17.

**Opinions Regarding Business Judgment**: Deppman is not qualified to render opinions regarding business judgment, or what a prudent business person would do in any given situation. He is a CPA but does not have any specific training or expertise on business judgment or business advice. *See Schenone*, 2014 WL 9879924, at *2 ("[I]f an expert is relying solely or primarily on experience as the basis for his or her expertise, 'then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.' " (quoting Fed. R. Evid. 702 Advisory Comm. Notes (2000) (quoting *Frazier*, 387 F.3d at 1261))). Likewise, his CV does not

---

[4] In addition, Deppman's Report does not contain this opinion and, therefore, it should be excluded on this basis as well, which is the subject of a separate motion *in limine* filed contemporaneously with this Motion.

11

57986415;2

reflect any training on business judgment or the prudent business person standard. CV, Ex. 1-A, at Ex. 1. Further, determining what a prudent business person would do was outside the scope of Deppman's engagement for this case. Tr. at 64:24-65:4.[5]

Thus, Deppman is not qualified to render the Opinions at Issue.

### B. The Opinions at Issue Are Not Reliable.

Second, as to reliability, the Court considers several factors, including:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.

*Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003); *see id.* ("[T]hese factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis.").

The U.S. Circuit Court of Appeals for the Eleventh Circuit has explained the reliability inquiry as follows:

> Daubert requires the trial court to act as a gatekeeper to insure that speculative and unreliable opinions do not reach the jury. [*Daubert*, 509 U.S.] at 589 n.7, 597, 113 S. Ct. 2786. As a gatekeeper the court must do "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 593–94, 113 S. Ct. 2786. *The proposed testimony must derive from the scientific method; good grounds and appropriate validation must support it.* *Id.* at 590, 113 S. Ct. 2786. "In short, the requirement that an expert's testimony pertain to 'scientific knowledge' establishes a standard of evidentiary reliability." *Id.*

*McClain*, 401 F.3d at 1237-38 (footnote omitted) (emphasis added).

**Legal Interpretations and Legal Opinions Related to the Brevard Agreement or Any Renewals Thereof**: Deppman's legal interpretations and legal opinions related to the Brevard Agreement are not supported by "good grounds and appropriate validation," considering he has no legal training whatsoever and explicitly stated at his deposition that he is not qualified to render opinions related to the legal effect of the Brevard Agreement. CV, Ex. 1-A, at Ex. 1; Tr. at

---

[5] Further, for the reasons set forth in footnote 4 above, this opinion should also be excluded by and through a separate motion *in limine* filed contemporaneously with this Motion because this opinion did not appear in Deppman's Report.

57986415;2

68:25 ("I'm not an attorney"); *id.* at 37:25-38:1 (stating he cannot render an opinion as to the likelihood of a renewal); *id.* at 68:17-69:20 (stating he is not a position to render an opinion on causation related to the termination of the Brevard Agreement and Armor's loss associated therewith); *see id.* at 69:15-16 ("I don't think I have the legal experience to make a determination on that.").

**REDACTED: Motion to Seal Pending (ECF No. 69)**

*See Cordoves v. Miami-Dade Cty.*, 104 F. Supp. 3d 1350, 1364 (S.D. Fla. 2015) ("[A]n expert 'may not testify to the legal implications of conduct; the court must be the jury's only source of law.' " (quoting *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990))); *Brown Jordan Int'l Inc. v. Carmicle*, 2015 WL 11661770, *1 (S.D. Fla. Oct. 9, 2015) ("Whether Brown Jordan's corporate management, senior management, officers, or directors breached a fiduciary duty to its shareholders is an ultimate issue of law in this case and therefore is an inappropriate subject of expert opinion."); *id.* at *2. While an expert like Deppman can assist the trier of fact in understanding the facts upon which the expert relied in reaching his/her conclusion, he/she cannot "testify as to whether [a] legal standard has been satisfied." *Cordoves*, 104 F. Supp. 3d at 1364 (quoting *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1212-13 (S.D. Fla. 2015)); *Carmicle*, 2015 WL 11661770, at *1 ("An expert "may not testify to the legal implications of conduct; the court must be the . . . only source of law." (quoting *Montgomery*, 898 F.2d at 1541 (11th Cir. 1990)).

**Opinions Related to Armor's Medical Malpractice Liability**: Similarly, Deppman's opinions regarding Armor's future medical malpractice liability (other than mere financial calculations) are not supported by "good grounds and appropriate validation," considering he has no legal training whatsoever and explicitly stated at his deposition that it is outside his expertise to evaluate or value medical malpractice claims. CV, Ex. 1-A, at Ex. 1; Tr. at 68:25 ("I'm not an attorney"); *id.* at 52:13-17 (stating it is outside his expertise to evaluate or value medical malpractice claims); *see id.* at 69:15-16 ("I don't think I have the legal experience to make a determination on that.").

**Opinions Regarding Business Judgment**: Just because Deppman is a CPA does not make him an expert on how a prudent business person would act in any given situation. *See*

13

*Frazier*, 387 F.3d at 1261 ("The trial court's gatekeeping function requires more than simply taking the expert's word for it." (quoting Fed. R. Evid. 702 Advisory Comm. Notes (2000))). *Cf. McClain*, 401 F.3d at 1242-44 ("O'Donnell has simply substituted his own *ipse dixit* for scientific proof on this essential issue").

Deppman reviewed only Armor's financial information with which he was provided and certain other information regarding Armor's relationships with its clients that was cherry-picked by Teal's counsel. He was not provided with anything close to a comprehensive understanding of Armor's position with respect to Brevard and/or the Teal situation to be able to determine how Armor should have acted when Brevard terminated the Brevard Agreement shortly after Teal left Armor, started working for Corizon, and called on a current Armor client, in violation of the Employment Agreement.

Thus, the Opinions at Issue are not reliable.

### C. The Opinions at Issue Are Not Helpful.

Finally, expert testimony is helpful and, therefore, admissible "if it concerns matters that are beyond the understanding of the average lay person." *Frazier*, 387 F.3d at 1262 (citing *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985)). "Expert testimony that 'offers nothing more than what lawyers for the parties can argue in closing arguments' generally will not assist the trier of fact and will be excluded." *Umana-Fowler v. NCL (Bahamas) Ltd.*, 49 F. Supp. 3d 1120, 1122 (S.D. Fla. 2014) (quoting *Frazier*, 387 F.3d at 1262-63).

**Legal Interpretations and Legal Opinions Related to the Brevard Agreement or Any Renewals Thereof**: Deppman's interpretations of the Brevard Agreement and opinions regarding the likelihood of renewal are not helpful. Just like Deppman, who does not have any superior legal training or knowledge regarding Armor's relationship with Brevard, the jury can review the terms of the Brevard Agreement and the facts surrounding Armor's relationship with Armor and make determinations regarding the termination and whether it was likely that Brevard would have renewed the agreement past September 30, 2020, but for the premature termination. *Brown Jordan Int'l Inc.*, 2015 WL 11661770, at *1 ("Expert testimony that merely states a legal conclusion is less likely to assist the [finder of fact] in its determination." (quoting *United States v. Chapman*, 209 Fed. App'x 253, 269 (4th Cir. 2006))); *see Reynolds v. Great-West Life & Annuity Ins. Co.*, No. 8:19-cv-604-T-24JSS, 2019 WL 9829363, at *3 (M.D. Fla. Nov. 27, 2019) ("[O]pinion testimony about a question of law is not probative. An expert opinion may not be

used to usurp the court's role in interpreting the language of an insurance contract."); *id.* ("Argument about the meaning of . . . contracts . . . belongs in briefs, not in 'experts' reports.' " (quoting *RLJCS Enters., Inc. v. Prof'l Benefit Tr. Multiple Emp'r Welfare Benefit Plan & Tr.*, 487 F.3d 494, 498 (7th Cir. 2007))). *Cf. LSQ Funding Grp., L.C. v. EDS Field Servs.*, 879 F. Supp. 2d 1320, 1336 (M.D. Fla. 2012) (holding that an expert's opinion was not helpful where "an average lay person" could conduct the "simple arithmetic calculation" independently). Likewise, counsel for both sides can present similar statements in closing arguments. *Umana-Fowler*, 49 F. Supp. 3d at 1122 (quoting *Frazier*, 387 F.3d at 1262-63).

**Opinions Related to Armor's Medical Malpractice Liability**: Deppman's statements regarding Armor's potential future medical malpractice liability are not helpful. *Reynolds*, 2019 WL 9829363, at *2 ("[N]ot all opinions that happen to be held by an expert constitute "expert opinions." (quoting *United States v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991) (emphasizing that "the opinion must be an expert opinion (that is, an opinion informed by the witness' expertise), rather than simply an opinion broached by a purported expert"))). Instead, these statements are likely to confuse the jury by suggesting that the pending claims[6] would have turned into liabilities even though that is not necessarily true *and* Deppman did not consider Armor's actual 2020 financial information. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005) ("[A] trial court may exclude expert testimony that is "imprecise and unspecific," or whose factual basis is not adequately explained." (citing *Frazier*, 387 F.3d at 1266)).

**Opinions Regarding Business Judgment**: Deppman's statements about what Armor should have done (*i.e.*, what a prudent business person would have done) as to the Brevard Agreement after Brevard terminated the Agreement are not helpful. Just like Deppman, who does not have any superior knowledge regarding Armor's relationship with Brevard, the jury can review the facts surrounding Armor's relationship with Armor and make determinations regarding the situation. *Brown Jordan Int'l Inc.*, 2015 WL 11661770, at *1 ("Expert testimony that merely states a legal conclusion is less likely to assist the [finder of fact] in its determination." (quoting *United States v. Chapman*, 209 Fed. App'x 253, 269 (4th Cir. 2006))).

---

[6] The existence of other pending claims—including those referenced in Deppman's Report—is the subject of a separate motion *in limine* filed contemporaneously with this Motion. *See supra* note 4.

Likewise, counsel for both sides can present similar statements in closing arguments. *Umana-Fowler*, 49 F. Supp. 3d at 1122 (quoting *Frazier*, 387 F.3d at 1262-63).

Thus, the Opinions at Issue are not helpful.

IV. **MOTION *IN LIMINE* ANALYSIS**

For the reasons explained below, Deppman's opinions and testimony comparing financial information related to, on the one hand, Armor's relationship with Brevard and, on the other hand, Baker and/or Charleston should be excluded.

The probative value of such comparisons is substantially outweighed by a danger of confusing the issues, misleading the jury, and unfair prejudice to Armor. Fed. R. Evid. 403. "[T]he judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." *United States v. Masferrer*, 367 F. Supp. 2d 1365, 1374 (S.D. Fla. 2005) (citation omitted).



*See Cook ex rel. Estate of Tessier*, 402 F.3d at 1111 ("[A] trial court may exclude expert testimony that is "imprecise and unspecific," or whose factual basis is not adequately explained." (citing *Frazier*, 387 F.3d at 1266)). Each facility that Armor services is unique. Also, these three facilities are inherently different—Charleston is in South Carolina, whereas Baker and Brevard are in Florida. And, Baker and Brevard are in completely different parts of the State of Florida.

---

[7] Deppman testified at his deposition that Armor operates "nationwide" and he was provided with a list of Armor's contracts. Tr. 40:23-41:4.

57986415;2

Further, the probative value of this testimony is substantially outweighed by the danger of unfair prejudice to Armor due to the fact that by virtue of Deppman, as an expert, making these comparisons, the jury will assign certain weight to such comparisons despite the fact that the universe of documents Deppman was provided in preparing his Report was deliberately limited by Teal's counsel. *See Frazier*, 387 F.3d at 1263 ("Because of the powerful and potentially misleading effect of expert evidence, sometimes expert opinions that otherwise meet the admissibility requirements may still be excluded by applying Rule 403 . . . Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse.").

Accordingly, Deppman's opinions and testimony comparing financial information related to, on the one hand, Armor's relationship with Brevard and, on the other hand, Baker and/or Charleston should be excluded.

**V.   CONCLUSION**

For the foregoing reasons, Defendant Bruce Teal cannot meet his burden of proof to establish that the Opinions at Issue presented in Edward Deppman's expert report meet the standard for admissibility under *Daubert*. Thus, the Opinions at Issue should be excluded.

REDACTED: Motion to Seal Pending (ECF No. 69)

WHEREFORE, Plaintiff Armor Correctional Health Services, Inc., moves this Court to issue an Order precluding Defendant Bruce Teal's expert Edward Deppman from testifying regarding (**a**) legal interpretations and/or opinions related to the Brevard Agreement, including but not limited to those related to termination of the Brevard Agreement and the likelihood that the Brevard Agreement would have been renewed after September 30, 2020; (**b**) opinions related to Armor's medical malpractice liability, including but not limited to the value of pending and future medical malpractice claims and the likelihood of future medical malpractice liability; (**c**) opinions regarding what a prudent business person would do in any given situation; and (**d**)

REDACTED: Motion to Seal Pending (ECF No. 69)

57986415;2

REDACTED: Motion to Seal Pending (ECF No. 69)

███████████████████████.

### **LOCAL RULE 7.1(a)(3) CERTIFICATION**

      Undersigned counsel for Plaintiff, Armor Correctional Health Services, Inc., hereby certifies that he conferred with counsel in a good faith effort to resolve the issues raised in this Motion, but the parties were unable to agree.

Dated: May 3, 2021                       Respectfully submitted,

                                                By: */s/ Aleksas A. Barauskas*
                                                Aleksas A. Barauskas, Esq.
                                                Florida Bar No. 68175
                                                Email: aleksas.barauskas@akerman.com
                                                Melanie Kalmanson, Esq.
                                                Florida Bar No. 123855
                                                Email: melanie.kalmanson@akerman.com
                                                **AKERMAN LLP**
                                                50 North Laura Street, Suite 3100
                                                Jacksonville, FL 32202
                                                Telephone: (904) 798-3700
                                                Facsimile: (904) 798-3730

                                                *Counsel for Plaintiff, Armor Correctional Health Services, Inc.*

57986415;2

**CERTIFICATE OF SERVICE**

I hereby certify that on May 3, 2021, a true and exact copy of the foregoing was served on the following individuals via the Court's CM/ECF system, and a true and exact copy of the foregoing without redaction was served on the following individuals via electronic mail:

**Russell B. Morgan, Esq.**
**Kimberly Ingram, Esq.**
Bradley, Arant, Boult, Cummings, LLP
1600 Division Street, Suite 700
Nashville, TN 37203
(615) 252-2311
Email: rmorgan@bradley.com
   kingram@bradley.com

**Jennifer Olmedo-Rodriguez, Esq.**
**Daniel R. Lazaro, Esq.**
Buchanan Ingersoll & Rooney PC
One Biscayne Tower
2 S Biscayne Boulevard, Suite 1500
Miami, FL 33131
(305) 347-4080
Email: jennifer.olmedo-rodriguez@bipc.com
   marilee.tamesolmedo@bipc.com
   dan.lazaro@bipc.com
   kearil.abraham@bipc.com

*Counsel for Defendant*

   */s/ Aleksas A. Barauskas*
   Aleksas A. Barauskas, Esq.
   Florida Bar No. 68175

57986415;2