**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 19-24656-CIV-KING/BECERRA**

ARMOR CORRECTIONAL HEALTH
SERVICES, INC.,

      Plaintiff,

v.

BRUCE TEAL,

      Defendant.

_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT BRUCE TEAL'S STATEMENT**
**OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY**
**JUDGMENT AND STATEMENT OF ADDITIONAL MATERIAL FACTS**

1

## RESPONSE TO STATEMENT OF MATERIAL FACTS

Pursuant to Local Rules 56.1(a)(2) and 56.1(b)(2), Plaintiff Armor Correctional Health Services, Inc. ("**Armor**"), respectfully submits this Response to Teal's Statement (ECF No. 82):[1]

1.      Undisputed.

2.      Undisputed.

3.      Undisputed, except the characterization of the Employment Agreement as "alleged."[2] As fully explained in *Plaintiff's Motion for Partial Summary Judgment and Incorporated Memorandum of Law* (ECF No. 57), the Employment Agreement is a valid contract.

4.      Undisputed, except the characterization of Dr. Armas and Teal as "purported signator[ies]." Further, the fact stated in paragraph 4 of Teal's Statement is not material.

5.      Undisputed; however, the fact in paragraph 5 of Teal's Statement is not material.

6.      Undisputed.

7.      Undisputed; however, the approximate end date of Teal's title as CEO is not material since he remained employed by Armor until November 10, 2018.

8.      Undisputed.

9.      Disputed. As explained in Armor's MSJ Reply, Armor focuses on preventing competition by employees like Teal—who were intimately aware of Armor's and Armor's client's confidential information. ECF No. 61, at 8; *see* ECF No. 22, at ¶ 13. Per Teal's Statement, Teal was the only CEO of Armor during the timeframe stated in paragraph 9.

---

[1] Defendant Bruce Teal is referenced as "**Teal**." For this Court's ease of reference, an index of the exhibits to this Response to Teal's Statement as well as definitions for documents referenced herein is attached hereto as **Exhibit 1**. Some of the evidence Armor uses to refute the Teal's MSJ and the accompanying Teal's Statement comes from operative Complaint (ECF No. 22), which is a verified complaint and, therefore, carries the same weight as an evidentiary affidavit. *Stallworth v. Tyson*, 578 F. App'x 948, 950 (11th Cir. 2014) (finding the factual assertions a plaintiff makes in a verified complaint satisfy "Rule 56's requirements for affidavits and sworn declarations," and are therefore given the same weight as factual statements made in an affidavit). Further, all of the Bates-labeled exhibits attached hereto were produced in discovery in this case. *See* Kalmanson Decl., Ex. 5, at ¶ 3. Pending a ruling on the Armor's unopposed Motion to Seal (ECF No. 96), certain portions of this document and exhibits thereto have been redacted.

    To avoid all doubt regarding whether Armor disputes the additional facts in *Defendant Bruce Teal's Response to Plaintiff's Statement of Material Facts and Statement of Additional Material Facts*, Armor requests that the Court accept Armor's response to the identical facts stated herein for purposes of Armor's MSJ.

[2] By indicating herein that any fact from Teal's Statement is "undisputed," Armor does not waive any disputes to Teal's characterization of the Employment Agreement as "alleged."

58076979;1

Notwithstanding, Armor produced several examples of agreements with employees and/or consultants that included provisions similar to the restrictive covenants in the Employment Agreement (the "**Restrictive Covenants**"), including but not limited to agreements with non-competes that Teal signed on Armor's behalf. *See, e.g.*, ECF No. 61-3 (Consulting Agreement with Doyle Moore, signed by Teal on Armor's behalf); *see also infra* ¶ 11. In addition, Dr. Armas testified at his deposition that it is his regular practice to require his executives to sign employment agreements with restrictive covenants. ECF No. 61, at pp.8-9; ECF No. 61-5 (excerpt of Dr. Armas's testimony).

Regardless, whether Armor's other employees had agreements with provisions similar to the Restrictive Covenants is immaterial since Teal was Armor's only CEO for over 10 years.

10. Undisputed; however, the fact in paragraph 10 of Teal's Statement is not material.

11. Disputed. This statement mischaracterizes the evidence. In addition to the Employment Agreement at issue in this case, Armor produced various employment agreements and consulting agreements that were in effect during the referenced time-period that contained non-competition provisions, including:

| Effective Date | Title | Bates |
|---|---|---|
| 8/5/2004 | Employment Agreement (Doyle Moore), attached as **Exhibit 2** | ARMOR_005913-30 |
| 6/1/2008 | Consulting Agreement (Doyle Moore), ECF No. 61-3 | ARMOR_005932-40 |
| March 2016 | Employment Agreement (Kenneth Palombo), ECF No. 59-16 | ARMOR_005978-85 |

In addition, other agreements Armor produced that may not have contained non-competition agreements did contain confidentiality provisions protecting Armor's confidential information. *See, e.g.*, ECF No. 61-4.

12. Undisputed; however, the stated in paragraph 12 of Teal's Statement is not material.

13. Undisputed; however, the stated in paragraph 13 of Teal's Statement is not material.

14. Undisputed.

15. Undisputed; however, the stated in paragraph 15 of Teal's Statement is not material.

16. Disputed. Armor does not dispute that it allowed Teal, at his request, to keep his Armor-owned laptop (the "**Armor Laptop**") when he retired from Armor for health reasons. However, as to Armor's "effort[s] to remove any information from the laptop," Armor's policies

3

directed that all of Armor's confidential information was to be returned upon termination. ECF No. 58-8 (excerpt from Armor's Employee Handbook); ECF No. 58-7, at ¶¶ 10-11. As Armor's CEO, Teal was involved in creating and enforcing these policies. ECF No. 58-7, at ¶¶ 9-13. Armor also required Teal to sign a confidentiality agreement regarding the protection of Armor's confidential information. ECF No. 58-6. Thus, Armor took several steps to ensure that its confidential information that may have been on the laptop was returned upon Teal's resignation. ECF No. 58-7, at ¶¶ 9-11; ECF No. 58-8.

17. Disputed. Armor does not dispute that Teal agreed to assist Armor in reviewing certain financial information related to the potential transaction between Corizon and Armor (the "**Potential Acquisition**"). ECF No. 22, at ¶ 20. However, it was *Teal* who requested that he be involved with the Potential Acquisition. *See id.*; RFA, attached as **Exhibit 3**, at #10; *infra* ¶ 26.

18. Disputed. As stated in paragraph 17, *supra*, it was *Teal* who requested to be involved with the Potential Acquisition. *See* ECF No. 22, at ¶ 20; RFA, Ex. 2, at #10. It is undisputed that Armor sent confidential business information to Corizon to consider *only* within the context of the Potential Acquisition, with which Teal was allowed to assist. *See id.* at #11-12. However, to the extent the statement in paragraph 18 implies that such information could be used for any other purpose, that is specifically disputed. *See id.*

19. Disputed. It is undisputed Armor knew (**a**) Teal was working on the Potential Acquisition, and (**b**) that Teal had retained the Armor Laptop. However, it is disputed that Armor knew Teal retained Armor's confidential information, for his use at will (including for Corizon's benefit). *See* ECF No. 22, at ¶ 24; ECF No. 58-3, at 85:6-10 (Dr. Armas testified he was unaware Teal maintained Armor's confidential information on the Armor Laptop.). Rather, Teal's retention of Armor's confidential information after his employment directly violates Armor's policies as well as the terms of Teal's employment agreement. *See supra* ¶ 16.

20. Undisputed, except as to "non-executive." Armor is without sufficient knowledge or information regarding what employment opportunities Teal discussed with Corizon.

21. Undisputed.

22. Undisputed.

23. Undisputed; however, the fact in paragraph 23 of Teal's Statement is not material.

24. Undisputed; however, the fact in paragraph 24 of Teal's Statement is not material.

25. Undisputed; however, the fact in paragraph 25 of Teal's Statement is not material.

4

26.     Undisputed; however, the fact in paragraph 26 of Teal's Statement is not material.

27.     Undisputed; however, the fact in paragraph 27 of Teal's Statement is not material.

28.     Undisputed; however, the fact in paragraph 28 of Teal's Statement is not material.

29.     Undisputed; however, the fact in paragraph 29 of Teal's Statement is not material.

30.     Undisputed; however, the fact in paragraph 30 of Teal's Statement is not material.

31.     Undisputed; however, the fact in paragraph 31 of Teal's Statement is not material.

32.     Undisputed; however, the fact in paragraph 32 of Teal's Statement is not material.

33.     Disputed. Teal began working for Corizon in January 2019, as stated in Teal's Statement. *See supra* ¶ 21. Corizon first offered employment on January 14, 2019; and, his employment began shortly thereafter. *Id.*; ECF No. 58-13, at #1-2 (admitting Corizon offered Teal employment on January 14, 2019).[3] Indeed, the employment offer cited in Teal's Statement (ECF No. 58-15) is dated January 23, 2019.

34.     Disputed. As explained in paragraph 33 *supra*, Corizon offered employment to Teal as early as January 14, 2019, and Teal's employment with Corizon became effective a few days later, as stated in Teal's Statement. *See supra* ¶ 33. Therefore, it is impossible that either Corizon or Teal relied on anything in the ***February 5, 2019***, NDA (ECF No. 23-1) in making any decision regarding Teal's employment at Corizon.

35.     Undisputed.

36.     Undisputed; however, the fact in paragraph 36 of Teal's Statement is not material.

37.     Undisputed; however, the fact in paragraph 37 of Teal's Statement is not material.

38.     Undisputed.

39.     Undisputed.

40.     Undisputed.

41.     Disputed to the extent paragraph 41 suggests Teal only used the Armor Laptop for "personal use." Teal used the Armor Laptop while employed by Armor for Armor's business and, as explained in Exhibit 9, for Corizon's business while employed by Corizon. Teal's actions related to the Armor Laptop are squarely at issue in this case.

42.     Undisputed.

---

[3] Teal's Statement states that Teal's employment with Corizon began January 20, 2019. However, the employment offer upon which Teal relies (ECF No. 58-15) states that Teal's employment with Corizon became effective on January 21, 2019.

58076979;1

43.	Disputed. Teal was aware of the Restrictive Covenants from the time he executed same. Notwithstanding, it is undisputed that the first time Armor specifically indicated its intent to enforce the restrictive covenants in the Employment Agreement was the day Armor filed the Complaint in this case: October 4, 2019. In addition to filing the Complaint on October 4, 2019, Armor (through counsel) sent a letter to Teal attaching the Complaint.

44.	Undisputed; however, the fact in paragraph 44 of Teal's Statement is not material.

45.	Undisputed; however, the fact in paragraph 45 of Teal's Statement is not material.

46.	Undisputed; however, the fact in paragraph 46 of Teal's Statement is not material.

47.	Disputed. While said customers may have said as much, the circumstantial evidence showing Teal's contact with the client followed by termination suggests otherwise. *See infra* ¶¶ 86-87.

48.	Disputed. *See supra* ¶ 47.

49.	Undisputed.

50.	Undisputed.

51.	Undisputed.

52.	Undisputed.

53.	Undisputed.

54.	Disputed. In the same conversation referenced in paragraph 54, Ms. Owens explained that Teal informed Ms. Owens he was going to meet with "St. Johns County undersheriff, Matt Cline," which suggests the statement regarding Armor's rates was related to Teal's meeting with Undersheriff Cline. ECF No. 82-16, at 15:2:7.

55.	Disputed. While the Undersheriff may have said this, it was not confirmed and other evidence suggests otherwise. *See supra* ¶ 54.

56.	Disputed. First, Teal's alleged role of "financial analyst" is a made-up position that Corizon has created in the context of this litigation and the related Corizon Case.[4] *See* Corizon Interrogs., attached as **Exhibit 4**, at #12; *id.* at #13 ("Corizon does not have any employees who are in a role titled as "analyst." This word is used in the Complaint to describe the function of Mr. Teal's role after Armor filed its lawsuit."). Second, it is disputed that Teal has ceased interacting with clients since Armor filed this lawsuit. As explained in Armor's SMF (ECF No. 58), Teal has

---

[4] *Corizon Health, Inc. v. Armor Correctional Health Servs., Inc.*, No. 20-24091-CIV-KING/BECERRA (S.D. Fla.) (the "**Corizon Case**").

continued attending client-facing events and interacted with clients on behalf of Corizon, including the Florida Sheriff's Association Summer Conference in July 2020 and the Winter Conference in January 2021. ECF No. 58, at ¶¶ 50-51 & sources cited; ECF No. 59, at ¶¶ 50-51 (undisputed Teal attended these events); Kalmanson Decl., attached as **Exhibit 5**, at ¶ 4(b) & Ex. B; *see* ECF No. 58-2, at ¶ 19 (stating the FSA Summer Conference "is a prime opportunity for Armor to network with its existing Sheriff's Office clients, as well as to network with other Sheriff's Offices that may have existing or future needs for contracted inmate medical services"). In addition, Corizon has produced evidence in the Corizon Case showing Teal has interacted with clients since Armor filed this lawsuit, including attending a marketing presentation for the Kansas Department of Corrections in March 2020 and a marketing presentation for the Riverside Regional Jail in Richmond, Virginia, in August 2020. Kalmanson Decl., Ex. 5, at ¶ 4 & Ex. A, C.

57.     Disputed. Armor does not dispute that it lost the specific contracts listed in paragraph 57 (*see infra* ¶ 88). However, Armor does not agree to the "50%" stated in paragraph 57, as it is unclear how Teal has calculated that percentage.

58.     Undisputed that the quoted portion of this paragraph appears in the referenced exhibit. The balance is disputed. While said customer may have said as much, the circumstantial evidence showing Teal's contact with the client followed by termination suggests otherwise. *See infra* ¶¶ 86-87. Also, just before Teal left Armor, he was involved in the Wakulla County Sheriff's Office ("**Wakulla**") renewing its contract with Armor. *See* Wakulla 6th Am., attached as **Exhibit 6**, at p.2 (executed by Teal). Then, after leaving Armor and joining Corizon, Teal helped Corizon submit a pricing proposal to Wakulla. Kickoff Meeting Agenda, Corizon Health, Inc., attached as **Exhibit 7**; Emails RE Wakulla, attached as **Exhibit 8**.

59.     Undisputed that the quoted portion appears in the referenced exhibit. The balance is disputed. While said customer may have said as much, the circumstantial evidence showing Teal's contact with the client followed by termination suggests otherwise. *See infra* ¶¶ 86-87.

60.     Undisputed that the quoted portion appears in the referenced exhibit. The balance is disputed. While said customer may have said as much, the circumstantial evidence showing Teal's contact with the client followed by termination suggests otherwise. *See infra* ¶¶ 86-87.

61.     Undisputed that the quoted portion appears in the referenced exhibit. The balance is disputed. While said customer may have said as much, the circumstantial evidence showing Teal's contact with the client followed by termination suggests otherwise. *See infra* ¶¶ 86-87.

58076979;1

62. Undisputed; however, the fact in paragraph 62 of Teal's Statement is not material.

63. Undisputed.

64. Undisputed; however, the fact in paragraph 64 of Teal's Statement is not material.

65. Undisputed; however, the fact in paragraph 65 of Teal's Statement is not material.

66. Undisputed.

67. Undisputed; however, the fact in paragraph 67 of Teal's Statement is not material.

68. Undisputed.

69. Disputed. The statement in paragraph 69 is not an accurate recitation of the transcript cited. *See* ECF No. 82-5, at 65:7-16.

70. Undisputed.

71. Undisputed.

72. Undisputed.

73. Undisputed.

74. Undisputed.

75. Undisputed.

76. Undisputed.

77. Disputed. While some of the information at issue may be publicly available, Armor's confidential information that Teal accessed and used in working for Corizon, especially the format in which it was compiled, is not publicly available. ECF No. 75, at pp.6, 8-9 & sources cited. Even if it was, Teal testified he did not submit FOIA requests for the information. *Id.* at pp.5, 7-8 & sources cited.

78. Undisputed; however, the fact in paragraph 78 of Teal's Statement is not material.

79. Undisputed.

80. Undisputed.

81. Disputed. Even if Teal had access to the proprietary and confidential information that was on the Armor Laptop and/or external drives during his employment with Armor, it is inaccurate to suggest that Armor *provided* such information (as it existed while Teal was employed by Corizon) to Teal for use after his employment with Armor ended. That is not true. *See generally* Wolfenden Declaration, attached as **Exhibit 9**. Also, as explained in paragraph 83 *infra*, some of the information Teal accessed and used while working for Corizon came from Karen Davies ("**Davies**")—another former Armor employee who now works for Corizon.

58076979;1

82.     Undisputed; however, the fact in paragraph 82 of Teal's Statement is not material.

83.     Disputed. As explained in paragraph 16 *supra*, Armor's policies and procedures required Teal to return Armor's confidential information upon his departure. Also, as explained in *Plaintiff Armor Correctional Health Services, Inc.'s* Daubert *Motion to Preclude Opinion Testimony of Defendant Bruce Teal's Expert Donald Tennant and Incorporated Memorandum of Law* (ECF No. 73), Teal's expert Donald Tennant is not qualified to render any opinion related to the actions Armor did or did not take with respect to Teal's access upon his departure.

In addition, even if Armor had taken the steps outlined in paragraph 83, that would not have stopped Teal from improperly accessing Armor's confidential information from Davies. Like Teal, Davies also improperly retained Armor's confidential information upon leaving Armor. When they were both employed by Corizon, Davies sent various files that contained Armor's confidential information via email to Teal to use in preparing pricing proposals for Corizon. Specifically, Davies sent Teal the following files on the following dates:

| Date | File | Related Client | Bates |
|---|---|---|---|
| 3/21/2019 | 2018_BKSO_Budget.xlsx; 2018_Flagler_Budget.xlsx | Flagler County Sheriff's Office and Baker County Sheriff's Office | COR0003063 |
| 5/1/2019 | 2018_BCSO_Budget.xlsx | Brevard County Sheriff's Office | COR0000581 |
| 6/18/2019 | 2018_Glades_Budget.xlsx | Glades County Sheriff's Office | COR0001713-14 |
| 6/18/2019 | 2018_SJCSO_Budget.xlsx; 2018_CCSO_Budget.xlsx | St. Johns County Sheriff's Office and Collier County Sheriff's Office | COR0002005 |
| 6/19/2019 | 2018_BCSO_Budget.xlsx | Brevard County Sheriff's Office | COR0000807 |

Davies Budget Emails, attached as **Composite Exhibit 10**; ECF No. 75, at pp.5-6; Armor Interrogs., attached as **Exhibit 11**, at #9; *see also* Wolfenden Declaration, Ex. 9, at ¶¶ 10-12 (Some of the files Davies sent to Teal were saved on the Armor Laptop.); *id.* at ¶ 11 (explaining when some of the files listed above were accessed on the Armor Laptop); *id.* at ¶ 12 (Information related to some of the files Davies sent to Teal was included in other files on the Armor Laptop.).

84.     Undisputed; however, it is disputed that Teal did not access any files from Armor's server or online email system. *See infra* ¶¶ 108-09.

85.     Disputed. Armor has explained that Teal used Armor's confidential information to compile lists of target clients for his marketing efforts at Corizon, which included several of Armor's clients. *See* ECF No. 58, at ¶ 42; ECF No. 59, at ¶ 42 (undisputed); ECF No. 22, at ¶ 26; *see, e.g.*, Teal Targets, **attached as Exhibit 12**; Email RE Teal Targets, attached as **Exhibit 13**;

58076979;1

*see also* Wolfenden Declaration, Ex. 9, at ¶ 4(d) (explaining that the file Teal 2019 Targets.xlsx was saved on the Armor Laptop); *id.* at ¶ 5 (explaining that the metadata for the Teal 2019 Targets.xlsx file indicates it was on the Armor Laptop as of his last date of employment); *id.* at ¶ 5(b)(iii) (explaining that the metadata for Teal 2019 Targets.xlsx indicates the author is Lissette Perez). Armor has also explained that Teal used Armor's confidential information to prepare pricing proposals that Corizon submitted to Armor's former and current clients. Specifically, Teal assisted Corizon in preparing pricing proposals for several of Armor's current and former clients, including:

a. Teal provided a Corizon proposal for pricing to the Glades County Sheriff's Office, an existing Armor client, without a request for proposal (RFP) on July 5, 2019. ECF No. 58, at ¶ 36; ECF No. 59, at ¶ 36 (undisputed); Glades Cover Letter, attached as **Exhibit 14**. In fact, he personally signed the cover letter for Corizon's submission. Glades Cover Letter, Ex. 14;

b. Teal assisted Corizon in preparing a pricing proposal for the Flagler County Sheriff's Office, which was submitted in March 2019. Flagler Emails, attached as **Composite Exhibit 15**; *see* Email RE Teal Targets, Ex. 13;

c. Teal assisted Corizon in preparing a pricing proposal for the Baker County Sheriff's Office, which was submitted in April 2019. Email RE Teal Targets, Ex. 13;

d. Teal assisted Corizon in preparing a pricing proposal for Wakulla, which was submitted in September 2019. *See supra* ¶ 58.

e. Teal assisted Corizon in preparing a pricing proposal for the St. Johns County Sheriff's Office in September 2020. St. Johns Emails, attached as **Exhibit 16**; and

f. Teal assisted Corizon in preparing Corizon's response to the Brevard County Sheriff's Office's ("**Brevard**") RFP that was issued when Brevard prematurely terminated its contract with Armor. ECF No. 58, at ¶ 45; ECF No. 59, at ¶ 45 (undisputed). Specifically, Teal performed all of the calculations to determine pricing for Corizon's submission to the RFP and communicated directly with Brevard regarding the contract. ECF No. 58, at ¶ 46; ECF No. 59, at ¶ 46 (undisputed). Corizon submitted its response to Brevard's RFP in the fall of 2019. ECF No. 58, at ¶ 48; ECF No. 59, at ¶ 48 (undisputed).

10

## ADDITIONAL FACTS

Pursuant to Local Rule 56.1(b)(2)(D), Armor respectfully submits the following additional facts that are material to Defendant Bruce Teal's motion for summary judgment:

### Teal's Interactions with Armor's Clients after Joining Corizon

86. After leaving Armor and joining Corizon, Teal had numerous meetings and/or conversations with Armor's clients, including:

| Date of Meeting or Conversation | Client | Description of Meeting or Conversation | Source |
|---|---|---|---|
| Jan. 15, 2019 | Brevard County Sheriff's Office | Text message to various client representatives giving them "a heads up" that Teal is now working for Corizon ahead of the "FSA Conference" | Text Messages, attached as **Exhibit 17**. |
| Jan. 2019 | Lake County Sheriff's Office | In-person conversation with Sheriff Peyton C. Grinnell at a Sheriffs' Conference | Teal Interrogs., attached as **Exhibit 18**, at #3. |
| Jan. 2019 | Sumter County Sheriff's Office | REDACTED: Motion to Seal Pending (ECF No. 96) | █████████ |
| Jan./Feb. 2019 | Baker County Sheriff's Office | In-person dinner meeting with Sheriff Scotty Rhoden and his wife, as well as another individual | Teal Interrogs., Ex. 18, at #3. |
| Feb. 2019 | Flagler County Sheriff's Office | Telephone conversation with Sheriff Rick Staly | Teal Interrogs., Ex. 18, at #3. |
| Feb./Mar. 2019 | Baker County Sheriff's Office | Telephone conversation with Sheriff Scotty Rhoden | Teal Interrogs., Ex. 18, at #3. |
| Mar./April 2019 | Brevard County Sheriff's Office | Telephone conversation with Sheriff Wayne Ivey, former Chief Financial Officer Greg Pelham, and Commander Darrell Hibbs | Teal Interrogs., Ex. 18, at #3. |
| Mar./April 2019 | Brevard County Sheriff's Office | Text Messages with Sheriff Wayne Ivey regarding scheduling a meeting | Text Messages, Ex. 17. |
| Mar./April 2019 | St. Johns County Sheriff's Office | In-person lunch meeting with Sheriff David B. Shoar and Undersheriff Matt Cline | Teal Interrogs., Ex. 18, at #3. |
| Mar./April 2019 | Collier County Sheriff's Office | In-person lunch meeting with Chief Chris Roberts and two other individuals from Collier County Sheriff's Office | Teal Interrogs., Ex. 18, at #3. |
| Mar./April 2019 | Glades County Sheriff's Office | In-person meeting with Sheriff David Hardin and Chief Keith Henson | Teal Interrogs., Ex. 18, at #3. |
| April 2019 | Broward County Sheriff's Office | REDACTED: Motion to Seal Pending (ECF No. 96) | █████████ |

58076979;1

| | | | |
|---|---|---|---|
| April 2019 | Palm Beach County Sheriff's Office | In-person conversation with Susan Dean regarding recent RFP winner | Teal Targets, Ex. 12. |
| April/May 2019 | Brevard County Sheriff's Office | In-person meeting with Former Chief Financial Officer Greg Pelham | Teal Interrogs., Ex. 18, at #3. |
| June 2019 | Flagler County Sheriff's Office | REDACTED: Motion to Seal Pending (ECF No. 96) | |
| Week of June 10, 2019 | Virginia Department of Corrections | REDACTED: Motion to Seal Pending (ECF No. 96) | |
| June 18, 2019 | Glades County Sheriff's Office | REDACTED: Motion to Seal Pending (ECF No. 96) | [5] |
| Week of June 17, 2019 | St. Johns County Sheriff's Office | REDACTED: Motion to Seal Pending (ECF No. 96) | |
| Week of June 17, 2019 | Collier County Sheriff's Office | REDACTED: Motion to Seal Pending (ECF No. 96) | |
| April-June 2019 | Flagler County Sheriff's Office | REDACTED: Motion to Seal Pending (ECF No. 96) | |
| Jan.-June 2019 | Monroe County Sheriff's Office | REDACTED: Motion to Seal Pending (ECF No. 96) | |
| Jan.-June 2019 | Santa Rosa County Sheriff's Office | REDACTED: Motion to Seal Pending (ECF No. 96) | |
| July 1, 2019 | Virginia Department of Corrections | REDACTED: Motion to Seal Pending (ECF No. 96) | REDACTED: Motion to Seal Pending (ECF No. 96) Teal Interrogs., Ex. 18, at #3.[6] |
| July 9, 2019 | Virginia Department of Corrections | REDACTED: Motion to Seal Pending (ECF No. 96) | REDACTED: Motion to Seal Pending (ECF No. 96) Teal Interrogs., Ex. 18, at #3.[7] |
| July 2019 | Wakulla County Sheriff's Office | In-person conversation with Sheriff Jared Miller at a Sheriffs' Conference | Teal Interrogs., Ex. 18, at #3. |

[5] Exhibit 12 states this meeting occurred the week of June 17, 2019. Pursuant to information produced by Corizon in this case (which is protected by the *Joint Stipulation to Agreed Confidentiality and Protective Order and FRE 502(D) and (E) Clawback Agreement* (ECF No. 28), as entered by the Court on May 16, 2020), the meeting was on June 18, 2019.

[6] Teal's Interrogatory Responses, Ex. 18, state that this meeting was between April and June 2019. Exhibit 12 states this meeting was scheduled for July 1, 2019. It is unclear whether these reference the same meeting or two separate meetings. Both references are included in this one entry.

[7] Teal's Interrogatory Responses, Ex. 18, state that this meeting was between April and June 2019. Exhibit 12 states this meeting was scheduled for July 9, 2019. It is unclear whether these reference the same meeting or two separate meetings. Both references are included in this one entry.

58076979;1

| July 2019 | Sarasota County Sheriff's Office | In-person conversation with Sheriff Thomas Knight at a Sheriffs' Conference | Teal Interrogs., Ex. 18, at #3. |
|---|---|---|---|
| July 2019 | Martin County Sheriff's Office | In-person conversation with Sheriff William D. Snyder at a Sheriffs' Conference | Teal Interrogs., Ex. 18, at #3. |
| August 2019 | Collier County Sheriff's Office | REDACTED: Motion to Seal Pending (ECF No. 96) | REDACTED: Motion to Seal Pending (ECF No. 9 |
| September 2019 | Brevard County Sheriff's Office | Telephone conversation with Commander Darrell Hibbs regarding Corizon receiving the Brevard contract | Teal Interrogs., Ex. 18, at #3. |
| September-October 2019 | Brevard County Sheriff's Office | "[M]ultiple group phone calls" with Brevard County Sheriff's Office representatives | Teal Interrogs., Ex. 18, at #3. |
| July 15, 2020 | Flagler County Sheriff's Office | "Had a long conversation with the Director" | Flagler Director Email, attached as **Exhibit 19** |

*See* Armor Interrogs., Ex. 11, at #9; *see also* ECF No. 58, at ¶¶ 34-35 & sources cited; ECF No. 59, at ¶¶ 34-35 (undisputed Teal had several of these meetings).

87.    After Teal resigned, Armor received the following contract termination letters:

| Client | Date of Termination | Effective Date of Termination | Letter |
|---|---|---|---|
| Santa Rosa County Sheriff's Office | 11/29/2018 | 1/31/2019 | **Exhibit 20** |
| Lake County Sheriff's Office | 2/7/2019 | 6/30/2019 | **Exhibit 21** |
| Flagler County Sheriff's Office | 2/22/2019 | 5/31/2019 | **Exhibit 22** |
| Palm Beach County Sheriff's Office | 3/8/2019 | 6/10/2019 | **Exhibit 23** |
| Baker County Sheriff's Office | 3/15/2019 | 6/13/2019 | **Exhibit 24** |
| Brevard County Sheriff's Office | 7/1/2019 | 2/1/2020 | ECF No. 58-17 |
| Sarasota County Sheriff's Office | 10/2/2019 | 2/4/2020 | **Exhibit 25** |

*See also* Armor Interrogs., Ex. 11, at #9.[8]

88.    Armor's contracts discussed in paragraph 87 were generally long-term contracts:

| Client | Initial Start | Citation |
|---|---|---|
| Santa Rosa County Sheriff's Office | 2/1/2013 | Santa Rosa Letter, Ex. 20. |
| Lake County Sheriff's Office | 10/1/2013 | Armor Interrogs., Ex. 11. |
| Flagler County Sheriff's Office | 2/1/2018 | Armor Interrogs., Ex. 11. |
| Baker County Sheriff's Office | 6/4/2009 | Armor Interrogs., Ex. 11. |
| Brevard County Sheriff's Office | 7/1/2005 | ECF No. 58-2, at ¶ 13. |
| Sarasota County Sheriff's Office | 10/1/2007 | Armor Interrogs., Ex. 11. |

---

[8] Note there is a typographical error in Armor's Interrogatory Responses (Ex. 11) for the date of the Baker County Sheriff's Office letter.

58076979;1

89.     After terminating its contract with Armor, Wakulla issued a Request for Proposal (RFP) on July 26, 2019. Wakulla RFP, attached as **Exhibit 26**.

90.     Wakulla then renewed its contract with Armor for a short period of time—from October 1, 2019, through January 31, 2020. Wakulla 7th Am., attached as **Exhibit 27**.

91.     Teal knew about Brevard's RFP (ECF No. 58-19) *before* it was released to the public on June 14, 2019. *Supra* ¶ 49; REDACTED: Motion to Seal Pending (ECF No. 96)

REDACTED: Motion to Seal Pending (ECF No. 96)

ECF No. 58, at ¶¶ 43-44; ECF No. 59, at ¶¶ 43-44 (undisputed).

92.     Armor did not participate in the Brevard RFP process because, as Armor's CEO explained in a letter to Sheriff Ivey dated July 31, 2019, it had become clear to Armor that Brevard desired "to partner with a different vendor." ECF No. 58-20; *see* ECF No. 58-2, at ¶ 17.

93.     Armor did not respond to the Wakulla RFP for similar reasons. Wakulla Letter, attached as **Exhibit 29**.

**The Potential Acquisition Between Armor and Corizon**

94.     The only position Armor agreed to Teal holding with Corizon was related specifically to the Potential Acquisition. *See* ECF No. 61, at pp.5-6.

95.     Corizon and Armor entered into the NDA within the specific context of the Potential Acquisition. *See* ECF No. 23-1; ECF No. 58, at ¶¶ 24, 27 & sources cited; ECF No. 59, at ¶ 24 (undisputed that the NDA was for the purposes of the Potential Acquisition); ECF No. 61, at p.5.

96.     Teal was not a party or signatory to the NDA. ECF No. 23-1; ECF No. 58, at ¶ 26; ECF No. 59, at ¶ 26 (undisputed); ECF No. 61, at p.5.

97.     At the time of the Potential Acquisition, Armor was not aware that Corizon had hired Teal as an account representative. *See* ECF No. 58, at ¶¶ 23, 30 & sources cited; ECF No. 59, at ¶ 30 (undisputed); ECF No. 61, at p.6.

98.     Armor especially was not aware that Corizon had hired Teal with the specific purpose of marketing Corizon to Armor's former and current clients. *See* ECF No. 58, at ¶¶ 31-33 & sources cited; ECF No. 59, at ¶¶ 31-33 (undisputed); ECF No. 61, at 6.

99.     When the Potential Acquisition fell through, Armor terminated the NDA. ECF No. 58, at ¶ 28 & sources cited; ECF No. 59, at ¶ 28 (undisputed); ECF No. 59-11; *see supra* ¶ 31.

58076979;1

100.     The termination letter preserved the confidentiality portions of the NDA. ECF No. 59-11 ("[C]ertain confidentiality obligations continue for a period of two (2) years.").

**Armor's Damages**

101.     Armor's damages are comprised of: (**a**) lost profits, goodwill, and reputational damages due to Armor's loss of the Brevard contract; (**b**) Teal's salary at Corizon; and (**c**) statutory damages, including exemplary and punitive damages. Armor Interrogs., Ex. 11, at #11, 18.

102.     As to Brevard, Armor's long-standing relationship with Brevard began in 2005. Armor Interrogs., Ex. 7, at #9; *see* ECF No. 58, at ¶ 38 & sources cited; ECF No. 59, at ¶ 38; Deppman Tr., attached as **Exhibit 30**, at 37:13-15 (Deppman testifying at his deposition that Armor's relationship with Brevard was "a long-term contract").

103.     Since then, Brevard had renewed its contract with Armor several times, most recently in 2018. Armor Interrogs., Ex. 7, at #9; ECF No. 58, at ¶ 39; ECF No. 59, at ¶ 39 (undisputed).

104.     At the time of the 2018 renewal, Brevard was pleased with Armor. ECF No. 58, at ¶ 40 & sources cited; ECF No. 59, at ¶ 40 (undisputed).

105.     REDACTED: Motion to Seal Pending (ECF No. 96)

106.     Teal retained Edward Deppman, to calculate Armor's lost profits on the Brevard contract for only the eight-month period from February 1, 2020 (the date of termination) to September 30, 2020 (the date the contract would have expired absent termination). Deppman Report, ECF No. 86, at Ex. 1, at ¶ 12.[9] REDACTED: Motion to Seal Pending (ECF No. 96)

107.     But for Teal's actions, Armor believes the Brevard contract would have been renewed in 2020 for at least another two-year term, which would entitle Armor to additional lost profits. *See* Deppman Tr., Ex. 30, at 37:5-24.

**Teal's Access to and Use of Armor's Confidential Information**

108.     Teal downloaded files from Armor's server consistently from August to November 2018. Wolfenden Declaration, Ex. 9, at ¶ 8; Tennant Report, attached as **Exhibit 31**, at p.3.

109.     Teal accessed Armor's email system and server in December 2018. Tennant Report, Ex. 31, at p.3.

---

[9] Note that ECF No. 86 is sealed. *See* ECF No. 69, 85. ECF No. 76-1 is the unsealed version of this document but the contents at issue are redacted.

Dated: May 17, 2021

Respectfully submitted,

By: */s/ Aleksas A. Barauskas*
    Aleksas A. Barauskas, Esq.
    Florida Bar No. 68175
    Email: aleksas.barauskas@akerman.com
    Melanie Kalmanson, Esq.
    Florida Bar No. 123855
    melanie.kalmanson@akerman.com
    **AKERMAN LLP**
    50 North Laura Street, Suite 3100
    Jacksonville, FL 32202
    Telephone: (904) 798-3700
    Facsimile: (904) 798-3730

    *Counsel for Plaintiff, Armor Correctional Health Services, Inc.*

16

58076979;1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 17, 2021, a true and exact copy of the foregoing was served

on the following individuals via the Court's CM/ECF system:

**Russell B. Morgan, Esq.**
**Kimberly Ingram, Esq.**
Bradley, Arant, Boult, Cummings, LLP
1600 Division Street, Suite 700
Nashville, TN 37203
(615) 252-2311
Email: rmorgan@bradley.com
        kingram@bradley.com


**Jennifer Olmedo-Rodriguez, Esq.**
**Daniel R. Lazaro, Esq.**
Buchanan Ingersoll & Rooney PC
One Biscayne Tower
2 S Biscayne Boulevard, Suite 1500
Miami, FL 33131
(305) 347-4080
Email: jennifer.olmedo-rodriguez@bipc.com
        marilee.tamesolmedo@bipc.com
        dan.lazaro@bipc.com
        kearil.abraham@bipc.com


*Counsel for Defendant*


                                    */s/ Aleksas A. Barauskas*
                                     Aleksas A. Barauskas, Esq.
                                     Florida Bar No. 68175

17

58076979;1