## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 19-cv-24656-BLOOM/O'Sullivan

ARMOR CORRECTIONAL HEALTH
SERVICES, INC.,

      Plaintiff,

v.

BRUCE TEAL,

      Defendant.

_____/

### OMNIBUS ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Plaintiff Armor Correctional Health Services, Inc.'s ("Armor") Motion for Partial Summary Judgment, ECF No. [57] ("Armor's Motion"), and Defendant Bruce Teal's ("Teal") Motion for Summary Judgment, ECF No. [83] ("Teal's Motion") (collectively, "Motions"). The Court has carefully reviewed the Motions, all opposing and supporting submissions, the arguments presented the hearing on the Motions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, Armor's Motion is denied, and Teal's Motion is granted in part and denied in part.

## I.  BACKGROUND

Armor initiated the instant action on October 4, 2019, seeking damages and injunctive relief arising from Teal's purported violations of post-employment restrictive covenants. *See generally* ECF No. [1-1]; *see also* ECF No. [22] ("Amended Complaint"). In the Amended Complaint, Armor asserts the following claims for relief: Temporary and Permanent Injunction to Remedy Breach of Contract (Count I); Breach of Contract (Count II); Misappropriation of Trade Secrets under Fla. Stat. § 688.001, *et seq.* ("FUTSA") (Count III); Tortious Interference with

Armor's Contractual Relationships (Count IV); Tortious Interference with Armor's Business Relationships (Count V); Breach of Fiduciary Duty (Count VI); Fraudulent Inducement (Count VII); Breach of Covenant of Good Faith and Fair Dealing (Count VIII); Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA") (Count IX); and Violation of the Stored Communications Act, 18 U.S.C. § 2701, *et seq.* (Count X).

Regarding the instant Motions, Armor filed its Motion, ECF No. [57], along with its corresponding Statement of Material Facts, ECF No. [58] ("Armor's SMF"). Teal filed his Response Memorandum in Opposition to Armor's Motion, ECF No. ("Teal's MSJ Response"), together with his Response to Armor's SMF, ECF No. [59] ("Teal's SMF Response"). Armor filed a Reply to Teal's MSJ Response, ECF No. [61] ("Armor's MSJ Reply").

Likewise, Teal filed his Motion, ECF No. [83], along with his corresponding Statement of Material Facts, ECF No. [82] ("Teal's SMF"). Armor filed its Response to Teal's Motion, ECF No. [100] ("Armor's MSJ Response"), together with its Response to Teal's SMF, ECF No. [99] ("Armor's SMF Response"). Finally, Teal filed a Reply in Support of its Motion, ECF No. [127] ("Teal's MSJ Reply"), together with a Reply to Armor's SMF Response, ECF No. [124] (Teal's SMF Reply"). On July 16, 2021, this Court held a hearing on the Motions, during which the parties argued their respective positions. *See* ECF No. [147]. The Motions, accordingly, are ripe for consideration.

## II.   MATERIAL FACTS

Based on the parties' statements of material facts in support of and in opposition to the Motions, along with the evidence in the record, the following facts are not genuinely in dispute unless otherwise noted.

### A. Teal's Employment with Armor

Armor is in the business of providing outsourced correctional healthcare to various federal, state, and local correctional facilities. ECF No. [58-7] ¶ 2. Armor's business is contract-based, with contracts typically awarded by correctional institutions, such as jails or departments of correction, via a bid process. *Id.* Teal joined Armor as a consultant around late 2004. ECF No. [82-1] ¶ 2. He was soon promoted to Chief Financial Officer ("CFO") in 2005, and again promoted around September 2006 to Chief Executive Officer ("CEO"). *Id.* ¶¶ 2-3. Teal served as Armor's CEO from approximately September 2006 to approximately April 2018. *Id.* ¶ 3.

During his tenure as CEO, Armor placed a significant amount of confidence and trust in Teal. ECF No. [58] ¶ 2; ECF No. [59] ¶ 2; *see also* ECF No. [22] ¶ 10; ECF No. [41] ¶ 10. Specifically, Teal had access to Armor's confidential information, including its client lists, pricing information, financial information, business strategy, vendor and provider information, and employee identity and performance information. ECF No. [58] ¶ 12; ECF No. [59] ¶ 12; *see also* ECF No. [22] ¶ 11; ECF No. [41] ¶ 11. Teal also took steps to protect and ensure the confidentiality of Armor's confidential information by issuing policies like those contained in Armor's Employee Handbook, ECF No. [58-7] ¶ 10; ECF No. [58-8]; ECF No. [58-11], and having employees sign confidentiality agreements, including Teal's wife who worked for Armor for a period of time, ECF No. [58-7] ¶¶ 12-14; ECF No. [58-9]; ECF No. [59-10]. Moreover, Teal had an active role in Armor's finances—he prepared and/or reviewed all of Armor's financial statements and pricing proposals. ECF No. [82-1] ¶ 4; *see also* ECF No. [22] ¶¶ 10-11; ECF No. [41] ¶¶ 10-11.

In April 2018, Teal took on a slightly reduced role at Armor as a result of a contemplated sale of Armor to new ownership. ECF No. [82-1] ¶ 6. In connection with the sale, the purchasers and Teal began discussing a potential employment agreement, which included a two-year non-

compete agreement which Teal was not willing to execute. ECF No. [59-1] ¶ 8; ECF No. [59-3] at 2. During discussions with purchasers, no one suggested that Teal had an employment agreement or restrictive covenants such as a non-compete. ECF No. [59-1] ¶ 8. Teal ultimately resigned from Armor effective November 10, 2018. *Id.* ¶ 9; ECF No. [22] ¶ 23; ECF No. [41] ¶ 23. When Teal announced his resignation, no one at Armor mentioned an employment agreement or restrictive covenants, including a non-competition provision, to him. ECF No. [82-1] ¶ 10; ECF No. [82-2] at 125:7-18; *see also* ECF No. [82] ¶ 15; ECF No. [99] ¶ 15.

## B. The Employment Agreement

According to Armor, on March 1, 2006, during Teal's tenure as CFO, Teal and Armor entered into an agreement regarding the terms of Teal's employment. ECF No. [22-1] ("Employment Agreement"). The Employment Agreement sets forth several restrictive covenants regarding (1) Confidential Information; (2) Non-Competition; and (3) Proprietary Rights ("Restrictive Covenants"). *Id.* ¶ 4. The Restrictive Covenants provide as follows:

> (a)     <u>Confidential Information</u>. Except as may be required by the lawful order of a court or agency of competent jurisdiction, the Executive agrees to keep secret and confidential, both during the Employment Period and during the two years after the Executive's employment with the Corporation terminates, all non-public information concerning the Corporation and its affiliates that was acquired by, or disclosed to, the Executive during the course of his employment by the Corporation or any of its affiliates, including information relating to customers (including, without limitation, credit history, repayment history, financial information and financial statements), costs, and operations, financial data and plans, whether past, current or planned and not to disclose the same, either directly or indirectly, to any other person, firm or business entity, or to use it in any way: provided, however, that the provisions of this paragraph 4(a) shall not apply to information that: (a) was, is now, or becomes generally available to the public (but not as a result of a breach of any duty of confidentiality by which the Executive is bound); (b) was disclosed to the Executive by a third party not subject to any duty of confidentiality to the Corporation prior to its disclosure to the Executive; or (c) is disclosed by the Executive in the ordinary course of the Corporation's business as a proper part of his employment in connection with communications with customers, vendors and other proper parties, provided that it is for a proper purpose solely for the benefit of the Corporation. The Executive further agrees that he shall

not make any statement or disclosure that (i) would be prohibited by applicable Federal or state laws, or (ii) is intended or reasonably likely to be detrimental to the Corporation or any of its subsidiaries or affiliates.

(b)     Non-Competition. The Executive agrees that for the period commencing on the Commencement Date and ending upon expiration of (i) one year after the Executive's employment with the Corporation terminates, the Executive shall not directly or indirectly, alone or as a partner, officer, director, employee, consultant, agent, independent contractor, member or stockholder of any person or entity ("Person"), engage in any business activity in the State of Florida, the State of Mississippi or any other State in which the Corporation conducts its Business, which is directly or indirectly in competition with the Business of the Corporation or which is directly or indirectly detrimental to the Business or business plans of the Corporation or its affiliates, and (ii) two years after the Executive's employment with the Corporation terminates, the Executive shall not directly or indirectly, alone or as a partner, officer, director, employee, consultant, agent, independent contractor, member or stockholder of any Person, engage in any business activity with any Person that is subject to an existing contract on the termination date of the Executive's employment with the Corporation (items (i) and (ii) shall be referred as the "Non-Competition Period"). The "Business" of the Corporation shall mean the actual business of the Corporation during the Employment Period and as of the date the Executive leaves the employment of the Corporation. As of the date hereof, the Business of the Corporation is managing and operating medical centers.

. . .

(e)     Proprietary Rights. The Executive acknowledges and agrees that all know-how, documents, reports, plans, proposals, marketing and sales plans, client lists, client files, and any materials made by the Executive or by the Corporation are the property of the Corporation and shall not be used by the Executive in any way adverse to the Corporation's interests. The Executive shall not deliver, reproduce or in any way allow such documents or things to be delivered or used by any third party without specific direction or consent of the Board. The Executive hereby assigns to the Corporation any rights which he may have in any such trade secret or proprietary information.

*Id.* ¶ 4(a)-(b), (e).

In the event of a breach of the Restrictive Covenants, the Employment Agreement sets

forth the following remedies:

(i)     The Executive shall account for and pay over to the Corporation all compensation, profits, and other benefits which inure to the Executive's benefit which are derived or received by the Executive or any person or business entity

controlled by the Executive, or his relatives, resulting from any action or transactions constituting a breach of any of the Restrictive Covenants.

(ii)     Notwithstanding the provisions of subparagraph 4(c)(i) above, the Executive acknowledges and agrees that in the event of a violation or threatened violation of any of the Restrictive Covenants, the Corporation shall have no adequate remedy at law and shall therefore be entitled to enforce each such provision by temporary or permanent injunction or mandatory relief obtained in any court of competent jurisdiction without the necessity of proving damages, posting any bond or other security, and without prejudice to any other rights and remedies that may be available at law or in equity, and the Corporation shall also be entitled to recover its attorneys' fees and costs incurred to enforce any of the Restrictive Covenants from the Executive.

*id.* ¶ 4(c)(i)-(ii).

On its face, the Employment Agreement purports to have been signed by Teal and Dr. José Armas ("Dr. Armas"), and Dr. Armas' signature is labeled as both CEO and President of Armor. *Id.* at 10. During his deposition, Teal testified that he has "zero recollection" of signing the Employment Agreement, but that the signature "appears to be his." ECF No. [58-4] at 95:5-24; ECF No. [59-8] at 125:7-126:22. Dr. Armas also testified that he did not remember signing the Employment Agreement, nor when or where the Agreement was signed, but that the signature was his. ECF No. [58-3] at 33:9-34:8, 36:12-23; ECF No. [59-2] at 20:22-21:12. The Agreement was not updated when Teal was promoted to CEO around September 2006. ECF No. [59-1] ¶ 4; ECF No. [82-2] at 127:10-128:2.

Following the execution of the Employment Agreement, on March 22, 2006, Teal signed a Confidentiality Agreement, which provides that "any and all information, whether privileged, confidential, trade secrets or any other information acquired by [Teal] as a result of [his] employment with Armor [ ] . . . is confidential and proprietary information of Armor" and "agee[d] to keep confidential and not disclose any such information[.]" ECF No. [58-6]. In addition to the Employment and Confidentiality Agreements, Armor maintained an Employee Handbook, which

6

instructs employees that they "are not allowed to remove any proprietary or confidential information . . . without the direct knowledge and consent of their supervisor." ECF No. [58-11] at 4.

### C. Teal's Employment with Corizon

Armor and Corizon are direct competitors. ECF No. [22] ¶ 9; ECF No. [41] ¶ 9. Like Armor, Corizon offers medical services to inmates in correctional facilities and targets local governments as clients to provide healthcare services directly to their jails and prisons. *Id.* Teal began discussing non-executive employment with Corizon in December 2018 and began working with Corizon by January 20, 2019. ECF No. [82-2] ¶¶ 14-15; *see also* ECF No. [82] ¶¶ 20-21; ECF No. [99] ¶¶ 20-21.

From January 20, 2019 to January 23, 2019, Teal attended a sheriff's conference (the "Conference") on behalf of Corizon, where Teal saw and spoke with multiple Armor employees. ECF No. [82-1] ¶¶ 15-16. Shortly after the Conference, Teal informed both Dr. Armas and Armor's new Chief Executive Officer, Otto Campo, that he was working with Corizon. *Id.*; ECF No. [82-1] ¶ 23; ECF No. [99] ¶ 23. Neither Dr. Armas nor Mr. Campo mentioned any restrictive covenants or concern that Teal's work for Corizon would violate any duties owed to Armor. *Id.*

During his January 2019 conversation with Dr. Armas, Teal and Dr. Armas discussed the possibility of a strategic transaction between Corizon and Armor. ECF No. [82-1] ¶ 16; *see also* ECF No. [82] ¶ 24; ECF No. [99] ¶ 24. Teal and Mr. Campo also discussed the potential transaction. ECF No. [82-1] ¶ 16; ECF No. [82] ¶ 25; ECF No. [99] ¶ 25. Teal explained to Mr. Campo that he would try to facilitate the transaction, but that he could not control the terms because he was not an executive of Corizon. ECF No. [82-1] ¶ 16; ECF No. [82] ¶ 26; ECF No. [99] ¶ 26.

For purposes of the potential acquisition, Armor and Corizon entered into a non-disclosure agreement ("NDA") dated February 5, 2019. ECF No. [41-1] at 2-5; ECF No. [58-2] ¶¶ 5-6. Teal was not a party or signatory to the NDA. ECF No. [41-1]. The NDA provides, in pertinent part:

> Armor understands that Corizon intends to engage Mr. Bruce Teal and that as part of Mr. Teal's engagement he may assist Corizon with evaluating a possible transaction between Armor and Corizon. Armor confirms that Mr. Teal is not subject to any on-going non-competition, confidentiality or other agreement with Armor that would prohibit him from working for Corizon or otherwise assisting with a possible transaction, except for such restrictions as are imposed by this Agreement.

ECF No. [41-1] at 3-4. Teal was copied on the February 5, 2019 email sending the draft NDA to Armor and discussed it with Dr. Armas. ECF No. [59-1] ¶ 13; ECF No. [59-6]. Teal was also copied on emails between Corizon and Armor that discussed the NDA after it was executed and discussed the NDA with Armor's attorney. ECF No. [59-1] ¶ 13; ECF No. [59-7].

In the context of the potential acquisition, Armor provided Corizon and Teal with confidential evaluation materials, which the NDA prohibited Corizon from using for any purpose other than evaluating the potential acquisition. ECF No. [41-1] at 2-5. Teal did attempt to facilitate a transaction between Armor and Corizon. ECF No. [82-1] ¶ 20; ECF No. [59-6]; ECF No. [59-7]. However, in early March 2019, the deal between Armor and Corizon fell through, at which point Armor terminated the NDA. ECF No. [58-2] ¶¶ 9-10; ECF No. [59-11] ("March 13, 2019 Termination Letter"). Upon withdrawing from discussions, Armor did not notify Corizon or Teal that Teal was subject to any restrictive covenants impacting his work with Corizon. ECF No. [82-1] ¶ 21; ECF No. [58-12] at 48:2-49:24; ECF No. [59] ¶ 75.

After Armor withdrew from discussions, Teal continued working for Corizon as an account representative. ECF No. [82-1] ¶ 22. In this role, Teal "help[ed] . . . with business development, developing client relations," preparing price files for Corizon's current and prospective clients,

and, in doing so, would attend conferences and "seek[] opportunities as far as benefit opportunities." ECF No. [58-4] at 21:2-13; ECF No. [58-13] at 4-5, ¶ 7; *see also* ECF No. [58] ¶ 31; ECF No. [59] ¶ 31. Additionally, it was contemplated that Teal would market Corizon to Armor's clients, ECF No. [58-14] at 6, ¶ 30, and that part of Teal's duties were to "call up customers, including Armor customers who were putting a contract out for bid or otherwise, looking to change service providers[,]" ECF No. [58-14] ¶ 31; ECF No. [58-16] at 3-5, ¶ 3. ECF No. [58] ¶¶ 32-33; ECF No. [59] ¶ 32-33.

Between January and June 2019 and while employed as an account representative for Corizon, Teal had numerous in-person meetings and phone conversations with several of Armor's current and former clients. ECF No. [41] ¶ 32; *see also* ECF No. [58] ¶ 34; ECF No. [59] ¶ 34. Specifically, between March and June 2019, Teal had in-person meetings with representatives from several institutions, all of which were Armor's clients as of Teal's last day of employment, including: (1) St. John's County Sheriff's Office; (2) Collier County Sheriff's Office; (3) Glades County Sheriff's Office; (4) Virginia Department of Corrections; and (5) Brevard County Sheriff's Office. ECF No. [58-16] at 3-5 ¶ 3; ECF No. [58-4] at 161:24-163:25; *see also* ECF No. [58] ¶ 35; ECF No. [59] ¶ 35.

According to Teal, in establishing the specific terms of his employment with Corizon, he relied on Armor's representation in the NDA that Teal was not subject to any restrictive covenants, which was also consistent with his understanding and memory. ECF No. [82-1] ¶ 22. Teal further testified that although his employment agreement with Corizon provides that it is effective January 21, 2019, the terms of his employment were not finalized until April 5, 2019—i.e., when the agreement was signed. *Id.*; ECF No. [58-15] ("Corizon Employment Agreement") at 5; ECF No. [82-2] at 49:15-51:19.

According to Armor, it impossible that either Corizon or Teal relied on the February 5, 2019 NDA in making any decisions regarding Teal's employment at Corizon because Corizon offered Teal employment via letter dated January 14, 2019, ECF No. [58-13] at 3, ¶¶ 1-2. Additionally, the Corizon Employment Agreement is dated January 23, 2019 and provides an effective date of January 20, 2019, ECF No. [58-15] at 2. Armor further contends that at the time of the potential acquisition, Armor was not aware that Corizon had hired Teal as an account representative, or that Teal was hired with the specific purpose of marketing Corizon to Armor's former and current clients. ECF No. [58-2] ¶¶ 7-8; *see also* ECF No. [58-4] at 22:1-17; ECF No. [58-15] at 1.

### D.  The Brevard Contract

Armor had provided inmate health services to the Brevard County Sheriff's Office ("Brevard") from 2005 to 2019. ECF No. [58-2] ¶¶ 12-13; ECF No. [58-18] at 6:2-7. While employed by Armor, Teal had a significant role in securing and maintaining Armor's business relationship with Brevard. ECF No. [22] ¶ 10; ECF No. [40] ¶ 10; ECF No. [58-16] at 5-6, ¶ 7. In 2018, Brevard renewed its contract with Armor, which was set to expire on September 30, 2020, with an option to renew. ECF No. [58-2] ¶ 14. At that time, Brevard was happy with Armor's services. ECF No. [58-18] at 18:11-17. Thereafter, on January 30, 2019, Brevard informed Armor that it was planning to put the contract out to bid at the end of the term because "[the sheriff] thinks he can get a cheaper deal." ECF No. [82-17] at 2.

In April 2019, the Sheriff of Brevard County, Wayne Ivey, contacted Teal and told him that Brevard was going to issue a Request for Proposal ("RFP") to receive competitive bids from correctional healthcare providers. ECF No. [82-1] ¶ 23; ECF No. [58-4] at 32:19-33:5; ECF No. [58-18] at 20:11-21:2. On June 14, 2019, before sending a termination letter to Armor, Brevard

released an RFP for a new vendor. ECF No. [58-19]; ECF No. [58-17]. With Teal's help, Corizon

responded to the RFP and entered into negotiations with Brevard. ECF No. [58-16] at 5-6, ¶ 7.

Specifically, Teal performed all of the calculations to determine pricing for Corizon's submission

to the RFP and communicated directly with Brevard regarding the contract. ECF No. [58-4] at

29:12-32:13, 34:12-37:4; ECF No. [58-16] at 5-6, ¶ 7.

Brevard terminated its contract with Armor on July 1, 2019, ECF No. [58-17]; ECF No.

[58-2] ¶¶ 12-13, and Corizon was awarded the Brevard RFP on September 6, 2019, ECF No. [58-

21]; ECF No. [82-1] ¶ 24. During his deposition, Sheriff Ivey testified that the decision to terminate

the contract between Brevard and Armor was due to Armor's performance and Brevard's desire

to obtain the best price, and that it was in no way related to Teal. ECF No. [82-10] at 9:2-11:11,

15:21-17:8, 53:12-15. According to Armor, it initially began responding to the RFP but withdrew

from the bid process because it became apparent to Armor that Brevard desired to partner with

another vendor. ECF No. [58-2] ¶ 17; ECF No. [58-20] at 2; ECF No. [58-18] at 29:18-30:4.

### E.  Cease and Desist Letters

Armor sent Teal a letter dated July 23, 2019, which informed Teal to cease and desist from

certain activities and threatened legal action. ECF No. [58-22] ("July 23, 2019 Letter") at 2-3; ECF

No. [82-1] ¶ 25. The July 23, 2019 Letter referred to "common law" duties, but it did not mention

an employment agreement or restrictive covenants. ECF No. [58-22] at 2-3; ECF No. [82-1] ¶ 25.

Corizon's General Counsel, Scott King, responded to the July 23, 2019 Letter and explained

Corizon's and Teal's understanding that Teal "does not have any contractual restrictive covenants

that would prohibit him from speaking with or even soliciting persons he knew while he was

working with Armor or prior to working with Armor, even if he met those individuals though his

work with Armor." ECF No. [59-17] at 2-3.

On August 2, 2019, Armor responded stating, in pertinent part, that "Armor agrees that Mr. Teal did not enter into any post-employment restrictive covenants that, standing alone, limit Mr. Teal's ability to be employed by a competitor of Armor, like Corizon." ECF No. [58-22] at 4-7 ("August 2, 2019 Letter"). After the August 2, 2019 Letter, Corizon mentioned to Armor that Teal had a laptop that Armor had purchased for him, and Armor demanded that the laptop be returned. *Id.* at 8-9 ("August 13, 2019 Letter"). Teal promptly turned over the laptop to his counsel on August 6, 2019. ECF No. [82-1] ¶ 12; ECF No. [82-8] ¶ 3.

The first time Armor informed Corizon or Teal that Teal had restrictive covenants it intended to enforce was when Armor filed and served the complaint in this matter. ECF No. [82-1] ¶ 16; ECF No. [82-2] at 125:7-18; *see also* ECF No. [1]. King testified that he "found it very odd that the agreement didn't show up after Armor made numerous representations that such an agreement didn't exist." ECF No. [58-12] at 48:2-49:24; *see also* ECF No. [59-17] at 2; ECF No. [58-22] at 4. Armor claims that Lissette Perez, Armor's Senior Vice President of Finance and Controller, ECF No. [78-1], found the Employment Agreement in either a desk drawer or cabinet on September 17, 2019 when cleaning for a move and that the agreement had been there for thirteen years and been forgotten. ECF No. [82-9] at 14, ¶ 16. Specifically, Perez testified that she found the Employment Agreement in a file labeled "BT" in a desk drawer while cleaning and claims to have put the document there in 2006. ECF No. [82-4] at 8:2-16:10. Perez did not witness either Teal or Dr. Armas sign the Employment Agreement. *Id.* at 8:18-23.

According to Teal, Armor did not have a regular practice of requiring its executives to execute non-competition agreements from 2006 to 2018, and five individuals left Armor to work for its competitors during Teal's employment with Armor. ECF No. [82-1] ¶ 5; ECF No. [82-2] at 100:9-12. Specifically, two former Armor employees involved in client relations and pricing were

already working for Corizon when Teal joined, and neither had a non-compete: Karen Davies (Senior Vice-President, client-facing sales role), and Carl Wittenberg (prepared pricing proposals). *Id.* ECF No. [82-1] ¶ 5; *see also* ECF No. [82] ¶ 10; ECF No. [99] ¶ 10. Additionally, Armor's CEO and Controller do not currently have non-competition provisions, and its COO did not have a non-competition provision until 2019. ECF No. [82] ¶ 12; ECF No. [99] ¶ 12.

Dr. Armas testified that it is his regular practice to require his executives to sign employment agreements with restrictive covenants. ECF No. [61-5] at 30:20-31:16. During discovery, Armor produced three agreements that contained non-competition provisions: (1) Employment Agreement, dated August 5, 2004, ECF No. [99-2]; (2) Consulting Agreement, dated November 25, 2008 and signed by Teal as Armor's CEO, ECF No. [61-3]; and (3) Employment Agreement, dated March 2016, ECF No. [59-16]. Armor also produced an employment agreement, effective January 1, 2007, that contained a confidentiality provision, which Teal signed as Armor's CEO. ECF No. [61-4].

After the lawsuit was filed in October 2019, Teal agreed to a modified assignment so as not to violate the alleged Employment Agreement. ECF No. [59-8] at 18:21-19:15, 26:5-27:3; ECF No. [59-9] at 31:25-35:2. Thereafter, Teal attended the Florida Sheriff's Association Summer Conference in July 2020 and the Winter Conference in July 2021 on Corizon's behalf. ECF No. [58-2] ¶¶ 24-25. Teal remains employed by Corizon. ECF No. [58-4] at 14:13-16.

Armor now moves for partial summary judgment on Counts I and II, both of which seek relief for Teal's breach of the Employment Agreement. Additionally, Teal moves for summary judgment on Counts I-X—i.e., each of Armor's ten claims.

## III.  LEGAL STANDARD

The standard of review on cross-motions for summary judgment does not differ from the standard applied when only one party files such a motion. *See Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citations to materials in the record, including, among other things, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48).

A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations, which 'are jury functions, not those of a judge.'" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019) (quoting *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013)); *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006); *see also Crocker v. Beatty*, 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-movant's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant."). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material

fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

Initially, the moving party bears the "responsibility of informing the . . . court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If a movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 322). The non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *See Shiver*, 549 F.3d at 1343. Yet, even where a non-movant neglects to submit any alleged material facts in dispute, a court must still be satisfied that the evidence in the record supports the uncontroverted material facts proposed by the movant before granting summary judgment. *Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004) ("*One Piece of Real Prop.*"). Indeed, even "where the parties agree on the basic facts, but disagree

about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

Additionally, "cross motions for summary judgment may be probative of the nonexistence of a factual dispute, but this procedural posture does not automatically empower the court to dispense with the determination whether questions of material fact exist." *Ga. State Conf. of NAACP v. Fayette Cnty. Bd. of Comm'rs*, 775 F.3d 1336, 1345-46 (11th Cir. 2015). Indeed, even where the issues presented on motions for summary judgment overlap, a court must consider each motion on its own merits, "resolving all reasonable inferences against the party whose motion is under consideration." *S. Pilot Ins. Co. v. CECS, Inc.*, 52 F. Supp. 3d 1240, 1243 (N.D. Ga. 2014) (citing *Am. Bankers Ins. Grp.*, 408 F.3d at 1331). In particular, where "the parties respond[] to each respective summary judgment motion with disputes as to the 'undisputed' facts, add[] 'material facts' of their own, and then repl[y] with subsequent objections to the other party's additional facts," the mere filing of cross motions for summary judgment is not conclusive. *Id.* Thus, where the parties disagree as to the facts, summary judgment cannot be entered unless one of the parties meets its burden of demonstrating that "there is no dispute as to any material facts with the evidence and all inferences drawn therefrom viewed in the light most favorable" to the non-moving party. *Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983) (citing *M/V Nan Fung*, 695 F.2d at 1296-97).

## IV.   DISCUSSION

In Armor's Motion, Armor argues that summary judgment is warranted as to liability on Counts I and II, both of which seek relief for Teal's breach of the Employment Agreement, because there are no genuine issues of material fact that: (1) the Employment Agreement is a valid,

enforceable contract; (2) the Restrictive Covenants in the Employment Agreement are enforceable; and (3) Teal breached the Non-Competition provision in the Employment Agreement. *See generally* ECF No. [57]. With respect to Count I, Armor also requests that the Court grant summary judgment as to the relief requested and enter a permanent injunction. *Id.* Armor further argues that Teal's affirmative defenses do not preclude summary judgment on Counts I and II, and Armor is entitled to attorneys' fees and costs incurred in enforcing the Employment Agreement. *Id.*

Teal's Motion, on the other hand, argues that summary judgment should be granted in his favor for the following reasons: (1) Armor cannot prove the elements of causation or damages for Counts I-VIII; (2) Armor cannot maintain a breach of contract claim because it has no right to enforce the Restrictive Covenants; (3) Teal did not misappropriate any information that Armor maintained as a trade secret; (4) Teal has not tortiously interfered with Armor's contractual or business relationships; (5) Teal did not breach any fiduciary duty owed; (6) Teal did not breach the covenant of good faith and fair dealing; (7) Teal could not have fraudulently induced the NDA as a matter of law; and (8) Armor cannot establish that Teal violated the Computer Fraud and Abuse Act and Stored Communications Act. *See generally* ECF No. [83]. Teal also contends that Armor's demand for punitive damages should be dismissed. *Id.*

The Court will address each Motion in turn.

**A. Armor's Motion**

Armor's Motion requests summary judgment on the issue of liability for its breach of contract claims because, Armor contends, it has demonstrated the absence of any genuine issues of material fact on each required element of its claim. Specifically, Armor argues that: "(A) the Employment Agreement is a valid, enforceable contract; (B) the Restrictive Covenants[1] in the

---

[1] As noted above, the term "Restrictive Covenants" collectively refers to the Confidentiality, Non-Competition, and Proprietary Rights provisions in the Employment Agreement. However, in its Motion,

Employment are enforceable; and (C) Teal breached the Non-Competition provision in the Employment Agreement." ECF No. [57] at 4. Further, with respect to Count I, Armor avers that "(D) this Court should grant summary judgment as to the requested relief and enter a permanent injunction." *Id.* Armor does not seek summary judgment as to damages on Count II.

Teal argues that Armor is not entitled to summary judgment primarily because Armor cannot satisfy its burden of proof on its breach of contract claims. *See generally* ECF No. [60]. Specifically, Teal maintains that "Armor expressly disavowed the existence of the restrictive covenants at issue and thereby surrendered any right to performance as a matter of law." ECF No. [60] at 2. Further, "Armor has not carried its burden of proving that the Non-Competition provision is reasonably necessary to protect a legitimate business interest." *Id.* For example, "Armor's express disavowal of the existence of such covenants, combined with its lack of a regular practice of having executives enter non-competes, demonstrates the opposite: that Armor does not value these covenants and they are not reasonably necessary." *Id.* Moreover, Teal contends that Armor cannot prove that it was damaged by Teal's alleged breach. According to Teal, at minimum, a jury must determine the authenticity of the Employment Agreement and whether his equitable defenses bar its enforcement. Lastly, Teal maintains that Armor cannot meet its burden of entitlement to injunctive relief.

### 1. Employment Agreement: Enforceability

To establish a claim for breach of contract under Florida law, "a party must demonstrate the existence of a valid contract, a material breach of that contract, and damages." *Shipco Transp., Inc. v. Abba Shipping Lines, Inc.*, No. 11-22055-CIV, 2012 WL 6725875, at *10 (S.D. Fla. Dec.

---

Armor only attempts to demonstrate breach of the Non-Competition clause. *Id.* at 4 ("Teal breached the Noncompete Provision in the Employment Agreement"); *id.* at 8-9 (discussing breaches of the Non-Competition clause). Thus, because Armor does not attempt to establish breach of the Confidentiality or Proprietary Rights covenants, those covenants are not relevant to the instant Motion.

27, 2012) (citing *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999)). "Issues of contract interpretation are generally questions of law and, thus, properly resolved on summary judgment," although "the existence of a contract is a question of fact to be determined by consideration of all the facts and circumstances." *Lockheed Martin Corp. v. Galaxis USA, Ltd.*, 222 F. Supp. 2d 1315, 1323 (M.D. Fla. 2002). In Florida, courts use "an objective test . . . to determine whether a contract is enforceable." *Robbie v. City of Miami*, 469 So. 2d 1384, 1385 (Fla. 1985). "To determine the creation and scope of a contract, courts must not 'depend on the agreement of two minds in one intention, but on the agreement of two sets of external signs.'" *Bland v. Freightliner LLC*, 206 F. Supp. 2d 1202, 1207 (M.D. Fla. 2002) (quoting *Cheverie v. Geisser*, 783 So. 2d 1115, 1119 (Fla. 4th DCA 2001)).

Armor maintains that the Employment Agreement is a valid and enforceable contract because it was executed by both Armor, via its then-CEO/President Dr. Armas, and Teal, ECF No. [22] at 10, and "[n]othing in the record suggests that the signatures on the Employment Agreement are invalid or that the Employment Agreement is otherwise invalid." ECF No. [57] at 4. Additionally, according to Armor, while Teal maintains that he does not recall signing the Employment Agreement, he has not presented any evidence demonstrating a genuine issue of material fact regarding its validity. *Id.* at 4-5.

In his Response, Teal contends that he "is not relying solely upon the fact that he does not remember executing the [Employment] Agreement[,]" but also upon the "suspicious set of circumstances" presented in this case. ECF No. [60] at 11-12. Specifically, Teal argues that neither Teal nor Dr. Armas remember signing the Employment Agreement, nor was it Armor's regular practice to have executives sign these types of agreements. *Id.* at 12. Additionally, the "uncontroverted evidence shows that neither Armor nor Mr. Teal believed he had restrictive

covenants" and "Armor claims it found the agreement on September 17, 2019, when cleaning out an old cabinet or drawer, where it had been sitting, forgotten, for thirteen years." *Id.*

Upon review of the record and consideration of the parties' briefings, the Court finds that the Employment Agreement is a valid, enforceable contract. "It is axiomatic that '[w]here one contracting party signs the contract, and the other party accepts and signs the contract, a binding contract results.'" *Salaka v. Live Music Tutor, Inc.*, No. 614-cv-1154-Orl-40DAB, 2016 WL 639366, at *9 (M.D. Fla. Jan. 27, 2016), *report and recommendation adopted*, 614-cv-1154-Orl-40DAB, 2016 WL 625337 (M.D. Fla. Feb. 16, 2016) (quoting *D.L. Peoples Grp., Inc. v. Hawley*, 804 So. 2d 561, 563 (Fla. 1st DCA 2002)). Additionally, "[m]erely stating that [one] does not recall signing [an] agreement is insufficient to raise a genuine dispute of fact." *Donjoie v. Whitestone Gulf, Inc.*, No. 19-20298-CIV, 2019 WL 4917095, at *2 (S.D. Fla. Oct. 4, 2019) (citing *Torjagbo v. United States*, 285 F. App'x 615, 619 (11th Cir. 2008)); *see also Fox v. Dep't of Health*, 994 So. 2d 416, 418 (Fla. 1st DCA 2008) ("A witness' testimony that he or she does not remember an incident does not constitute competent, substantial evidence that the incident did not occur." (citation omitted)).

Here, despite not remembering that they signed the Employment Agreement, both Teal and Dr. Armas testified that the signatures appeared to be theirs. ECF No. [58-3] at 33:9-35:4; ECF No. [58-4] at 95:9-24. Importantly, while Teal suggests that the Employment Agreement may have been "falsified," ECF No. [60] at 13, he has not pled that the Employment Agreement is a product of fraud. *See generally* ECF No. [41]. Nor is he accusing anyone of forging his signature on the Employment Agreement. ECF No. [58-4] at 95:9-24. The Court certainly recognizes that the facts of this case, particularly those regarding Armor's purported representations and the discovery of

the Employment Agreement, present a unique set of circumstances. However, Teal's arguments regarding the enforcement of the Employment Agreement are better suited to an equitable inquiry.

### 2. Restrictive Covenants: Enforceability

Having found no genuine issue of material fact regarding the validity of the Employment Agreement, the Court now turns to whether the Restrictive Covenants in the Employment Agreement are enforceable. Under Florida law, "restrictive covenants are valid if the employer can prove: (1) the existence of one or more legitimate business interests justifying the restrictive covenant; and (2) that the contractually specified restraint is reasonably necessary to protect the established interests of the employer." *Autonation, Inc. v. O'Brien*, 347 F. Supp. 2d 1299, 1304 (S.D. Fla. 2004) (citing Fla. Stat. § 542.335; *North American Products Corp. v. Moore*, 196 F. Supp. 2d 1217, 1228 (M.D. Fla. 2002)). Once an employer establishes a *prima facie* case, "the burden then shifts to the employee to show that the restriction is overbroad, overlong, or otherwise not reasonably necessary to protect the established interests of the employer." *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1231 (11th Cir. 2009) (citing Fla. Stat. § 542.335(1)(c)). "Additionally, when the employer establishes a legitimate business interest, irreparable injury must be presumed and the burden shifts to the employee to establish the absence of such injury." *Autonation, Inc.*, 347 F. Supp. 2d at 1304 (citing Fla. Stat. § 542.335(1)(j)).

### a. Legitimate Business Interests

Pursuant to Florida Statute § 542.335(1)(b), legitimate business interests justifying a restrictive covenant includes: trade secrets, valuable confidential business or professional information, substantial relationships with specific prospective or existing customers, and customer goodwill. Fla. Stat. § 542.335(1)(b). "Courts are statutorily required to construe a restrictive covenant in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement." *Autonation, Inc.*, 347 F. Supp. 2d at 1304 (citing

Fla. Stat. § 542.335(1)(h)). Additionally, Florida law prevents courts from "employ[ing] any rule of contract construction that requires the court to construe a restrictive covenant narrowly, against the restraint, or against the drafter of the contract." Fla. Stat. § 542.335(1)(h).

Here, Armor asserts that "the purpose of the Restrictive Covenants is to protect Armor's confidential business information, the confidential information of Armor's customers and Armor's substantial relationships with its customers—all of which are statutorily recognized legitimate business interests." ECF No. [57] at 6. Teal responds that Armor has failed to "explain *how* the Non-Competition provision itself actually serves the asserted purpose of 'protecting Armor's confidential business information, the confidential information of Armor's customers, and Armor's substantial relationships with its customers'" and "[t]he Court should not presume that it does." ECF No. [60] at 8 (emphasis in original) (alteration adopted). According to Teal, Armor has also failed to "identify *any* specific confidential information, belonging to either Armor or its customers, that the Non-Competition provision actually protects." *Id.* at 8-9 (emphasis in original). For example, while Armor's SMF lists certain information that Armor considers confidential— namely, its profit and loss statements and client-level budgets—"Armor does not make any argument that the alleged Non-Competition provision protects those items." *Id.* 8, n.9.

Upon review of the record and consideration of the parties' briefings, the Court finds that Armor has not carried its burden of demonstrating the existence of a legitimate business interest justifying the restrictive covenants at issue. Indeed, aside from Armor's general and conclusory statements, nowhere does Armor discuss which particular information or substantial relationships the Restrictive Covenants seek to protect. For example, while Armor claims that its profit and loss statements and client-level budgets, which contain non-public information, are confidential, Armor fails to make any argument that it derives economic value from this information, or that

possession of this information by a competitor would enable unfair competition. *See IDMWORKS,*

*LLC v. Pophaly*, 192 F. Supp. 3d 1335, 1340 (S.D. Fla. 2016) ("A legitimate business interest must

represent an investment by the employer and must enable unfair competition if misappropriated.").

Nor does Armor discuss the particular customer relationships or confidential client information

that it seeks to protect. While the Court is required to construe a restrictive covenant in favor of

providing reasonable protection to legitimate business interests, Armor has made little effort in its

Motion to prove a legitimate business interest justifying the Restrictive Covenants.

### b. Reasonably Necessary

Even if the Court were to assume that one or more legitimate business interests justify the

imposition of the Restrictive Covenants, the record reflects genuine issues of material fact

regarding whether the restraints are reasonably necessary to protect Armor's interest in protecting

its "confidential business information, the confidential information of Armor's customers and

Armor's substantial relationships with its customers[,]" ECF No. [57] at 6.[2] *See Whitby v. Infinity*

*Radio Inc.*, 951 So. 2d 890, 897 (Fla. 4th DCA 2007) ("Whether a non-compete covenant is

reasonable or overly broad is a question of fact for the trial court"); *see also PartyLite Gifts, Inc.*

*v. MacMillan*, 895 F. Supp. 2d 1213, 1225-26 (M.D. Fla. 2012) ("Whether a non-compete

covenant is reasonable or overbroad is a question of fact, not of law." (collecting cases)).

For example, while Dr. Armas testified that his regular practice is to require executives to

sign employment agreements with restrictive covenants, ECF No. [61-5] at 30:20-31:2, Armor's

now-CEO does not have a formal employment agreement with Armor, or any other agreement that

imposes restrictive covenants upon him. ECF No. [59-15] at 16:2-21; *see also* ECF No. [99] ¶ 10

(admitting that Armor's controller does not currently have a non-competition provision, and its

---

[2] Teal does not argue that the restraints in the Restrictive Covenants are overbroad as to time, geographic limitation, or line of business. *See generally* ECF No. [60].

COO did not have a non-competition provision until 2019). Additionally, when Teal joined Corizon, two former Armor employees involved in client relations and pricing had already left Armor to work for Corizon, and neither had a non-compete. ECF No. [82-1] ¶ 5; *see also* ECF No. [82] ¶ 10; ECF No. [99] ¶ 10.

According to Armor, it is ultimately "irrelevant how many examples Armor shows of other agreements with restrictive covenants. The bottom line is Teal had an employment agreement, and he breached it." ECF No. [61] at 10.[3] The Court is not persuaded. Indeed, given that Armor is in the correctional healthcare industry and contracts with governmental agencies to provide inmate healthcare services, much information is publicly available and subject to Freedom of Information Requests. ECF No. [82-1] ¶ 33; ECF No. [82-2] at 53:17-55:16, 101:15-103:25. Thus, whether other high-level executives or employees privy to Armor's purported confidential information are subject to restrictive covenants is certainly relevant in determining whether such covenants are reasonably necessary to protect Armor's legitimate business interests.

More importantly, on two separate occasions during the restrictive period, Armor confirmed that "Mr. Teal is not subject to any on-going non-competition, confidentiality or other agreement with Armor that would prohibit him from working for Corizon or otherwise assisting with a possible transaction[.]" ECF No. [59-6] at 5-6; *see also* ECF No. [58] at 4 ("Armor agrees that Mr. Teal did not enter into any post-employment restrictive covenants that, standing alone, limit Mr. Teal's ability to be employed by a competitor of Armor, like Corizon."). Indeed, it was

---

[3] Armor does not cite to any authority for the significance of this point. Interestingly, Armor claims that it was intentional and deliberate in protecting its legitimate business interests because "[r]ather than aimlessly seeking to preclude competition by any employee, Armor focused on preventing competition by employees like Teal—who were intimately aware of Armor's and Armor's client's confidential information[.]" ECF No. [61] at 9. Viewing the facts in the light most favorable to Teal, Armor's theory is belied by the fact that its current CEO does not have an agreement in place that imposes a restrictive covenant upon him. *See* ECF No. [82] ¶ 12; ECF No. [99] ¶ 12.

not until September 17, 2019, when the Employment Agreement was found by Perez while she was cleaning out a drawer in Armor's corporate office, that Armor sought to enforce the Restrictive Covenants. ECF No. [59-12] at 3. Accordingly, viewing the record in the light most favorable to Teal, there are genuine issues of material fact regarding whether the Restrictive Covenants are reasonably necessary to protect Armor's legitimate business interests. Therefore, summary judgment in Armor's favor is inappropriate for this reason alone.

### B. Teal's Motion

Teal moves for summary judgment on each of the ten claims asserted in Armor's Amended Complaint: Temporary and Permanent Injunction to Remedy Breach of Contract (Count I); Breach of Contract (Count II); Misappropriation of Trade Secrets under Fla. Stat. § 688.001, *et seq.* ("FUTSA") (Count III); Tortious Interference with Armor's Contractual Relationships (Count IV); Tortious Interference with Armor's Business Relationships (Count V); Breach of Fiduciary Duty (Count VI); Fraudulent Inducement (Count VII); Breach of Covenant of Good Faith and Fair Dealing (Count VIII); Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA") (Count IX); and Violation of the Stored Communications Act, 18 U.S.C. § 2701, *et seq.* (Count X).

#### 1. Causation and Damages

In his Motion, Teal first argues that he is entitled to judgment as a matter of law on Counts I-VIII because there is no evidence in the record demonstrating causation or damages, which is an essential element of each of these claims. ECF No. [83] at 15-20.[4] As to causation, Teal maintains

---

[4] *See, e.g.*, *Walter Int'l Prods., Inc. v. Salinas*, No. 07-20136-CIV, 2009 WL 9113379, at *4, n.7 (S.D. Fla. Oct. 26, 2009), *aff'd*, 650 F.3d 1402 (11th Cir. 2011) ("[C]ausation of damages is a necessary element in order to establish liability for breach of contract."); *Alphamed Pharm. Corp. v. Arriva Pharm., Inc.*, 432 F. Supp. 2d 1319, 1335 (S.D. Fla. 2006), *aff'd*, 294 F. App'x 501 (11th Cir. 2008) ("[A] claim for damages under the FUTSA requires proof of damages[.]"); *Worldwide Primates, Inc. v. McGreal*, 26 F.3d 1089, 1091 (11th Cir. 1994) ("An integral element of a claim of tortious interference with a business relationship

that Armor cannot prove causation on Counts I-VIII because each of Armor's current or former clients who testified in this matter confirmed that Teal neither said anything disparaging about Armor, nor attempted to convince them to terminate their relationship with Armor. *See* ECF No. [82-10] at 9:2-11:11, 15:21-17:8, 53:12-15 (Brevard County); ECF No. [82-11] (Wakulla County); ECF No. [82-12] (Flagler County); ECF No. [82-13] (Baker County); ECF No. [82-14] (Sarasota County); ECF No. [82-15] (St. Johns County). As to damages, Teal contends that "Armor cannot meet its burden of proof to establish the one type of damages it claims: lost profits for the Brevard contract." ECF No. [83] at 16.[5]

Armor responds that Teal is not entitled to judgment as a matter of law because "[t]he record is replete with evidence of causation." ECF No. [100] at 12. According to Armor, the evidence in the record shows a direct correlation between: "(a) Teal's interactions with Armor's long-term clients and those clients terminating their contracts with Armor; and (b) Teal's access to and use of Armor's Confidential Information[6] . . . and his preparation of pricing proposals for Corizon, which he then submitted to Armor's clients." *Id.* at 12-13; *see also* ECF No. [99] ¶¶ 86-

---

requires proof of damage to the plaintiff as a result of the breach of the relationship." (citation omitted)); *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002) ("The elements of a claim for breach of fiduciary duty" include "the breach of that duty such that it is the proximate cause of the plaintiff's damages."); *Thompkins v. Lil' Joe Recs., Inc.*, 476 F.3d 1294, 1315 (11th Cir. 2007) (A claim for fraudulent inducement requires "consequent injury to the party acting in reliance." (citation omitted)); *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 300 F. Supp. 2d 1281, 1287 (S.D. Fla. 2004), *aff'd*, 420 F.3d 1146 (11th Cir. 2005) (granting summary judgment where plaintiff alleged no concrete damages as a result of the alleged breach of the implied covenant of good faith and fair dealing).

[5] With respect to the Brevard contract specifically, Teal argues that Armor had no possibility of winning the contract regardless of anything Teal did because it withdrew from the Brevard bid process entirely. As demonstrated in Teal's Response to Armor's Motion *in Limine* to Preclude Opinion Testimony of Edward Deppman and Motion *in Limine* Related to Portions of Edward Deppman's Expert Report and Incorporated Memorandum of Law, ECF No. [113], this argument is better suited to whether Armor failed to mitigate its alleged damages by not completing the Brevard bid process.

[6] According to Armor, the term "Confidential Information" encompasses the following: financial information, such as Armor's operating expenses, liabilities, and margins; client lists; pricing information; busines strategy vendor and provider information; employee identity; and performance information. ECF No. [100] at 12-13.

88, 91; ECF No. [124] ¶¶ 86-88, 91. As to damages, Armor rejects Teal's contention that its "claim for lost profits is entirely speculative and unsupported by the evidence" and maintains that this is ultimately a question for the jury to determine. ECF No. [100] at 14-15.

As an initial matter, the Court highlights that while Armor has provided the Court with summaries of Teal's interactions with eleven of Armor's clients after his resignation to purportedly show Teal's "calculated plan to solicit and steal Armor's clients[,]" *id.* at 6-11, Armor only seeks damages as to its loss of the Brevard contract. *See id.* at 10 ("Armor's contract with Brevard is specifically at issue in this case, as that is the contract Teal was actually successful in obtaining from Armor for Corizon[.]"); *id.* at 14 ("Despite losing several contracts as a result of Teal's actions (as outlined above), in this case, Armor seeks lost profits only related to its contract with Brevard."); *see also* ECF No. [99] ¶ 101 ("Armor's damages are comprised of: (a) lost profits, goodwill, and reputational damages due to Armor's loss of the Brevard contract; (b) Teal's salary at Corizon [pursuant to the Employment Agreement]; and (c) statutory damages, including exemplary and punitive damages." (citing ECF No. [99-15] at 11-14, ¶ 11)). As such, Teal's interactions with Armor's clients and/or former clients other than Brevard are not material to the Court's analysis regarding Counts I-VIII because Armor has not claimed damages for such relationships. *See supra* n.4 (explaining that damages are an essential element of these claims). Therefore, those contracts and/or relationships are not addressed.

### a. Causation

Upon review of the record and consideration of the parties' briefings, the Court cannot conclude that Teal is entitled to judgment as a matter of law as to causation on Counts I-VIII. Viewing the record in the light most favorable to Armor, while Sheriff Ivey testified that Brevard's decision to terminate its contract with Armor was due to Armor's service and Brevard's desire to

obtain the best price, ECF No. [82-10] at 9:2-11:11, 15:21-17:8, 53:12-15, a reasonable factfinder could conclude otherwise based upon the circumstantial evidence showing Teal's contact with Brevard following his resignation from Armor on November 10, 2018 and Brevard's subsequent termination. Indeed, the evidence in the record shows the following sequence of events:

| Date | Event | Citation |
|------|-------|----------|
| **September 2018** | Brevard is happy with Armor and renews a two-year contract with Armor, set to expire on September 30, 2020, with an option to renew. | ECF No. [58-2] ¶ 14; ECF No. [58-18] at 18:11-17. |
| **January 15, 2019** | Teal sends text message to various client representatives giving them "a heads up" that Teal is now working for Corizon ahead of the "FSA Conference." | ECF No. [99-21]. |
| **March/April 2019** | (1) Telephone conversation with Sheriff Ivey, Greg Pelham, and Commander Darrell Hibbs, and (2) Teal sends text messages to Sheriff Wayne Ivey regarding scheduling a meeting. | ECF No. [99-22] at 3-5, ¶ 3. |
| **April 2019** | Teal learns about Brevard's forthcoming RFP. | ECF No. [82-1] ¶ 23. |
| **April/May 2019** | Teal has in-person meeting with Greg Pelham. | ECF No. [99-22] at 3-5, ¶ 3. |
| **May 1, 2019** | Davies sends Teal Armor's 2018 Budget for Brevard. | ECF No. [99-14] at 3; ECF No. [99-12] ¶¶ 10-12. |
| **May 2, 2019** | Teal accesses Armor's 2018 Budget for Brevard on the Armor laptop. Teal also deletes two versions of that file. | ECF No. [99-12] at 7, ¶ 11(a); ECF No. [108-13] at 15. |
| **May 8, 2019** | Teal deletes four versions of Armor's 2018 Budget for Brevard from the Armor laptop. | ECF No. [99-12] at 7, ¶ 11(a); ECF No. [108-13] at 15. |
| **June 14, 2019** | Brevard issues the RFP to the public. | ECF No. [58-19]. |
| **June 19, 2019** | Davies sends Teal Armor's 2018 Budget for Brevard. | ECF No. [99-14] at 7. |

| June – October 2019 | Teal assists Corizon in preparing a pricing proposal for Brevard in response to Brevard's RFP. | ECF No. [82] ¶ 51; ECF No. [58-4] at 29:12-32:13, 34:12-37:4; ECF No. [58-16] at 5-6, ¶ 7. |
|---|---|---|
| July 1, 2019 | Brevard sends termination letter to Armor. | ECF No. [58-17]. |
| September 6, 2019 | Brevard awards the contract to Corizon. | ECF No. [58-21]. |
| September 2019 | Teal has a telephone conversation with Commander Darrell Hibbs regarding Corizon receiving the Brevard contract. | ECF No. [99-22] at 3-5, ¶ 3. |
| September – October 2019 | Teal has "multiple group phone calls" with representatives from Brevard. | ECF No. [99-22] at 3-5, ¶ 3. |

The crux of Teal's argument as it relates to causation is that the circumstantial evidence in the record cannot overcome Sheriff's Ivey's "unequivocal[] [testimony] that Mr. Teal did *not* induce Brevard to end its relationship with Armor." ECF No. [83] at 28; *see also* ECF No. [127] at 5 ("Armor admitted it has no basis to dispute [the customer] declarations, but nevertheless wants the Court to infer that these customers lied under penalty of perjury based on the "circumstantial evidence showing Teal's contact with the client followed by termination." (internal citation omitted)). However, Teal's contention that the circumstantial evidence in this case cannot overcome the direct evidence is a mere invitation for this Court to weigh evidence on summary judgment. The Court declines this invitation, as it is for the jury to decide whether the foregoing inference is overcome by Teal's direct evidence.[7] *See Lewis*, 934 F.3d at 1179. Accordingly, Teal is not entitled to judgment as a matter of law as to causation.

---

[7] The cases cited by Teal are of limited utility, as they involved failure to establish causation at trial. *See TEC Serv, LLC v. Crabb*, No. 11-62040-CIV, 2013 WL 12177335, at *1 (S.D. Fla. June 11, 2013); *In re Maxxim Med. Grp., Inc.*, 434 B.R. 660 (Bankr. M.D. Fla. 2010).

**b. Damages**

Teal next argues that Armor's claim for lost profits is entirely speculative and unsupported by the evidence. "In lost profit cases, Florida's courts have clearly held that once causation is proven with reasonable certainty, uncertainty as to the precise amount of the lost profits will not defeat recovery so long as there is a reasonable yardstick by which to estimate the damages." *Nebula Glass Int'l, Inc. v. Reichhold, Inc.*, 454 F.3d 1203, 1217 (11th Cir. 2006). Indeed, "the 'uncertainty which defeats recovery in such cases' is the cause of the damage rather than the amount. 'If from proximate estimates of witnesses a satisfactory conclusion can be reached, it is sufficient if there is such certainty as satisfies the mind of a prudent and impartial person.'" *Id.* (quoting *W.W. Gay Mech. Contractor, Inc. v. Wharfside Two, Ltd.*, 545 So. 2d 1348, 1350 (Fla. 1989); *Twyman v. Roell*, 123 Fla. 2, 7, 166 So. 215, 218 (1936)).

Upon review of the record and consideration of the parties' briefings, the Court concludes that genuine issues of material fact compel the denial of Teal's Motion with respect to whether Armor's damages are speculative. As outlined above, Armor has supplied the Court with ample evidence from which a reasonable factfinder could conclude that Teal caused Armor lost profit damages. *See supra* IV.B.1.a; *see also Bray & Gillespie IX, LLC v. Hartford Fire Ins. Co.*, No. 6:07-cv-326-Orl-DAB, 2009 WL 1513400, at *14 (M.D. Fla. May 27, 2009). At trial, Armor will have the opportunity to "present evidence to justify an award of damages in a definite amount" and Teal the opportunity to challenge Armor's evidence through cross-examination and presentation of contrary evidence. *Smith v. Austin Dev. Co.*, 538 So. 2d 128, 129 (Fla. 2d DCA 1989) (quoting *United Steel & Strip Corp. v. Monex Corp.*, 310 So. 2d 339 (Fla. 3d DCA 1975)). From there, it is for the factfinder to determine whether Armor's lost profits, if any, can be

calculated to a reasonable certainty based on the evidence presented. Accordingly, Teal is not entitled to judgment as a matter of law as to damages.

### 2.  Counts I & II – Breach of Contract

Teal argues that summary judgment is warranted on Armor's breach of contract claims, Counts I and II. Specifically, he contends that Armor's claims for breach of contract fail as a matter of law because: (1) Armor cannot enforce a contract it expressly disavowed twice; (2) equitable estoppel precludes Armor from enforcing the alleged restrictive covenants; and (3) Armor's actions demonstrate that the non-competition provision is not reasonably necessary and, therefore, unenforceable. ECF No. [83] at 20-23.

### a.  Employment Agreement: Enforceability

According to Teal, Armor's statements that Teal was not subject to restrictive covenants prevents Armor from claiming that it was entitled to Teal's performance under the Employment Agreement and, in turn, excused Teal's performance as a matter of law. As explained above in addressing Armor's Motion, the Court recognizes that the facts regarding Armor's purported representations and the discovery of the Employment Agreement present a unique set of circumstances. However, the Court is not persuaded that the Employment Agreement is unenforceable for this reason alone. Importantly, the cases cited by Teal in support of his position that Armor is barred from seeking his performance under the Employment Agreement are readily distinguishable and have no application to the case at hand. *See Bank of New York Mellon v. Reyes*, 126 So. 3d 304, 308 (Fla. 3d DCA 2013) (claim for recission of the mortgage agreement at issue could not be granted where counterclaim alleged no more than a breach of contract—breach of contract damages and rescission are mutually exclusive remedies); *see also Moss v. Loandepot.com, LLC*, No. 2:19-CV-12076, 2020 WL 3605280, at *3 (E.D. Mich. July 2, 2020) (dismissing claim for violation of the Michigan Sales Representative Commission Act, a derivative

claim for breach of contract, where plaintiff did not adequately plead a claim for breach of contract and instead requested discovery to further explore the claim's viability). Thus, the Court finds that Teal's argument is better suited to an equitable inquiry. Accordingly, Teal's Motion is denied on this point.

### b. Equitable Estoppel

Teal next argues that Armor is equitably estopped from enforcing the Restrictive Covenants. "The elements of equitable estoppel are (1) a representation as to a material fact that is contrary to a later-asserted position, (2) reliance on that representation, and (3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon." *State v. Harris*, 881 So. 2d 1079, 1084 (Fla. 2004) (citing *State Dep't of Revenue v. Anderson*, 403 So. 2d 397, 400 (Fla. 1981)).

According to Teal, Armor made a representation of material fact—"asserted that Mr. Teal did not have restrictive covenants that restricted his employment with its competitor, Corizon"—and, relying on that representation, "Mr. Teal engaged in employment that would cause him to compete with Armor." ECF No. [83] at 22; *see also* ECF No. [82-1] ¶ 22. Specifically, "Mr. Teal interacted with Brevard—the only customer for which Armor seeks damages—on behalf of Corizon only *after* Armor represented that Mr. Teal was not subject to any restrictive covenants and *before* Armor sued Mr. Teal and attached the [Employment] Agreement." *Id.* Armor then "took a contrary position when it sued Mr. Teal for breach of the restrictive covenants it previously represented did not exist" and "Mr. Teal detrimentally relied upon Armor's representation and has been (and will continue to be harmed)." *Id.* Teal maintains that "[i]t is exceedingly rare that employers disavow restrictive covenants and then seek to enforce them" and "courts have specifically applied the doctrine of estoppel in this context." ECF No. [83] at 21.

Upon review, genuine issues of material fact remain as to whether Armor is equitably estopped from enforcing the Restrictive Covenants. Specifically, the record reflects that Armor's executives were not aware that Corizon had hired Teal as an account representative, or that Teal was hired for the specific purpose of marketing Corizon to Armor's former and current clients. ECF No. [58-2] ¶¶ 7-8; ECF No. [58-11] ¶¶ 16, 30; ECF No. [58-15] at 1; ECF No. [58-4] at 22:1-17. Additionally, according to Armor, it is impossible that Corizon or Teal relied on the February 5, 2019 NDA in making any decisions regarding Teal's employment because Corizon initially offered Teal employment via letter dated January 14, 2019. ECF No. [58-13] at 3, ¶¶ 1-2. Further, the Corizon Employment Agreement is dated January 23, 2019 and provides an effective date of January 20, 2019. ECF No. [58-15] at 2. Teal takes the opposing position, arguing that he accepted employment with Corizon only on April 5, 2019—i.e., the date the Corizon Employment Agreement was signed—and relied on Armor's representation in establishing his employment with Corizon and contacting Armor's clients. *Id.* at 5; ECF No. [82-1] ¶ 22. Drawing all reasonable inferences in Armor's favor, genuine issues of material fact remain on the issue of whether Armor is estopped from enforcing the Employment Agreement. Accordingly, Teal's Motion is denied on this point.

### c. Restrictive Covenant: Enforceability

Lastly, Teal argues that Armor's actions demonstrate that the Non-Competition provision is not reasonably necessary to protect a legitimate business interest. Reciting substantially identical arguments asserted in his Response to Armor's MSJ, Teal contends that "Armor had no regular practice of executing such covenants during Teal's tenure[,]" "multiple Armor employees went to work for competitors[,]" and "[e]ven now, Armor's CEO and controller do not have non-competes." ECF No. [83] at 23. Additionally, according to Teal, "Armor demonstrated that it did

not value *these* alleged covenants when it disavowed them to its direct competitor, Corizon" and its "own story is that it forgot about the [Employment] Agreement before stumbling across it in a file in an untouched drawer." *Id.* (emphasis in original).

In its Response, Armor maintains that "it is irrelevant how many examples Armor shows of other agreements with restrictive covenants" because "[t]he bottom line is Teal had an employment agreement and he breached it." ECF No. [100] at 17. Further, Armor contends that it "was intentional and deliberate in protecting its legitimate business interests" because "[r]ather than aimlessly seeking to preclude competition by an employee, Armor focused on preventing competition by employees like Teal—who were intimately aware of Armor's Confidential Information and Armor's client's confidential information." *Id.* Armor adds that it has "produced several examples of agreements with employees and/or consultants that included provisions similar to the Restrictive Covenants" and "Dr. Armas testified that it is his regular practice to require his executives to sign employment agreements with restrictive covenants." *Id.*

As set forth in the analysis on Armor's Motion, the parties present a genuine dispute regarding whether the Restrictive Covenants are reasonably necessary to protect Armor's legitimate business interests. Accordingly, Teal's Motion is denied on this point.

### 3. Count III – Misappropriation of Trade Secrets

Teal seeks summary judgment on Armor's claim for misappropriation of trade secrets, Count III. To prevail on a claim for misappropriation of trade secrets under Florida's Uniform Trade Secrets Act, Fla. Stat. § 688.001, *et seq.* ("FUTSA"), "a plaintiff must demonstrate that (1) it possessed a 'trade secret' and (2) the secret was misappropriated." *Advantor Sys. Corp. v. DRS Tech. Servs., Inc.*, 678 F. App'x 839, 853 (11th Cir. 2017) (citing Fla. Stat. § 688.002). Under FUTSA, the term "trade secret" is defined as:

information, including a formula, pattern, compilation, program, device, method, technique, or process that:

(a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means, by other persons who can obtain economic value from its disclosure or use; and

(b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Fla. Stat. § 688.002(4). Thus, "[t]o qualify as a trade secret, the information that the plaintiff seeks to protect must derive economic value from not being readily ascertainable by others and must be the subject of reasonable efforts to protect its secrecy." *Medimport S.R.L. v. Cabreja*, 929 F. Supp. 2d 1302, 1322 (S.D. Fla. 2013) (citation omitted); *see also Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998) ("In a trade secret action, the plaintiff bears the burden of demonstrating both that the specific information it seeks to protect is secret and that it has taken reasonable steps to protect this secrecy." (citing *Lee v. Cercoa, Inc.*, 433 So. 2d 1, 2 (Fla. 4th DCA 1983))).

Teal maintains that summary judgment in appropriate on the FUTSA claim because neither Armor's customer list or pricing information is a trade secret, Armor has not taken reasonable steps to protect its trade secrets, and there is no evidence in the record demonstrating that Teal misappropriated any trade secrets. Before addressing the merits of Teal's positions, the Court must highlight that "[c]ourts are extremely hesitant to grant summary judgment regarding the fact-intensive questions of the existence of a trade secret or whether a plaintiff took reasonable steps to protect its trade secrets." *Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1134, 1141 (M.D. Fla. 2007) (collecting cases). Indeed, "[t]he term 'trade secret' is one of the most elusive and difficult concepts in the law to define. The question of whether an item taken from an employer constitutes a 'trade secret,' is of the type normally resolved by a fact finder after full presentation

of evidence from each side." *Id.* (quoting *Lear Siegler, Inc. v. Ark-Ell Springs, Inc.*, 569 F.2d 286, 289 (5th Cir. 1978)). It is through this lens that the Court considers the parties' arguments with respect to Armor's FUTSA claim.

### a. Protectable Trade Secrets

Teal first argues that summary judgment is warranted in his favor on Armor's FUTSA claim because Armor has not identified any information that qualifies as a "trade secret" under Fla. Stat. § 688.002(4). Specifically, Teal explains that "[b]ecause all of Armor's customers are government entities, Armor's contracts, payments received, and communications with customers are available through public record requests" and "[i]nformation available through such requests clearly is not a trade secret." ECF No. [83] at 24. According to Teal, "Armor has not identified what particular information in the identified documents is not publicly available or how it 'derives economic value' from that information 'not being readily ascertainable by others.'" *Id.* at 25 (alterations adopted).

In its Response, Armor addresses its confidential information in two parts: (1) customer lists and (2) pricing information. ECF No. [100] at 20. First, as to its customer lists, Armor states that because these lists were "compiled over time and kept confidential" they qualify as a protectable trade secret. ECF No. [100] at 20. Second, as to its pricing information, Armor maintains that "it is not publicly available—especially not in the format in which Teal accessed and used it." *Id.* In support of its position, Armor points to Teal's deposition testimony admitting that even if he would piece together public pricing documents, he would only get "around 95% of all operating expenses on a particular account." ECF No. [82-2] at 105:2-22, 107:2-5.

### i. Customer lists

The Court finds that Armor's customer lists do not qualify as a trade secret. Under Florida law, "[a] customer list can constitute a 'trade secret' where the list is acquired or compiled through the industry of the owner of the list and not just a compilation of information commonly available to the public." *Bridge Fin., Inc. v. J. Fischer & Assocs., Inc.*, 310 So. 3d 45, 48 (Fla. 4th DCA 2020) (citation omitted); *see also Plouffe v. GEICO Gen. Ins. Co.*, No. 16-25145-CIV, 2017 WL 7796323, at *5 (S.D. Fla. Aug. 8, 2017) ("Generally, courts have determined that, if the privilege holder demonstrates that he or she took reasonable efforts to maintain secrecy as part of a competitive market advantage, customer lists fall within the protection of a trade secret under Florida law." (citations omitted)).

Here, there is no dispute that Armor serves only government entities and that the identity of Armor's customers are available to the public. ECF No. [58-3] at 28:17-23; ECF No. [58-7] ¶ 2. Notwithstanding Armor's representation that its customer lists are kept confidential, Armor has failed to designate any evidence in the record in support of that position. Indeed, Armor has failed to identify how these lists were acquired or compiled, the contents of the lists, the restricted access to the lists, or the measures taken for their safekeeping. *See Zodiac Records Inc. v. Choice Env't Servs.*, 112 So. 3d 587, 590 (Fla. 4th DCA 2013) ("To qualify as a trade secret, there must be evidence that a customer list 'was the product of great expense and effort, that it included information that was confidential and not available from public sources, and that it was distilled from larger lists of potential customers into a list of viable customers for [a] unique business.'" (citation omitted)); *Kavanaugh v. Stump*, 592 So. 2d 1231, 1232 (Fla. 5th DCA 1992) ("Customer lists can constitute trade secrets where the lists are acquired or compiled through the industry of the owner of the lists and are not just a compilation of information commonly available to the

Public."). As such, Armor has failed to raise a genuine issue of material fact regarding whether its customer lists may qualify as a protectable trade secret. Accordingly, Teal's Motion is granted on this point.

### ii. Pricing Information

Nevertheless, Armor's pricing information compels a different conclusion. Indeed, while much of Armor's pricing information may be publicly available through Freedom of Information Act requests, ECF No. [82-1] ¶ 33; ECF No. [82-2] at 53:17-55:15, 101:15-105:22, Teal testified during his deposition that even if he would piece together public pricing documents, he would only get "around 95% of all operating expenses on a particular account." ECF No. [82-2] at 105:2-22, 107:2-5. Further, Armor's current COO Manuel Fernandez, in his sworn declaration, testified that "while Armor's proposals and contract for services . . . may contain the total price and its general terms, Armor's proprietary pricing information is not just the total contract price or the general components of how the bid in structured." ECF No. [58-7] ¶ 6. He further explains that "Armor's pricing is dependent on a variety of factors to which customers and competitors are simply not privy[,]" which drives Armor's profitability, including: "Armor's intimate knowledge of Armor's costs and personalized and historical knowledge regarding labor costs, benefit elections and costs, taxes, insurance costs, medical claims, and medical expense incurred outside the contract price." *Id.* ¶ 7. As such, Armor has raised a genuine issue of material fact regarding whether its pricing information may qualify as a protectable trade secret. Accordingly, Teal's Motion is denied on this point.

### b. Reasonable Efforts to Protect Secrecy

Teal next argues that Armor has not taken reasonable steps to protect its alleged trade secrets. Armor takes the opposing position, and directs the Court to the following measures: (1)

having Teal sign the Employment Agreement, which specifically included a provision regarding confidential information, ECF No. [22-1] at ¶ 4(a); (2) having Teal sign the Confidentiality Agreement, in which he "agree[d] that any and all information, whether privileged, confidential, trade secrets or any other information acquired by [Teal] during and as a result of [his] employment with Armor [ ] . . . is confidential and proprietary information of Armor" and "further agree[d] to keep confidential and not disclose any such information[,]" ECF No. [58-6]; and (3) implementing and enforcing the policy in the Employee Handbook regarding Armor's confidential information, which instructs that employees are "not allowed to remove any proprietary or confidential information as described in this policy without the direct knowledge and consent of their supervisor." ECF No. [58-11] at 4.

According to Teal, "[r]egardless of whether Armor had written policies and agreements regarding use of confidential information, there is no evidence that Armor made any particular effort to actively protect its confidential information." ECF No. [83] at 26. Specifically, Teal contends that "Armor gave employees devices for their personal use that contained confidential information and placed no practical limitations on their ability to access that information." *Id.* And, "[m]ost glaringly, Armor failed to either ask Mr. Teal to return his laptop or wipe Armor's information from those devices when he left Amor's employ—an essential step employers are expected to protect their information." *Id.*

Despite the parties' extensive argument on this issue, the Court is not persuaded that summary judgment is the appropriate mechanism for adjudicating the fact intensive inquiry of whether Armor employed reasonable measures to protect its trade secrets.[8] Indeed, Teal points to

---

[8] In support of his position that Armor failed to take reasonable measures to protect its trade secrets, Teal cites to cases that are materially distinguishable from the case at hand. *See e.g.*, *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1300 (11th Cir. 2018) (employer failed to reasonably protect its trade secrets where, among other factors, employee "refused to sign an employment agreement which states

a variety of measures that Armor did and did not take, and whether those measures were reasonable is a question better suited for the factfinder after full presentation of the evidence from each side. *See Furmanite Am., Inc.*, 506 F. Supp. 2d at 1141. Accordingly, Teal's Motion is denied on this point.

### c. Misappropriation

Lastly, Teal argues that "[t]he record is devoid of any evidence that [he] acquired, disclosed, or used alleged trade secret information to Armor's disadvantage." ECF No. [83] at 26-27. However, genuine issues of material fact preclude summary judgment on this point. As fully set forth above, the circumstantial evidence in this case demonstrates that Teal used Armor's confidential information in preparing pricing proposals and bid submittals for Armor's clients while employed at Corizon—Armor's direct competitor. *See supra* IV.B.1.a. As Armor correctly argues, Teal has raised a question regarding the weight of the evidence, which is not to be determined on summary judgment. *See Lewis*, 934 F.3d at 1179.

### 4. Counts IV & V – Tortious Interference with Armor's Contractual/Business Relationships

Teal seeks summary judgment on Armor's claims for tortious interference with its contractual and business relationships, Counts IV and V. "Tortious interference with a business relationship and tortious interference with contractual relations are 'basically the same cause of action' under Florida law." *Williams Elec. Co. v. Honeywell, Inc.*, 772 F. Supp. 1225, 1235 (N.D. Fla. 1991) (quoting *Smith v. Ocean State Bank*, 335 So. 2d 641, 642 (Fla. 1st DCA 1976)). To prove a tortious interference claim, a plaintiff must demonstrate: "(1) the existence of a contract

---

that he would . . . keep all [employer's] trade secrets in confidence."); *Sw. Stainless, LP v. Sappington*, 582 F.3d 1176, 1189-90 (10th Cir. 2009) (finding that "not every piece of [employer's] 'confidential' information constitutes a trade secret" where employer did "not prevent its customers and vendors from disclosing pricing information to others.").

or a business relationship, not necessarily evidence by an enforceable contract; (2) [defendant's] knowledge of the contract or relationship; (3) [defendant's] intentional and unjustifiable interference with [plaintiff's] rights under the contract or with their business relationship; and (4) damages to the [plaintiff] as a result of the interference." *Arthur J. Gallagher Serv. Co. v. Egan*, No. 12-CV-80361, 2013 WL 11981917, at *3 (S.D. Fla. Apr. 8, 2013), *aff'd*, 567 F. App'x 857 (11th Cir. 2014) (citations omitted).

Teal argues that he is entitled to summary judgment on Armor's tortious interference claims because (1) "[t]he undisputed evidence demonstrates that Mr. Teal did not interfere with Armor's contracts or client relationships" and (2) "the ordinary competition that Armor points to as the basis of its claims is privileged as a matter of law." ECF No. [83] at 27. The Court is not persuaded.

### a. Teal's Interference

Viewing the facts in the light most favorable to Armor, there is sufficient evidence in the record from which a reasonable factfinder could conclude that Teal intentionally and unjustifiably interfered with Armor's contractual relationship with Brevard. Specifically, the record demonstrates that Teal knew of Armor's relationship with Brevard and helped foster that relationship when he was employed as Armor's CEO. ECF No. [22] ¶ 10; ECF No. [40] ¶ 10; ECF No. [58-16] at 5-6, ¶ 7. Teal also knew that he was interfering with that relationship when he, after leaving Armor and joining Corizon, contacted Brevard and used Armor's information to prepare pricing proposals for Corizon to purportedly underbid Armor. *See supra* IV.B.1.a. Based on the foregoing, the Court is satisfied that genuine issues of material fact remain as to Count IV.

However, Armor's claim for tortious interference with Armor's business relationships fails for the independent reason that Armor has not claimed damages for relationships. Indeed, as set

forth above, Armor only seeks damages as to its loss of the Brevard contract. ECF No. [100] at 10 ("Armor's contract with Brevard is specifically at issue in this case, as that is the contract Teal was actually successful in obtaining from Armor for Corizon[.]"); ECF No. [99] ¶ 101 ("Armor's damages are comprised of: (a) lost profits, goodwill, and reputational damages due to Armor's loss of the Brevard contract; (b) Teal's salary at Corizon [pursuant to the Employment Agreement]; and (c) statutory damages, including exemplary and punitive damages." (citing ECF No. [99-15] at 11-14, ¶ 11)). Thus, because damages are an essential element of this claim, and Armor has not claimed damages for any client other than Brevard, Count V fails as a matter of law. Additionally, Armor "cannot solely rely on [its] allegations [regarding Brevard] to support [its] claim for tortious interference with a business relationship because that would result in a duplicative claim for tortious interference with existing contracts." *Westgate Resorts, LTD. v. U.S. Consumer Att'ys*, P.A., No. 6:18-cv-359-Orl-31TBS, 2018 WL 4898947, at *6, n.1 (M.D. Fla. Oct. 9, 2018); *see also Orange Lake Country Club, Inc. v. Reed Hein & Assocs., LLC*, No. 6:17-cv-1542-Orl-31DCI, 2018 WL 5279135, at *5 (M.D. Fla. Oct. 24, 2018) (same). Accordingly, Teal's Motion is granted as to Count V.

### b. Competition Privilege

Moreover, whether Teal's competitive activity is privileged,[9] is a question that is best left for resolution by a factfinder. To establish the competition privilege, a defendant must show that: "(1) the [plaintiff-third party] relationship concerned a matter involved in the competition between [the defendant] and [the plaintiff]; (2) it did not employ improper means; (3) it did not intend to create or continue an illegal restraint of competition; and (4) its purpose was at least in part to

---

[9] In his Motion, Teal also argues that his conduct is not actionable due to the privilege to protect one's own financial interest. ECF No. [83] at 29. However, it appears that Teal abandoned this privilege argument in his Reply. ECF No. [127] at 11, n.12 (acknowledging that "the competition privilege is the more direct fit here.").

advance its interest in competing with [the plaintiff]." *Ice Portal, Inc. v. VFM Leonardo, Inc.*, No. 09-60230-CIV, 2010 WL 2351463, at *7 (S.D. Fla. June 11, 2010) (alterations in original) (quoting *Int'l Sales & Serv., Inc. v. Austral Insulated Prod., Inc.*, 262 F.3d 1152, 1159 (11th Cir. 2001)). "'Improper means' which will defeat the competition privilege include physical violence, misrepresentations, intimidation, conspiratorial conduct, illegal conduct and threats of illegal conduct." *Bluesky Greenland Env't Sols., LLC v. 21st Century Planet Fund, LLC*, 985 F. Supp. 2d 1356, 1367 (S.D. Fla. 2013) (citations omitted). "Ultimately, to determine whether interference is justified or privileged requires a commonsense consideration of whether the conduct was 'sanctioned by the rules of the game' and what is 'right and just' under the circumstances." *Id.* (citations omitted).

Teal argues that his alleged interference with Brevard was justified by the competition privilege because he "is employed by a company that competes directly with Armor for the clients at issue" and "even if [Teal] had a valid non-competition agreement[,]" Armor cannot establish that he used improper means to compete. ECF No. [83] at 29-30. The Court agrees with Teal that "the competition privilege bars [Armor] from turning [Teal's] broken promise not to compete into a claim for tortious interference." *Ice Portal, Inc. v. VFM Leonardo, Inc.*, No. 09-60230-CIV, 2010 WL 2351463, at *7 (S.D. Fla. June 11, 2010); *see also Int'l Sales & Serv., Inc. v. Austral Insulated Prod., Inc.*, 262 F.3d 1152, 1160 (11th Cir. 2001). However, it is well-settled that "the [competition] privilege does not encompass the purposeful causing of a breach of contract." *KMS Rest. Corp. v. Wendy's Int'l, Inc.*, 361 F.3d 1321, 1327 (11th Cir. 2004) (quoting *McCurdy v. Collis*, 508 So. 2d 380, 384 (Fla. 1st DCA 1987))). As explained in detail above, there is sufficient evidence in the record from which a reasonable factfinder could conclude that Teal's actions with respect to Brevard and the changes to Armor's contract that occurred after Teal's resignation are

related. Thus, whether Teal purposefully caused Brevard to terminate its contracts with Armor is a question that is best left for resolution by a factfinder. Accordingly, Teal's Motion is denied as to Count IV.

### 5. Count VI – Breach of Fiduciary Duty

Teal seeks summary judgment on Armor's claim for breach of fiduciary duty, Count VI. To prevail on a claim for breach of fiduciary duty, a plaintiff must demonstrate "the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002) (citations omitted). "It is well-established under Florida law that an employee owes a fiduciary duty and a duty of loyalty to his or her employer." *Bank of Am., N.A. v. Crawford*, No. 2:12-CV-691-FTM-99, 2013 WL 593743, at *3 (M.D. Fla. Feb. 15, 2013) (citations omitted); *see also Daedalus Cap. LLC v. Vinecombe*, 625 F. App'x 973, 978 (11th Cir. 2015) (former employees did not owe any fiduciary duties to company "beyond their respective dates of resignation from the company." (citing *Gregg v. U.S. Indus., Inc.*, 715 F.2d 1522, 1541 (11th Cir. 1983))). "[A]bsent agreement to the contrary, there is nothing to preclude an agent from competing with his principal after the termination of their relationship." *New World Fashions, Inc. v. Lieberman*, 429 So. 2d 1276, 1277 (Fla. 1st DCA 1983).

Armor alleges that Teal breached his fiduciary duty to Armor by: (1) soliciting Armor's customers for Corizon; (2) "using his Armor Laptop to tap into Confidential Information regarding clients and business strategies[,]" and (3) "making harmful comments regarding Armor to current Armor clients." ECF No. [22] ¶ 83. Teal argues that Armor's breach of fiduciary claim fails as a matter of law because "these actions all are alleged to have taken place *after* Mr. Teal resigned." ECF No. [83] at 31 (emphasis in original). In response, Armor seemingly concedes that Teal's fiduciary duties expired upon his resignation and alleges, for the very first time, that Teal violated

his fiduciary duty by downloading files from Armor *before* he resigned for the purpose of using it post-employment. ECF No. [100] at 28.

Upon review, the Court finds that Armor's breach of fiduciary duty claim fails as a matter of law. The Court further disregards Armor's attempt to invoke new facts and theories in support of this claim to avoid summary judgment. *See Mahgoub v. Miami Dade Cmty. Coll.*, No. 05-11520, 2006 WL 952278, at *2 (11th Cir. Apr. 13, 2006) ("[P]laintiff may not supplement complaint through argument in brief opposing summary judgment, but must comply with requirements of Fed. R. Civ. P. 15(a)." (citing *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314-15 (11th Cir. 2004))); *see also Dawsey v. Carnival Corp.*, No. 16-23939-CIV, 2018 WL 5251850, at *13 (S.D. Fla. Oct. 22, 2018) ("Our circuit does not hesitate to apply the *Gilmour* rule by affirming summary judgment orders in favor of a defendant when a plaintiff tries to assert a new claim for the first time in a memorandum of law opposing a summary judgment motion." (collecting cases)). Accordingly, Teal's Motion is granted as to Count VI.

### 6. Count VII – Fraudulent Inducement

Teal seeks summary judgment on Armor's claim for fraudulent inducement, Count VII. Under Florida law, the elements of an action for fraudulent inducement are: (1) misrepresentation of material fact; (2) by someone who knew or should have known of the statement's falsity; (3) with intent that the representation would induce another to rely and act on it; and (4) injury suffered by reasonable reliance on the false statement. *See Gemini Invs. III, L.P. v. Nunez*, 78 So. 3d 94, 97 (Fla. 3d DCA 2012); *see also Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 595 n.2 (Fla. 2013).

"Generally, the fraudulent statement must concern a past or existing fact." *Gemini*, 78 So. 3d at 97. "However, if the plaintiff can demonstrate that the person promising future action does so with no intention of performing or with a positive intention not to perform, such a promise may

also constitute a fraudulent misrepresentation." *Prieto v. Smook, Inc.*, 97 So. 3d 916, 917-18 (Fla. 4th DCA 2012) (quoting *Mejia v. Jurich*, 781 So. 2d 1175, 1177 (Fla. 3d DCA 2001)). Further, "[f]raud also includes the intentional omission of a material fact." *Ward v. Atl. Sec. Bank*, 777 So. 2d 1144, 1146 (Fla. 3d DCA 2001). "Fraud based upon a failure to disclose material information exists only when a duty to make such disclosure exists." *Friedman v. Am. Guardian Warranty Servs., Inc.*, 837 So. 2d 1165, 1166 (Fla. 4th DCA 2003) (citing *State v. Mark Marks, P.A.*, 698 So. 2d 533, 539 (Fla. 1997)). This duty arises only when "one party has information which the other party has a right to know because there is a fiduciary or other relation of trust or confidence between the two parties." *Id.* (citation omitted).

Armor claims that Teal fraudulently induced Armor to execute the NDA and provide confidential information to Teal by misrepresenting that: (1) he would help Armor towards a potential merger with Corizon, knowing he had no intention to do so, and (2) he was not restricted from working for an Armor competitor. ECF No. [22] ¶¶ 86-90; *see also* ECF No. [100] at 30 (explaining that if unsuccessful on its breach of contract claims, Armor "will prove Teal fraudulently induced Armor to sign the NDA for the purpose of negating his Restrictive Covenants and to ensure he could use Armor's Confidential Information to compete with Armor on behalf of Corizon."). Teal argues that summary judgment is warranted in his favor on Armor's fraudulent inducement claim because Armor could not have reasonably relied on any representation or omission that Teal made with respect to whether he was subject to restrictive covenants, and the record is devoid of any evidence demonstrating that Teal knowingly made false statements.

The Court finds that Armor's fraudulent inducement claim fails as a matter of law. First, as Teal correctly argues, there is no evidence in the record demonstrating that Teal misrepresented that he would work on the potential acquisition between Armor and Corizon. *See Royal Typewriter*

*Co., a Div. of Litton Bus. Sys. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1104 (11th Cir. 1983) ("A plaintiff seeking to recover for such a misrepresentation must show that the promisor either lacked the intention to perform the promise or specifically intended not to perform at the time the representation was made." (citation omitted)). Indeed, by its own admission, Armor does not dispute that "Teal did attempt to facilitate a transaction between Armor and Corizon." ECF No. [82] ¶ 30; ECF No. [99] ¶ 30.

Second, Armor could not have relied on any purported misrepresentation or omission by Teal that he was not restricted from working for an Armor competitor because Armor is conclusively presumed to know the contents of the Employment Agreement it signed. *See Tara Woods SPE, LLC v. Cashin*, 116 So. 3d 492, 501 (Fla. 2d DCA 2013) ("[A] party to a contract is 'conclusively presumed to know and understand the contents, terms, and conditions of the contract.'" (quoting *Rocky Creek Ret. Props., Inc. v. Estate of Fox*, 19 So. 3d 1105, 1108-09 (Fla. 2d DCA 2009))). Notably, Armor has failed to address this dispositive law in its Response and instead relies on general principles that its fraudulent inducement claim may be plead in alternative to a claim for breach of contract. *See* ECF No. [100] at 29-30.

Lastly, the Court highlights that, under Florida law, omissions are not actionable as fraudulent misrepresentations unless the party omitting the information owes a duty to disclose to the party receiving the information. *See Friedman*, 837 So. 2d at 1166. Here, Teal resigned from Armor approximately three months before Armor signed the NDA discussing the non-existence of any restrictive covenants, at which point Teal no longer owed any fiduciary duties to Armor. *See* ECF No. [82] ¶¶ 14, 27; ECF No. [99] ¶¶ 14, 27; *see also supra* IV.B.5. Accordingly, based on the foregoing, Teal's Motion is granted as to Count VII.

**7.  Count VIII – Breach of Covenant of Good Faith and Fair Dealing**

Teal seeks summary judgment on Armor's claim for breach of covenant of good faith and fair dealing, Count VIII. "A breach of the implied covenant of good faith and fair dealing is not an independent cause of action but attaches to the performance of a specific contractual obligation." *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005). The implied duty of good faith must therefore "relate to the performance of an express term of the contract . . . [and] cannot be used to vary the terms of an express contract." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1316 (11th Cir. 1999) (quoting *Hosp. Corp. of Am. v. Fla. Med. Ctr., Inc.*, 710 So. 2d 573, 575 (Fla. 4th DCA 1998); *City of Riviera Beach v. John's Towing*, 691 So. 2d 519, 521 (Fla. 4th DCA 1997)). Further, the covenant cannot "add an obligation to the contract which was not negotiated by the parties and not in the contract." *Hosp. Corp. of Am.*, 710 So. 2d at 575.

Armor alleges that Teal breached the implied duty of good faith and fair dealing by representing that he would help Armor towards a potential merger with Corizon when he "had no intention of acting in good faith to effectuate the merger." ECF No. [22] ¶¶ 93-94. According to Armor, Teal instead "used the opportunity for his own personal gain" to steal "Armor's Confidential Information and . . . secure Armor clients for Corizon." *Id.* ¶ 94. Teal argues that Armor's claim fails as a matter of law because "the proposed merger was completely unrelated to the [Employment] Agreement[,]" as it was "not contemplated until thirteen years later." ECF No. [83] at 32. Armor responds that Teal's position is "nonsensical" because his obligations under the Employment Agreement "remained in place when Armor and Corizon were discussing the Potential Acquisition." ECF No. [100] at 29.

The Court finds that Armor's claim for breach of the implied covenant of good faith and fair dealing fails as a matter of law. First, as Teal correctly argues, his post-employment work on

the potential acquisition does not relate to the Employment Agreement, as required to assert a claim. *See Burger King Corp.*, 169 F.3d at 1316; *see also Hosp. Corp. of Am.*, 710 So. 2d at 575. Indeed, there is nothing in the Employment Agreement that addresses Teal's duties in facilitating a transaction with Corizon, or any Armor competitor, after his employment. *See generally* ECF No. [22-1]. Moreover, to the extent Armor attempts to rely on the Restrictive Covenants to establish Teal's breach, that theory also fails because a claim for breach of the implied covenant of good faith and fair dealing cannot exist when it duplicates a breach of contract claim, such as the claim here. *See Bradman v. Mental Health Network, Inc.*, No. 08-61376-CIV, 2008 WL 5110525, at *2 (S.D. Fla. Dec. 2, 2008) ("[A] breach of the implied covenant of good faith and fair dealing cannot be advanced when the allegations underlying that claim are duplicative of the allegations supporting the breach of contract claim." *Bradman v. Mental Health Network, Inc.*, No. 08-61376-CIV, 2008 WL 5110525, at *2 (S.D. Fla. Dec. 2, 2008) (citations omitted). Accordingly, Teal's Motion is granted as to Count VIII.

**8. Count IX – Violation of the Computer Fraud and Abuse Act**

Teal seeks summary judgment on Armor's claim for violation of the Computer Fraud and Abuse Act ("CFAA"). The CFAA is a criminal statute that prohibits accessing a computer and obtaining information without authorization or by exceeding authorized access. *See* 18 U.S.C. § 1030. In relevant part, the CFAA provides a civil cause of action for "[a]ny person who suffers damage or loss by reason of a violation of this section[.]" 18 U.S.C. § 1030(g). Here, Armor asserts a single violation under Section 1030(a)(2)(C) of the CFAA. Section 1030(a)(2)(C) provides: "[w]hoever . . . intentionally *accesses* a computer *without authorization* or *exceeds authorized access* and thereby obtains . . . information from any protected computer if the conduct involved an interstate or foreign communication . . . shall be punished." 18 U.S.C. § 1030(a)(2)(C) (emphasis added).

Teal argues that he is entitled to summary judgment on Armor's CFAA claim because, contrary to Armor's allegations, Teal did not "exceed" his authorized access to any confidential information on the Armor laptop. ECF No. [83] at 35; *see also* ECF No. [22] ¶ 103. Specifically, Teal maintains that he was an executive at Armor with no meaningful limitations on what information or systems he was permitted to access, and Armor never revoked Teal's authorization to access the Armor laptop or placed limitations on his access to information when he resigned. ECF No. [83] at 37. In response, Armor argues that Teal violated Section 1030(a)(2)(C) in two ways: (1) "Teal exceeded his authorized access to Armor's servers when he—while he was employed by Armor—downloaded documents from Armor's server for the improper purpose of using it after his employment to compete with Armor[,]" and (2) "Teal exceeded his authorized access by asking Davies to send him Armor's Confidential Information (to which his access had expired) via email." ECF No. [100] at 32.

Under the CFAA, the term "exceeds authorized access" means "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter[.]" 18 U.S.C. § 1030(e)(6). Recently in *Van Buren v. United States*, 141 S. Ct. 1648 (2021), the United States Supreme Court granted certiorari to resolve the split in authority regarding the scope of liability under the CFAA's "exceeds authorized access" clause. *Id.* at 1654. Specifically, the Court clarified that "an individual 'exceeds authorized access' when he accesses a computer with authorization but then obtains information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him." *Id.* at 1662; *accord Diamond Power Int'l, Inc. v. Davidson*, 540 F. Supp. 2d 1322, 1343 (N.D. Ga. 2007) ("Under the more reasoned view, . . . a violation for 'exceeding authorized access' occurs where

initial access is permitted but the access of certain information is not permitted." (citation omitted)).

The facts in *Van Buren* are instructive. There, a former Georgia police sergeant used his patrol-car computer and valid credentials to log into the law enforcement database to retrieve information about a particular license plate number in exchange for money. *Van Buren*, 141 S. Ct. at 1653. The sergeant's conduct violated his department's policy, which authorized him to obtain database information only for law enforcement purposes. *Id.* at 1652. The Court found that because the sergeant "accessed the law enforcement database system with authorization[,]" he "did not 'exceed authorized access' to the database, as the CFAA defines that phrase, even though he obtained information from the database for an improper purpose." *Id.* at 1662 (alterations adopted); *see also Enhanced Recovery Co., LLC v. Frady*, No. 3:13-CV-1262-J-34JBT, 2015 WL 1470852, at *6 (M.D. Fla. Mar. 31, 2015) ("[A]n employee who has actually been granted access to information does not 'exceed authorized access' by virtue of the employee's subjective intent or by subsequently violating company policies on the use of the information.").

In the present case, Teal did not "exceed authorized access" within the meaning of the CFAA. Indeed, Armor admits that "[w]hen Mr. Teal was employed as an executive at Armor, there were no meaningful limitations on what Armor information or systems he was permitted to access." ECF No. [82] ¶ 80; ECF No. [99] ¶ 80. Thus, while Armor maintains that Teal "exceeded his authorized access to Armor's servers when he—*while employed by Armor*—downloaded documents from Armor's server for the improper purpose of using it after his employment to compete with Armor[,]" Teal did not lack authorization to access any of the information that he allegedly misappropriated. ECF No. [100] at 32; *see also Enhanced Recovery Co., LLC*, 2015 WL 1470852, at *6 ("The CFAA . . . does not target those who misappropriate confidential information

or trade secrets they were authorized to learn about, read, or otherwise obtain, or those who misappropriate computer files they were perfectly authorized to open, view, or otherwise access."); *Bell Aerospace Services, Inc. v. U.S. Aero Services, Inc.*, 690 F. Supp. 2d 1267, 1272 (M.D. Ala. 2010) ("'Exceeds authorized access' should not be confused with exceeds authorized use."). Therefore, because Teal was permitted to access the information at issue, he did not exceed authorized access and does not fit within the group Congress chose not to reach.

Additionally, while Armor claims that Teal has also violated the CFAA by having Davies send him information following his employment, the Court is unaware of, and Armor has failed to cite to, any authority in support of its position that an individual who receives information from a third party may be liable under the CFAA. *See CareersUSA, Inc. v. Guerrero*, No. 14-80096-CIV, 2014 WL 12862259, at *4 (S.D. Fla. Aug. 25, 2014) ("There is no support for holding that CFAA provides a private cause of action against co-conspirators"); *see also Power Equip. Maint., Inc. v. AIRCO Power Servs., Inc.*, 953 F. Supp. 2d 1290, 1297 (S.D. Ga. 2013) ("[T]he CFAA requires that the individual actually access the information, not merely receive it from a third party."). For the foregoing reasons, Armor's CFAA claim fails as a matter of law. Accordingly, Teal's Motion is granted as to Count IX.

### 9.  Count X – Violation of the Stored Communications Act

Teal seeks summary judgment on Armor's claim for violation of the Stored Communications Act ("SCA"). The SCA provides that whoever "(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents access to a wire or electronic communication while it is in electronic storage in such system shall be punished[.]" 18 U.S.C. § 2701(a). Like the CFAA, the SCA is primarily a criminal statute that provides a private cause of action for "any provider of electronic communication

service, subscriber, or other person aggrieved by any violation of this chapter in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind[.]" 18 U.S.C. § 2707(a).

Teal argues that his alleged actions did not violate the SCA for three reasons: (1) "there is no evidence that Mr. Teal accessed a 'facility through which an electronic communication service is provided[;]'" (2) "there is no evidence that Mr. Teal obtained, altered, or prevented access to 'a wire or electronic communication while it is in electronic storage[;]'" and (3) "there is no record evidence that Mr. Teal 'acted with a "knowing or intentional state of mind' in accessing any alleged information." ECF No. [83] at 39-40 (quoting 18 U.S.C. § 2707(a)). Despite its burden to come forward with evidence to support each element of its SCA claim, Armor has failed to address any of these arguments in its Response. *See* ECF No. [100] at 31-33; *see also Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." (internal citations omitted)). Thus, Armor appears to have abandoned its SCA claim. Accordingly, Teal's Motion is granted as to Count X.

### 10. Punitive Damages

As a final matter, Teal moves for summary judgment on Armor's claim for punitive damages under FUTSA and the SCA. To be entitled to punitive damages under FUTSA, a plaintiff must show "willful and malicious misappropriation." Fla. Stat. § 688.004. Because the record presents a factual issue as to Teal's motivation in using Armor's confidential information, the Court declines to address the issue of punitive damages at this juncture. *See Dix v. United Parcel Serv., Inc.*, No. 04-14358-CIV, 2006 WL 5100537, at *1 (S.D. Fla. June 28, 2006) (declining to

reconsider denial of judgment on punitive damages and noting that because the inquiry as to punitive damages is "fact intensive," the inquiry "is best conducted after the facts of th[e] case are presented to a jury"). However, because the Court has determined that Teal is entitled to judgment as a matter of law on Armor's claim under the SCA, Armor's demand for punitive damages under the SCA also fails. Accordingly, Teal's Motion is granted in part on this point.

## V.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Armor's Motion, **ECF No. [57]**, is **DENIED**.

2. Teal's Motion, **ECF No. [83]**, is **GRANTED IN PART AND DENIED IN PART**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on December 8, 2021.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record